UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLIFFORD TUTTLE, et. al.<br><br>Consolidated with<br><br>JOHN NICHOLAS, et.al.<br><br>       Plaintiffs,<br><br>v.<br><br>CITY OF HOUSTON; ART ACEVEDO, et. al.<br><br>       Defendants. | Case No. 4:21-cv-00270<br><br>(JURY DEMANDED) |

### THE NICHOLAS PLAINTIFFS' RESPONSE TO DEFENDANTS ASHRAF, LOVINGS, PARDO, REYNA, MEDINA, GONZALES, AND WOOD'S MOTIONS TO STAY

#### Summary of the Argument

      Defendants did not steal wages from Rhogena Nicholas or Dennis Tuttle. They unlawfully raided their house and killed them. Nevertheless, Defendants Lovings,[1] Pardo,[2] Reyna,[3] Medina,[4] Gonzales,[5] Ashraf,[6] and Wood[7] request that the Court enter a blanket stay of this wrongful death case because the state of Texas charged them with over-time fraud. Despite that contradiction, Defendants misleadingly claim that the criminal charges "involve[] the same matter" as this civil

---

[1] Doc. 22 of Case Number 4:21-Cv-000272 now consolidated with 4:21-Cv-000270.
[2] Doc. 23 of Case Number 4:21-Cv-000272 now consolidated with 4:21-Cv-000270.
[3] Doc. 24. of Case Number 4:21-Cv-000272 now consolidated with 4:21-Cv-000270.
[4] Doc. 27. of Case Number 4:21-Cv-000272 now consolidated with 4:21-Cv-000270.
[5] Doc. 28 of Case Number 4:21-Cv-000272 now consolidated with 4:21-Cv-000270.
[6] Doc. 35 of Case Number 4:21-Cv-000272 now consolidated with 4:21-Cv-000270.
[7] Doc. 30 of Case Number 4:21-Cv-000272 now consolidated with 4:21-Cv-000270.

lawsuit.

> Federal and state criminal charges are pending against several of the individual defendants in this matter, including a felony charge of engaging in organized criminal activity against Defendant Pardo on January 28, 2019, the day of the Harding Street raid.
> . . .
> The charges include the January 28, 2019, warrant execution at 7815 Harding Street the subject of Plaintiffs' lawsuit. The facts and circumstances at issue in this case are also the subject of pending criminal charges against Defendant[s].[8]

Defendants claim that these charges involve the "same matter" because Defendants unlawfully billed for overtime, while they attacked Plaintiffs' home and killed Nicholas and Tuttle. They are wrong. Theft of overtime is not the "same matter" as murder.

Furthermore, the State of Texas has not charged Lovings, Pardo, Reyna, Medina, Gonzales, Ashraf, and Wood with any crime against Nicholas or Tuttle, or any crime related to the attack on their home. In August 2019, the District Attorney's office was provided full access to forensic evidence that demonstrated that a Houston Police Department (HPD) officer murdered Nicholas by blindly shooting into her home.[9] But the District Attorney's office did not even review or download this potential evidence until February 26, 2021[10] – weeks after the District Attorney's office announced it was closing its investigation into the illegal raid. As a result, the State of Texas has not charged, indeed, not even fully investigated, these Defendants for the murder of Ms. Nicholas. Thus, a stay is not appropriate to protect any investigation into the crimes, or civil rights violations, that were committed once the shooting started, since there has not been (and there will there be) an investigation by the State of Texas with the full forensic evidence.

By making this overreaching request, Defendants have continued HPD's longstanding

---

[8] *See e.g.* Doc. 23. from Civil Action No. 4:21-cv-272 now consolidated with 4:21-Cv-000270 at pg. 14.
[9] Exhibit 2.
[10] Id.

strategy of hiding the truth from their victims' families. Tellingly, Defendants tie their request for a stay with a slew of motions to dismiss under *Iqbal* and *Twombly*. Defendants then argue that Plaintiffs have not pleaded sufficient, plausible facts to support their claims. Put differently, Defendants (1) demand that the Court dismiss this case based on alleged factual insufficiency, yet (2) also object to any fact discovery. This is even more problematic in this case because Defendants, through the City of Houston, have hidden important physical and forensic evidence from Plaintiffs, including the identity of the Officer who shot Rhogena Nicholas, the ballistic evidence, IAD investigation and files, the Houston Forensic Science Center's file, Computer Aided Dispatch (CAD) Activity Log and MDT (mobile data terminal) for the City vehicles, recordings, including body camera, dash cam, and cell phone footage, and the tactical plan. This evidence (the physical documents, records, and objects) cannot even implicate Defendants' Fifth Amendment testimonial privilege. Regardless, because Defendants have sought dismissal under *Iqbal*, Plaintiffs should be entitled to discovery regarding the concealed facts.[11]

By requesting a stay, HPD and its officers have pivoted to their newest attempt to conceal the truth. Previously, they objected to Plaintiffs' public records' requests,[12] Plaintiffs' Rule 202 petition for pre-suit discovery,[13] and Plaintiffs' intervention in a different civil rights case.[14] At the same time that they have blocked access to important evidence, former Chief of Police Art Acevedo has publicly admitted that he "saw" serious "red flags," while he was on-scene during

---

[11] *See e.g. Coucke v. Harris Cty.*, No. H-20-766, 2020 U.S. Dist. LEXIS 141944 (S.D. Tex. Aug. 7, 2020) (J. Miller) (granting limited discovery pending a motion to dismiss because "In practical terms, it is nearly impossible for Coucke to try to state a *Monell* claim without access to that limited discovery.")
[12] Exhibit 3 and 4.
[13] Exhibit 1.
[14] *Estate of Baker v. Castro*, H-15-3495, 2020 U.S. Dist. LEXIS 80521 *10-11 (S.D. Tex. May 7, 2020)

3

the shooting.

> I personally saw something, that, that I am not going to talk about here today I personally saw something that I'm not going to talk about here today. I was on that scene within fourteen minutes, fourteen minutes and thirty-two seconds, after the shots wrang out. I left the sixteenth floor of this headquarters. Went to that scene and started processing the visuals, start processing what I was seeing, started processing what I was feeling. And from within a matter of a couple of days we started seeing some red flags, because of the questions that we asked.[15]

In making this statement, Acevedo has only further emphasized the following troubling questions:

- If Defendant Acevedo saw "red flags," then why did HPD only complete a partial collection of evidence at scene to test Defendants' stories against the physical and other forensic evidence available?

- Who blindly shot and killed Rhogena Nicholas' from the outside walls of her house?[16]

- What occurred during the "second assault" thirty minutes after the deaths of Rhogena Nicholas and Nicholas Tuttle that led to two gunshots and a proclamation that both suspects were down?

- Who fired a gun at point blank range into an inside wall, away from the rest of the incident, and what gun was used?

- Given the physical evidence revealed so far that demonstrates that HPD's officers sustained "friendly fire" wounds from at least two outside HPD shooters, was Defendant Felipe Gallegos acting as a self-proclaimed "hero" protecting officers wounded by Dennis Tuttle, or instead simply responsible for the final execution shots into a fully disabled, 121-pound Navy veteran with severe limitations on his ability to move (including a heavy knee brace and wrapped bandages around his dominant (right) hand)?

By requesting this stay, Defendants seek to continue to avoid these questions and to hide the truth about the deaths of Nicholas and Tuttle.

In all, Jo Ann Nicholas (Rhogena Nicholas's 86-year-old mother), John Nicholas (her brother), and the residents of the City of Houston and Harris County, all have the right to know

---

[15] Defendant Art Acevedo, Press Conference, 8-23-2019; archived at https://youtu.be/OhMC2Y0vAeg
[16] *See*, Exhibit 5 -8; *see also*, Exhibit 1, Petition, Para. 17-18);

who killed Rhogena Nicholas to obtain answers to the questions above. Therefore, based on these facts and the evaluation of the factors below, Defendants' motion should be denied.

**Factual Background**

This lawsuit arises from the murder of Rhogena Nicholas and Dennis Tuttle, on January 28, 2019 at their home at 7815 Harding Street in Houston.[17] Defendants violated Nicholas's constitutional rights when HPD Officer Goines adhered to Squad 15's custom and practice of lying to obtain a search warrant for 7815 Harding Street.[18] In a sworn affidavit to a Houston municipal judge, Goines falsely claimed that he paid for and witnessed a drug deal between a confidential informant ("CI") and an unidentified man at 7815 Harding Street.[19] He had not. And because Goines alleged that this informant had spotted a gun during the make-believe drug deal, Goines obtained a "no-knock" warrant – a practice he had repeatedly used during the prior decade to obtain over one-hundred "no-knock" warrants.[20] Notably, Goines had previously paid the informant – a woman who admittedly was engaged in a long-term sexual relationship with Goines – to make the heroin purchase from a different house, miles from 7815 Harding Street.[21]

On January 28, 2019, Goines and Squad 15 unlawfully invaded 7815 Harding Street.[22] At the outset, members of Squad 15 violently attacked by firing their weapons and killing Nicholas's dog. Squad 15 had used this escalation strategy before during similar illegal raids.[23] After Squad 15 initiated deadly force at Harding Street, they then filled the house with gunfire, shooting and killing

---

[17] *See*, Exhibit "1", verified Petition at Par. 20.
[18] *See* Plaintiff's Complaint, Doc. 1 from Case 4:21-cv-00272 which has now been consolidated with Case 4:21-cv-00270.
[19] Id. at Par. 3.
[20] Id. at Par. 37.
[21] Id.
[22] Id. at Par. 60.
[23] Id. at Par. 60 and 43.

the unarmed Nicholas.[24] Worse yet, the officer, who fatally killed Nicholas, fired his gun from a position outside the house, where he could not see Nicholas.[25] In other words, the officer could not have viewed Nicholas, or anyone else within the house, as a threat. In sum, HPD illegally obtained the warrant, illegally entered the house, illegally initiated deadly force by firing their weapons first, and then blindly shot into the home's wall to kill Nicholas, all with conscious disregard for her constitutional rights.[26] In the ensuing aftermath, the Houston Chronicle referred to the death of Tuttle and Nicholas as "the worst scandal [HPD] has faced in a generation."[27]

Only after the tragic death of Rhogena Nicholas and Dennis Tuttle did the Squad 15 criminal organization began to unravel. While the initial evidence from the shootings exposed shocking corruption, the leadership of the City of Houston and HPD responded to this misconduct by concealing the outstanding evidence and testimony, in order to cover up the tragic events at 7815 Harding Street. Since that tragic day, the families of Mr. Tuttle and Ms. Nicholas have fought to discover the truth.

First, Plaintiffs sent multiple public records requests to the City of Houston and the Houston Forensic Science Center.[28] Defendants, along with Harris County and the Houston Forensic Science Center, objected to these requests.[29]

Second, in January 2020, Plaintiffs also filed a motion to intervene into the case *Baker v. Castro*, Case number 4:15-cv-3495.[30] The City of Houston objected to intervention. While Judge

---

[24] Id. at Par. 61.
[25] Id. at Par. 61-63.
[26] Id.
[27] Id. at 1.
[28] Exhibits 2 and 3.
[29] Id.
[30] *Estate of Baker v. Castro*, H-15-3495, 2020 U.S. Dist. LEXIS 80521 *10-11 (S.D. Tex. May 7, 2020)

Lake found that Plaintiffs satisfied the intervention factors, he denied the motion because Plaintiffs could "seek access to the documents through traditional pretrial discovery" in a civil lawsuit against the City.[31]

In addition, in July 2019, Plaintiffs initiated a petition for pre-suit discovery under Texas Rule of Civil Procedure 202 in Harris County, Probate Court. In the filing of their petition, the Nicholas family concluded as follows:

> Given the indications that the City's story does not line up with the physical facts at the Harding Street Home, the Nicholas Family believes the [probate court] has more than sufficient basis to order the depositions requested to investigate the wrongful death, civil rights, and other claims arising from the Harding Street Incident.[32]

In its attempt to hide the truth, the City initially objected to jurisdiction in Harris County Probate Court, which the state court rejected. After an interlocutory appeal and stay, the Fourteenth Court of Appeals in Houston also rejected this argument and issued the opinion cited as *In the Estate of Nicholas*, 2020 Tex. App. LEXIS 2532 at *7 (Tex. App.—Houston [14th Dist.] March 26, 2020, no pet. filed). The City then filed a request for review to the Texas Supreme Court, which the Court denied. In order to further stall proceeding, the City filed a motion for rehearing. The Court again denied that motion.

After these dilatory motions were repeatedly rejected, the state probate court set the Rule 202 petition for hearing for a fourth time, on December 18, 2020 at 1:30 p.m. Hours before the hearing, the City removed the lawsuit to federal court, nearly eighteen months after the initial filing. Plaintiffs then filed an emergency motion to remand, which Judge Hoyt granted on January 8, 2021. The state probate court set the hearing for the fourth time, for January 12th. The City

---

[31] *Id.*
[32] Exhibit 1.

again filed an appeal to the 5th Circuit – only days before the two-year anniversary of the claim. As a result of that conduct, the City abused the judicial process to prevent the grieving families from accessing important evidence.

Plaintiffs have now filed lawsuits under 42 U.S.C. §1983 and §1988 for the clear violations of Mr. Tuttle's and Ms. Nicholas' constitutional rights and conspiracy to violate those rights. Following their pattern, Defendants have moved for a blanket stay of this lawsuit. As explained in detail below, Plaintiffs request that the Court deny these motions.

### Standard of Review

Under Federal Rule of Civil Procedure 26(c), a court may stay discovery for "good cause."[33] But "[a] determination of good cause, and the resulting grant of a stay" has been considered an "extremely harsh consequence."[34] Indeed, courts have recognized that "[a] complete stay of pending civil action until the outcome of related criminal proceedings is an extraordinary remedy."[35] A stay of discovery is thus allowed only when "special circumstances" exist to "prevent a party from suffering substantial and irreparable prejudice."[36]

Federal courts analyze six factors to determine whether a movant's stay should be granted: "(1) the overlap between issues in the criminal and civil cases; (2) the status of the criminal case; (3) the interest of the plaintiff to proceed expeditiously and prejudice of a delay to plaintiff; (4) the interest of and burden on the defendant; (5) the interests of the courts; and (6) the public interest."[37]

---

[33] *Fujita v. United States*, 416 F. App'x 400, 402 (5th Cir. 2011).
[34] *In re Ramu Corp.* 903 F.2d 312, 320 (5th Cir. 1990).
[35] *Phillips v. First Nat'l Ins. Co. of Am.*, No. H-10-3632, 2011 U.S. Dist. LEXIS 63892 at *6 (June 15, 2011) (citing *Piperi v. Gutierrez*, 137 B.R. 644, 646 (Bankr. S.D. Tex. 1991)).
[36] *Jostens, Inc. v. Hammons*, No. 4:20-cv-00225, 2021 U.S. Dist. LEXIS 35078 (E.D. Tex. Feb. 25, 2021).
[37] *Id.* at *2.

Further, the burden of justifying the discovery delay is on the movant.[38]

Recently, the District of Colorado addressed this exact issue in the tragic murder of Elijah McClain.[39] In applying these six factors, the Court placed significant weight on the second factor because "[n]o one, including the individual Defendants, has been indicted on criminal charges as a result of Mr. McClain's death or the grand jury investigation." And, "The absence of an indictment against Defendants weighs strongly against granting them a stay in this action."[40] Furthermore, the Court also recognized that a stay was not appropriate because "it is unlikely that all of the individual Defendants will move for dismissal."[41]  And as a result, "Defendants would likely be deposed anyway as witnesses regarding Plaintiffs' municipal liability claims, any additional burden associated with also being asked questions as to the individual liability claims would be minimal."[42]  The Court then closed with the following:

> As discussed above, Plaintiffs have a powerful interest in avoiding an open-ended, indefinite stay and proceeding expeditiously with their case. The individual Defendants' countervailing burden does not outweigh this interest because "the Tenth Circuit affirms that a defendant has no right not to choose between testifying in a civil matter or invoking his/her Fifth Amendment rights." Thus, the third and fourth factors weigh against a stay.
>
> Finally, proceeding with discovery promotes the Court's interest in efficiently managing its docket, while the public interest is not harmed by moving forward with the case. Indeed, the very existence of the grand jury investigation demonstrates a public interest in answering questions about what happened to Mr. McClain and why. The fact that the Attorney General has convened a grand jury to investigate these issues should not, without more, be a basis for denying the Plaintiffs their right to use the civil discovery process in pursuit of their claims.[43]

---

[38] *Id.*
[39] *Estate of McClain v. City of Aurora*, Civil Action No. 20-cv-02389-DDD-NRN, 2021 U.S. Dist. LEXIS 17099 (D. Col. Jan. 29, 2021).
[40] *Id.* at *16 (citing *S.E.C. v. Mantria Corp.*, No. 09-cv-02676-CMA-MJW, 2012 U.S. Dist. LEXIS 72959 at *2 (D. Colo. May 25, 2012).
[41] *Id.*
[42] *Id.* at *12-13.
[43] *Id.* at *17.

Based on the evaluation of these factors, the Court refused to enter a blanket stay order.

Following the same reasoning as *Elijah McClain*, Plaintiffs request that the Court deny Defendants' motions to stay, as explained in detail below.

### **Factor #1: There is minimal overlap between issues in the criminal and civil cases.**

Federal courts in Texas have made it clear – "[t]here is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal cations."[44] Indeed, "the very fact of a parallel criminal proceeding" by itself does not diminish a party's privilege against self-incrimination even though the pendency of the criminal action may "force[] him to choose between preserving his privilege against self-incrimination and losing the civil suit."[45]

Undisputedly, this factor is the most important for the Court's evaluation.[46] Indeed, "[w]here the subject matter of the civil and criminal cases significantly overlaps, there is a greater risk of self-incrimination and this factor weighs in favor of a stay; conversely, where there is no overlap between the subject matter of the civil and criminal cases, there is no danger of self-incrimination and accordingly no need for a stay."[47]

---

[44] *Buehler v. City of Gonzales*, No. 5:15-cv-168-DAE, 2015 U.S. Dist. LEXIS 75562 (W.D. Tex. June 11, 2015) at *3-4 (citing *SEC v. First Fin. Grp., Inc.*, 659 F.2d 660, 666 (5th Cir. 1981)).
[45] *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) (c*iting* Hoover v. Knight, 678 F.2d 578, 581 (5th Cir. 1982)); *see e.g.*, *Whitfield v. Riley*, No. 09-1877 Section "N" (2), 2009 U.S. Dist. LEXIS 42453 at *2 (E.D. La. May 6, 2009) (denying defendant police officers' motion to stay in a civil lawsuit despite possible criminal proceedings against them); *see also Cigna Healthcare of Tex., Inc. v. VCare Health Servs.*, No. 3:20-cv-0077-D, 2020 U.S. Dist. LEXIS 214390 at *5 (N.D. Tex. Nov. 17, 2020) (holding that "while there is some overlap between the criminal case against [the criminal defendant] and this civil suit, such overlap was insufficient to warrant a stay.").
[46] *Jackson v. Pamerleau*, No. 5:15-CV-524-DAE, 2016 U.S. Dist. LEXIS 11282, 2016 WL 393552, at *5 (W.D. Tex. Feb. 1, 2016); *Bean v. Alcorta*, 220 F. Supp. 3d 772, 775 (W.D. Tex. 2016).
[47] *Duncan v. Banks*, 2017 U.S. Dist. LEXIS 176350 at *7 (W.D. Tex. Oct. 24, 2017)

Here, "there is not [a] significant overlap between the civil and criminal cases."[48] The State of Texas charged Pardo, Lovings, Reyna, Medina, Ashraf, and Wood with engaging in organized criminal activity related to their theft of overtime pay and tampering with evidence. District Attorney Kim Ogg recently explained that, "[i]t's doing it [(the aggregate overtime theft)] as a group that allows [the government] to charge [the officers] and the grand jury to listen to organized crime charges."[49] Similarly, Defendant Gonzales was "indicted for alleged conduct during the period of December 12, 2016, through March 19, 2019, in relation to payments made to a confidential informant."[50]

Defendants shot Plaintiffs with bullets, not fraudulent pay slips. Specifically, Plaintiffs have asserted that Defendants violated their Fourth and Fourteenth Amendment rights by illegally raiding their home and killing them. Furthermore, even if Defendants asserts their Fifth Amendment rights related to the charged crimes, an adverse inference is certainly not case dispositive and instead only provides circumstantial evidence of Defendants' knowledge, customs, and intent. Therefore, this factor weighs strongly in favor of denying the motions to stay because "there is not significant overlap between the civil and criminal cases." [51]

**Factor #2: The status of Defendants' overtime proceedings do not overlap with the present case.**

Regarding the next factor, the status of the criminal case has minimal, if any, bearing on this lawsuit because there is no significant overlap in the criminal proceedings against Defendants and the present case. Therefore, this factor is neutral.

---

[48] *Id.* at *7 (W.D. Tex. Oct. 24, 2017)
[49] St. John Barned-Smith, *Six Houston police officers indicted in Harding Street investigation,* HOU CHRON. Jan. 26, 2021, available at https://www.houstonchronicle.com/news/houston-texas/crime/article/Harris-County-DA-Ogg-announces-more-charges-in-15897074.php.
[50] *See e.g.* Gonzales's Motion to Dismiss and Stay ¶ 34.
[51] *Duncan v. Banks*, 2017 U.S. Dist. LEXIS 176350 at *7 (W.D. Tex. Oct. 24, 2017).

**Factor #3: The Nicholas family has a significant interest in learning who murdered their daughter.**

Jo Ann Nicholas is eighty-six years old. Through continued efforts to conceal the truth, the City of Houston, its officers, and HPD have hidden the identity of the HPD shooter who blindly shot into 7815 Harding Street and killed her daughter.[52] For an eighty-six-year-old, time is invaluable. And Jo Ann Nicholas deserves to know who murdered her daughter. This interest vastly outweighs Defendants' risk of an adverse inference regarding their overtime violations.

This case largely mirrors the background of *Elijah McClain.* In denying a stay, the Court in that case explained that "Plaintiffs have a powerful interest in avoiding an open-ended, indefinite stay and proceeding expeditiously with their case."[53] Indeed, "[t]he plaintiffs here are family members of a dead young man" and "deserve[] answers to the questions of why he died and whether anyone or any entity is to be held to account."[54] In contrast, "issuing the requested stay would cause those wheels to simply grind to a halt, delaying for months or even years the process of answering those important questions."[55]

In addition, the families of Nicholas and Tuttle are private citizens and have significantly different interests than the prosecution in a criminal case.[56] When addressing this factor, the Court in *Jostens, Inc.* explained said that "[e]ven assuming an active criminal case existed, the overlap [between the civil and criminal cases] would be minimal because Plaintiff is a private party—not the government."[57] There, the Court recognized two distinct interests of the plaintiff and the

---

[52] Exhibits 5-8.
[53] *Estate of McClain v. City of Aurora*, No. 20-cv-02389-DDD-NRN, 2021 U.S. Dist. LEXIS 17099 at *16.
[54] *Id.* at *12.
[55] *Id.*
[56] *See Duncan v. Banks*, No. SA-15-CV-148-XR, 2017 U.S. Dist. LEXIS 176350 at *11 (W.D. Tex. Oct. 24, 2017).
[57] *Jostens, Inc.*, 2021 U.S. Dist. LEXIS 35078 at *4

government in the hypothetical criminal case, explaining that "the risk of overlap is generally reduced when there is no risk the Government is relying on the civil case to gain an advantage before bringing an indictment."[58] In other words, private party plaintiffs "do not have the ability to preserve their interests in the civil case through the prosecution of the criminal case, as the Government might."[59]

Therefore, this factor strongly weighs in favor of denying the motions to stay.

### Factor #4: Defendants' minimal, if any, burden does not warrant a stay.

Next, the burden on Defendants is minimal. Regardless of Defendants' motions to dismiss, "Defendants would likely be deposed anyway as witnesses regarding Plaintiffs' municipal liability claims, any additional burden associated with also being asked questions as to the individual liability claims would be minimal."[60]

Further, the potential burden that discovery may have on Defendants' Fifth Amendment rights is also minimal and does not warrant a stay. In more detail, Defendants "must demonstrate more than the mere possibility of prejudice" related their Fifth Amendment rights.[61] In *Cigna II*, although the defendant was indicted, he had not declared his intention to invoke his Fifth Amendment privilege nor had he provided any evidence of the subjects that could be implicated by such a decision.[62] The *Cigna II* defendant thus failed to demonstrate how he would be prejudiced in either case if he invoked his Fifth Amendment privilege in both.[63]

Here, just like the *Cigna II* defendant, none of the defendants have demonstrated how they

---

[58] *Id.*
[59] *Alcala v. Webb County*, 625 F. Supp. 2d 391 (S.D. Tex. 2009).
[60] *Estate of McClain*, 2021 U.S. Dist. LEXIS 17099 at * 13.
[61] *Cigna II*, 2020 U.S. Dist. LEXIS 58004 at *13.
[62] *Id.* at *9 n. 6.
[63] *Id.* at 11.

13

would be prejudiced in their overtime theft case. Defendants have only made the conclusory statements that their "ability to effectively defend this litigation will implicate [their] Fifth Amendment rights."[64] In addition to failing to demonstrate how this litigation will implicate their constitutional rights, Defendants' argument misses the mark entirely. Defendants' overtime theft did not cause Plaintiffs' deaths. Indeed, contrary to Defendants' argument, a defendant in a civil case must invoke his Fifth Amendment rights as to specific inquiries.[65] And only after the defendant makes a specific objection, then the court will make a privilege determination. *Id.* Thus, it is not enough for a defendant to merely state that he will at some point assert his Fifth Amendment rights – particularly when those rights minimally overlap with the claims in this case.[66]

Therefore, this factor supports denying the motions to stay.

**Factor #5: The Court's interests in judicial efficiency and expediency outweigh an indefinite stay.**

Next, "[i]n determining the propriety of a stay, a court can consider its own interests in efficient administration and judicial economy."[67] This factor includes, both judicial efficiency and judicial expediency.[68] "Considering judicial efficiency, a court must analyze the extent to which the outcome of the criminal proceeding would simplify the issues in the civil proceeding."[69] In this case, "final resolution of the criminal case would not alter the issues in this civil case because there is no overlap in the subject matter of the two cases." And as a result, "regardless of the

---

[64] *See* Def. Wood's Mot. ¶ 36; Def. Medina's Mot. ¶ 31; Def. Reyna's Mot. ¶ 38; Def. Pardo's Mot. ¶ 31; Def. Gonzales' Mot. ¶ 35. Def. Lovings's Mot. ¶ 31.
[65] *Duncan*, 2017 U.S. Dist. LEXIS 176350 at *12 (emphasis added).
[66] *Id*
[67] *Gonzalez*, 571 F. Supp. 2d at 765.
[68] *Alcala*, 625 F. Supp. 2d at 406-07
[69] *Duncan*, 2017 U.S. Dist. LEXIS 176350 at *13.

outcome of the criminal proceedings . . . this Court would still need to resolve these civil proceedings."[70]

In addition, the Court has "an obligation to move its docket, and not let cases languish before it."[71] Therefore, this Court also has a strong interest in favor of denying the motions to stay.

### Sixth Factor: The public interest weighs in favor of denying Defendants' latest attempt to conceal evidence because the public deserves to know the truth about the Houston Police Department's practices.

Finally, the public maintains a strong interest in moving this case forward. This case involves immense national and local public interest.[72] When addressing this factor, in the Elijah McClain case, the Court noted the following:

> [T]he Court can take judicial notice that this case has received widespread attention locally, state-wide, and nationally. The public, too, has a strong interest in knowing the answers to the same difficult questions being posed by Mr. McClain's family. It is not in the interest of the public or in the interest of justice to "put on the back burner" discovery in a case that raises significant questions about the City of Aurora's policing and paramedic practices. It may be that there is nothing constitutionally wrong with the conduct that eventually led to Mr. McClain's death. If so, then the public will be better served by knowing that hard reality, as fairly determined by the judicial process, sooner rather than later. In short, a stay of discovery is not appropriate in this case.[73]

Based on these sanme reasons a stay is not appropriate in this case.

### STAY RELATED TO GALLEGOS, GOINES, AND BRYANT

---

[70] *Id*. at *13-14.
[71] *Alcala*, 625 F. Supp. 2d at 407.
[72] *See e.g.* St. John Barned-Smith, *Harding Street victims' families sue city and Houston cops, likening botched raid to 'Training Day'*, HOU. CHRON. January 28, 2021; (Houston Chronicle); Jacob Sullum, *Two Federal Lawsuits Say the Houston Police Department's Culture of Corruption and Impunity Killed an Innocent Couple*, Reason, Jan. 28, 2021 (Reason); Neil Vigdor, *6 More Houston Police Officers Charged After Fatal 2019 Raid*, N.Y. TIMES, January 21, 2021 (New York Times); Brittney Martin and Eli Rosenberg, *Two people were killed in a botched drug raid. Investigators say the official story was a lie.,* WASH. POST, July 26, 2019 (the Washington Post); Christina Maxouris, Tina Burnside and Jeremy Grisham,*Houston officer lied in search warrant leading to drug raid that left 2 people dead, 5 officers hurt, affidavit says,* CNN, Feb. 19, 2019 (CNN).
[73] *Estate of McClain*, 2021 U.S. Dist. LEXIS 17099 at *13-14.

Finally, Defendants Gallegos and Goines have not yet filed motions to stay the Nicholas Plaintiffs' lawsuit, and Defendant Bryant's motion to stay is not yet ripe. However, the Nicholas Plaintiffs recognize that the state of Texas has charged Gallegos and Goines with murder, and the United States has charged Goines and Bryant with federal civil rights violations. Thus, these claims do significantly overlap with Plaintiffs' claims. As a result, Plaintiffs are agreed to a limited stay of the depositions of Gallegos, Goines, and Bryant until September 1, 2021.

## CONCLUSION

For the reasons discussed above, the court should deny Defendants' Motions to Stay.

Respectfully submitted,

/S/ Michael Patrick Doyle

_____
MICHAEL PATRICK DOYLE
PATRICK MASON DENNIS
JEFFREY IRVIN AVERY
**DOYLE LLP**
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: (713) 571-1146
Fax: (713) 571-1148
service@doylelawfirm.com *Nic*

and

CHARLES C. BOURQUE, JR.
Louisiana State Bar No. 20118
*Pro Hac Vice* pending
ST. MARTIN & BOURQUE, LLC
315 Barrow St.
Houma, LA 70360
985-876-3891 (phone)
985-851-2219 (fax)
cbourque@stmblaw.com
**Attorneys for Plaintiffs John esadministrator of the Estate of**

**Rhogena Nicholas and Jo Ann Nicholas, individually and as an heir of the Estate of Rhogena Nicholas**

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record on this the 9th day of April, 2021, via CM/ECF, hand delivery, electronic mail, overnight courier, U.S. Mail, certified mail, return receipt request, or facsimile, pursuant to the Federal Rules of Civil Procedure.

/S/ Michael Patrick Doyle
_____
Michael P. Doyle