# Exhibit 1

FILED
7/25/2019 5:35 PM
Diane Trautman
County Clerk
Harris County - County Probate Court No. 2
Accepted By: AA

Cause No. 474728 -401

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| RHOGENA ANN NICHOLAS., | § | NO. ONE (1) |
| | § | |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

**PETITION PURSUANT TO TEX. R. CIV. PRO. RULE 202**
**FOR DEPOSITIONS TO INVESTIGATE CLAIMS**

TO THE HONORABLE JUDGE SIMONEAUX:

COME NOW Petitioners, JOHN NICHOLAS, Temporary Administrator of the

Estate of Rhogena Nicholas, and JO ANN NICHOLAS, Rhogena Nicholas' mother

(together, "The Nicholas Family"), and file this Petition for Depositions to Investigate

Claims pursuant to Rule 202 of the Texas Rules of Civil Procedure:

**REASON FOR FILING OF PETITION**

1.      John Nicholas is a long-time employee of the Louisiana Department of Public

Safety & Corrections, a volunteer fire chief, and active in his hometown of Robeline,

Louisiana. Jo Ann Nicholas retired to Natchitoches, Louisiana, after balancing a lifetime of

community involvement with her late husband, Dr. John A. Nicholas, and raising John

and his sister, Rhogena. Neither John nor Jo Ann Nicholas ("the Nicholas Family") ever

anticipated needing to request an investigation into the conduct that led to the deaths of

Rhogena, and her husband, Dennis Tuttle, a disabled Navy veteran, and the wounding of

five members of Narcotics Squad 15 of the City of Houston ("the City") Police Department

("HPD").  The Nicholas Family neither sought nor would ever have wanted the public

1

notoriety inflicted on Rhogena Nicholas and her character.  They knew her to be a loving, good person who helped many in her local Houston community.  *See*, Exhibit "A", Recent Photograph of Rhogena Nicholas.

2.    Jo Ann Nicholas treasured her close relationship with Rhogena, ending it with a call to Rhogena and Dennis less than an hour before their untimely deaths.  The Nicholas Family know they must rely heavily on the message shared in the last daily prayer sent by Rhogena:  "Please give me the strength and energy for all that lies ahead…"  *See*, Exhibit "B", Rhogena Nicholas to Jo Ann Nicholas, 1/28/19.

3.    The final call ended with Ms. Jo Ann Nicholas sending her love to both Rhogena and Dennis Tuttle as they signed off for an afternoon nap.  Less than an hour later, heavily armed members of Narcotics Squad 15 broke down the door to their home, killed their dog with a shotgun, fired three rounds into Rhogena, and nine rounds into Dennis Tuttle.  Five members of HPD Narcotics Squad were injured as well, four by gunshots.  Not a single one of the human beings, or Rhogena's dog, deserved what happened to them at 7815 Harding Street ("the Harding Street Home") on January 28, 2019 ("the Harding Street Incident").

4.    Each new step in this terrible ordeal has brought home to the Nicholas Family, supported by the family of Dennis Tuttle ("the families"), that they need press on with their efforts to uncover the full truth about what led to the Harding Street Incident. This is especially true after HPD reportedly completed its investigation months ago without correcting any portion of its globally proclaimed narrative about their loved ones, their

lives, and what actually occurred in the Harding Street Incident.

## LEGAL BASIS FOR THIS PETITION

5.      The Nicholas Family seek to investigate a potential claim against the City arising from the Harding Street Incident and untimely loss of Rhogena Nicholas. The Nicholas Family wishes to proceed with further legal action if the claims would be fully justified in fact and law.  Texas law provides for a legal process to request an order for depositions, which include provisions for requesting documents be provided at the time of the deposition, to investigate a potential claim or suit.  Tex.R.Civ.Pro. 202.1(b); 199.2(b)(5).  As set forth by law, this Court would be a proper venue and would have full jurisdiction for claims, if a suit was to be filed. Tex.R.Civ.Pro. 202.2(b).

6.      The potential claims against the City would include those provided under the Texas Wrongful Death/Survival Statute, Tex.Civ.Prac. & Rem. Code § 71.021 and as applied through 42 U.S.C. §§ 1983, 1988 for the Estate and Jo Ann Nicholas as a legal heir. The potential claims would also include those that might arise from violation of Rhogena Nicholas' rights under the Fourth Amendment of the United States Constitution (wrongful search and seizure; excessive force) enforced pursuant to 42 U.S.C. § 1983.  The City would be directly liable for such deprivations caused by "governmental custom" demonstrated by proof of repeated incidents suggesting a pattern or practice so permanent and well-settled to constitute a custom or usage with the force of law. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-92 (1978).

7.      This Petition is also intended to give the City notice of a potential claim under the

3

Texas Tort Claims Act as a result of the misconduct of agents, managers, and representatives of the City leading to the Harding Street Incident and the deaths of Rhogena Nicholas and her husband, Dennis Tuttle.

## THE CITY'S PERSISTING "DRUG HOUSE" AND "DIRT BAGS" STORY ABOUT RHOGENA, DENNIS, AND THE HARDING STREET INCIDENT

8.      The City deliberately chose to push out a worldwide story about the Harding Street Incident, based on the flimsiest grounds and even as it was simultaneously compiling more and more evidence internally that undercut its chosen narrative.  *See*, Exhibit "C", HPD Officer R. Bass Affidavit.  The City's narrative about the Harding Street Incident, repeatedly delivered with City officials and police command staff standing in support, described a ferocious assault by both Rhogena and her husband on a "hero," Gerald Goines, while he led Narcotics Squad 15 into a well-known "drug house" with residents so dangerous it required a "no-knock" forced entry:

> Yesterday about 4:30, shortly before 5:00, narcotic officers from the Houston Police Department from the Group 15 initiated a search warrant at the location at the 1700 block of Harding Street. Upon making entry, they immediately came under fire the first officer through the door armed with a shotgun was charged immediately by a very large pit bull that charged at that officer. He discharged rounds that we know that the dog was struck and killed. At the same time a male suspect came from around the back and started – and opened fire – with a .357 magnum revolver. That officer was struck in the shoulder. He went down, fell on the sofa in the living room, at which time a female suspect went towards that officer, reached over the officer and started making a move for his shotgun. At that time, backup officers and other officers on the staff made entry, discharged their firearms striking that female suspect.

*See*, January 30, 2019, Video from the City's Press Conference @ https://doylellp.sharefile.com/d-s540e27c337b4b74b ("the City's story"). With the Chief

4

of Police standing alongside, Houston Police Officer Union President Joe Gamaldi reiterated exactly what kind of "dirt bags" Rhogena and Dennis really were. *See*, January 30, 2019, Video from the City's Press Conference @ https://doylellp.sharefile.com/d-sd35caf644e94b579.

9.      Even while police command staff were insisting that the black tar heroin "drug house" allegation justifying Drug Squad 15's assault on the Harding Street Home was true, HPD was simultaneously confirming internally that it was false.  *See*, January 30, 2019, Video from the City's Press Conference @ https://doylellp.sharefile.com/d-sd1cd8103a264636b. ("Yeah. We actually bought black tar heroin at that location").

10.      The reason we know this now is that in a legitimate police operation, there can never be any doubt about the identity of a Confidential Informant ("CI"). *See, e.g.*, Exhibit "D", HPD General Orders #600-16, 4 (c); (d) (7/15/03 issue date).  The identity of CI's providing specific information about criminal activities (called "significant meetings"), is required to be documented and readily accessible to police managers. *Id.*  HPD's managers knew from the beginning that there was no documented CI significant meeting record in its files supporting the assault on the Harding Street Home. *See*, Exhibit "C", HPD Officer R. Bass Affidavit.  Instead, Officer Bryant and then Lieutenant Marsha Todd and others were frantically searching to identify a non-existent CI with Gerald Goines at the hospital, even while the black tar heroin "drug house" falsehood continued to be repeated in a press conference at the same hospital.  *See*, Exhibit "C".

5

### WHY THE NICHOLAS FAMILY BEGAN TO INDEPENDENTLY INVESTIGATE THE CITY'S STORY

11.     Although expending substantial time and effort to immediately push the City's story, no member of HPD, or the City, ever contacted the Nicholas Family for more information or any other reason. Before ever publicly speaking about their terrible loss, and months after the Harding Street Incident, the Nicholas Family requested that HPD at least acknowledge those parts of the City's story that had been so diligently promulgated, officially and unofficially, that were simply false:

> We are not asking you at this time to fully comment on the course of the investigation and all the findings to date….
>
> You and other members of your department have made factually incorrect, but globally disseminated, statements about Rhogena Nicholas and her husband, Dennis Tuttle, from the date of their deaths and going forward.   These statements have not been publicly corrected or retracted to date, and they continue to be extremely hurtful to Ms. Nicholas' mother and brother, especially when asserted in such a public manner.

Exhibit "E", 3/19/19, Letter to HPD Chief Art Acevedo.

12.  Even after this plea, the City's story about Rhogena and the Harding Street Incident remained the same. But a neighbor's cell phone video provided to the Nicholas Family in March, and identified as already provided to the Texas Rangers, began to suggest the City's story about what really happened inside the Harding Street Home did not line up. For example, although the City's story emphatically recounted a frantic gunfight ending almost as soon as it started, the cell phone video revealed two (2) lone gunshots approximately thirty minutes after the assault ended.  *See,* Cell phone video (time synched) at https://doylellp.sharefile.com/d-s160b396831744549. Minutes after the two

(2) lone gunshots, police on the scene, presumably part of Narcotics Squad 15, were captured saying repeatedly: "Both suspects down". *See,* Cell phone video (time synched, partial transcript) at https://doylellp.sharefile.com/d-sef3e7b2e5c540219.  Almost another hour later, police on the scene began "negotiating" with the Harding Street Home. *See,* Cell phone video (time synched) at https://doylellp.sharefile.com/d-s7728d6e05224a86a.

### WHAT HPD LEFT BEHIND AT THE HARDING STREET HOME SUGGESTS ABOUT THE HARDING STREET INCIDENT---2 PRELIMINARY FINDINGS IN SUPPORT OF REQUEST FOR RULE 202 DEPOSITIONS

13.    The City has blocked efforts by the Nicholas Family to secure even the 911 call records relating to the Harding Street Incident.  *See*, Exhibit "F", 4/18/19 Letter from Office of Attorney General issued at request of the City.  HPD investigators spent a limited period of time at the Harding Street Home.  HPD has refused to disclose at this time what physical materials may have been removed from the scene, including whether it supports or undercuts the City's story.

14.    The Nicholas Family retained Michael S. Maloney to lead a team in an independent forensic investigation.   *See*, Exhibit "G", CV of Michael Maloney, MFS (Master of Forensic Science). Mr. Maloney is an internationally recognized forensic scientist. Mr. Maloney has served as Senior Agent and Forensic Consultant for the United States Naval Criminal Investigative Service and then Senior Instructor for Death Investigations at the Federal Law Enforcement Training Center. *Id.*

15.    Both the Texas Rangers and the Harris County Institute for Forensic Science were invited by the Nicholas Family, but declined, to attend and take control of any recovered

materials during the independent investigation. *See,* Exhibit "H", Rangers Invitation; Exhibit I", HCIFS Invitation.  When the scene was finally fully analyzed, it did not appear that HPD conducted a full ballistic recovery to even test the City's story.  Instead, HPD's investigation at the Harding Street Home left what appeared to be significant forensic materials untouched and unrecovered.

16.     Michael Maloney and his team worked over four days at the Harding Street Home, identifying ballistic and other materials HPD failed to collect and conducting extensive scene documentation for ballistics markings and reconstruction.  A full reconstruction would require access to the materials and documentation that may have been collected during HPD's investigation.

17.     However, based on the full scene examination conducted over four days, the materials recovered, lab testing, and analysis performed to date, and subject to the limitations noted further below, Mr. Maloney can with a high degree of confidence offer the following preliminary findings in support of the continued investigation by the Nicholas Family:

> **PRELIMINARY FINDING #1:**
> **Rhogena Nicholas was fatally struck by a bullet from a weapon fired outside the Harding Street Home by a person shooting from a position where the shooter could not have seen Ms. Nicholas at the time she was fatally shot.**



See, Exhibit "J", Preliminary Ballistics Reconstruction by Michael Maloney of the Harding Street Incident.



See, Exhibit "K", Preliminary Ballistics Reconstruction Likely Fatal Shot to Rhogena by Michael Maloney of the Harding Street Incident.



See, Exhibit "L", Photograph of Ballistics Evaluation at the Harding Street Home.



*See*, Exhibit "M", Harris County Institute of Forensic Sciences Report, documenting of Gun Shot Wounds (GSW) to Rhogena Nicholas.

# Recovery of Fatal Bullet to Rhogena



See, Exhibit "N", Photographs of Ballistic Material Recovery at Harding Street Home (likely Rhogena Nicholas fatal bullet, as indicated by DNA testing. The major contributor DNA profile on the bullet recovered matches the DNA profile obtained from Rhogena Nicholas' reference blood sample provided by the Harris County Institute of Forensic Sciences from the autopsy).

18.     Of note, the outside firing position for the fatal bullet to Rhogena Nicholas is based on an analysis of the trajectories established during the investigation to date. Theoretically any shot could have been fired at any point along a trajectory, since positions and locations are established based on convergence points of trajectories and the dynamics of the event. The ballistics trajectory indicating where Rhogena Nicholas was fatally wounded, and the bullet recovered with female DNA, however, most closely tracks from

the position identified based on the evidence available to date.

**PRELIMINARY FINDING #2:**
**An unidentified person held a weapon against the inner dining room wall and fired 2 shots into the inner dining room wall towards the kitchen (or within 2-3 inches of the inner dining room wall, as confirmed by lab testing of swab samples)(approximately 21 feet from the front door and 14 feet from where Dennis Tuttle was recovered).**



See, Exhibit "O", Schematic of Harding Street Home.



See, Exhibit "P", Photograph of Ballistics Markings against inner dining room wall of Harding Street Home.



See, Exhibit "Q ", Photograph of Separate Ballistics Markings against inner dining room wall of Harding Street Home, including evidence gunpowder residue from 2 shots (confirmed by Laboratory Testing, Exhibit "R", Lead residue confirmation).

19.     The materials collected, documentation, and lab testing, regardless of how incomplete, during HPD's control of the Harding Street Home scene would be important to confirm, or even potentially modify, these preliminary findings and others suggested. Moreover, full scene reconstruction would require comparison with the statements of persons present during the Harding Street Incident.   These additional materials would include:

a.     The locations and type of spent cartridge cases and bullet/ballistics

materials recovered before Mr. Maloney's team arrived at the Harding Street Home (particularly any .38/.357 caliber recovered in the kitchen that may have been fired into the inner dining room wall);

b.      Medical and ballistics documentation of the wounds sustained by the HPD personnel during the Harding Street Incident by gunshot or otherwise, as well as ballistics materials that may have been recovered during medical intervention and from protective vests worn during the Harding Street Incident;

c.      The weapons identified as being used or present during the Harding Street Incident, and by who used;

d.      The bullet count remaining in the weapons used by the HPD and the bullet count in any additional magazines, speed loaders or other devices carried at the time of the incident; and

e.      The bullet and spent bullet count from any revolver weapon used at the scene or seized from the scene.

20.     Given the indications that the City's story does not line up with the physical facts at the Harding Street Home, the Nicholas Family believes the Court has more than sufficient basis to order the depositions requested to investigate the wrongful death, civil rights, and other claims arising from the Harding Street Incident.

## PATTERN AND PRACTICES--GUNS, DRUGS, AND MONEY

21.     Petitioner requests the depositions of the two police managers responsible for oversight of Gerald Goines in the Narcotics Division. As noted above, the identity of confidential informants ("CI's) offering specific information about criminal activities (called "significant meetings"), must be documented and readily accessible to police managers. *See, e.g.*, Exhibit "D" HPD General Orders #600-16, 4 (c); (d) (7/15/03 issue date). For obvious reasons, this policy is a basic safeguard to maintain "the integrity of the

department and the individual officers" and ensure "accountability".   *Id.* (Policy). Overseeing practices that instead allow officers such as Gerald Goines to simply make up CI's, or fabricate criminal activity used to justify warrants, would violate the Fourth Amendment of the United States Constitution.   *See*, Exhibit "C", HPD Officer R. Bass Affidavit.

22.     Local media (KHOU-11) has already revealed that in the last 109 drug cases Gerald Goines filed based on a sworn affidavit in support of a search warrant: "In every one of those cases in which he claimed confidential informants observed guns inside, no weapons were ever recovered, according to evidence logs Goines filed with the court."

https://www.khou.com/article/news/investigations/khou-11-investigates-issues-with-embattled-houston-police-officers-past-no-knock-warrants/285-13b94210-449c-4406-b843-f24a45c814ce last accessed July 15, 2019.

## ADDITIONAL REASON, IF NECESSARY, TO SUPPORT THE NICHOLAS FAMILY'S REQUEST FOR THE 3 SPECIFIC DEPOSITIONS

23.     HPD's investigations of past officer-involved shooting incidents, at least in the most recent publicly available records uncovered, indicates that for years HPD found 100% of the intentional shootings of persons by its officers "justified." *See*, Exhibit "S", Document 83-18, filed in 4:14-cv-02810, United States District Court, Southern District of Texas, Page 5 of 48 (2009-2012).  Permitting the Nicholas Family to in a timely manner investigate the HPD practices that led to the Harding Street Incident, without interruption or interference in the important work being conducted to fix criminal responsibility for the actual conduct at the Harding Street Incident, is therefore wholly appropriate.

**PARTIES TO BE DEPOSED**

24.     At least in the most recent years, HPD's Narcotics Division, including Gerald Goines and Narcotics Squad 15, were directly overseen by Captain Paul Q. Follis and Lieutenant Marsha Todd.   *See*, Exh. "T", HPD Command Overview-Narcotics, July 2018; Exh. "C", Affidavit of HPD Officer R. Bass.  Both are able to provide testimony as to the policies, and the actual practices, leading to: "no-knock" warrant abuses, abuse of the confidential informant program, and failure to monitor the guns, drugs, and money used by Gerald Goines and others in the Narcotics Division.

25.     The City may have interests adverse to the Nicholas Family in any legal action that might be filed after investigation and will therefore be served with this Petition. The name, addresses, and phone numbers of the parties to be deposed are as follows:

    a.    The City of Houston (Police Department) is a municipal corporation that may be served with process by serving the City Secretary, 900 Bagby, Houston, Texas 77002, Tel. 832.393.1100. It is requested that this party designate a representative or representative(s) able to testify as to the information known or reasonably available to the City regarding:

        (1)    the alleged reason(s) for targeting the Harding Street Home for a "no knock" warrant execution;

        (2)    the policies and practices for enrollment and supervision of confidential informants, including handling of money and drugs with such persons;

        (3)    the policies and practices for investigation of officer-involved shootings; and

        (4)    Audits, if any, of the Narcotics Division (specifically including audits of the use of CI's; documentation of CI work and "significant meetings"; affidavits filed in support of warrants, and the use of no-knock warrants by Gerald Goines or in Narcotics) in the past 3

years.

b.    Lieutenant Marsha Todd, c/o City of Houston Police Department, 1200 Travis St, Houston, Texas 77002, Tel. 713.308.3300, to testify as to the following matters:

(1)    the alleged reason(s) for targeting the Harding Street Home for a "no knock" warrant execution;

(2)    the supervision of Narcotics Squad 15, including Gerard Goines and Stephen Bryant;

(3)    the supervision and monitoring of applications for warrants by Narcotics Squad 15;

(4)    the supervision and monitoring of use of confidential informants by Narcotics Squad 15, including tracking of money and drugs with such persons.

c.    Captain Paul Q. Follis (currently Hobby Airport, formerly Narcotics Division), City of Houston Police Department, 1200 Travis St, Houston, Texas 77002, Tel. 713.845.6800.  Capt. Follis was personally responsible for supervision of the Narcotics Division during relevant times, regarding:

(1)    the alleged reason(s) for targeting the Harding Street Home for a "no knock" warrant execution;

(2)    the supervision of Narcotics Squad 15, including Gerard Goines and Stephen Bryant;

(3)    the supervision and monitoring of applications for warrants by Narcotics Squad 15;  and

(4)    the supervision and monitoring of use of confidential informants by Narcotics Squad 15, including tracking of money and drugs with such persons.

26.    The noble service of law enforcement officers across this nation is tarnished by officers or agencies that consistently refuse to meet their basic responsibility to act honestly and with respect at all times.  While the vast majority of law enforcement

21

professionals carry out their solemn obligations with integrity, the worst officers can and do flourish in an environment that fosters their misconduct. This misconduct persists when police managers fail to pay enough attention or simply look the other way when faced with indicia of misconduct. And while the families continue to fully support the prosecutors investigating the likely criminal conduct by some of those involved in the Harding Street Incident, the Nicholas Family's investigation into the practices and patterns that likely led to the Harding Street Incident should not be held back. *See*, Statement of John Nicholas before Harris County Commissioners Court, 6/25/2019 @ https://doylellp.sharefile.com/d-sf9efd3455104b2fa. The need to look further into the actual practices within HPD that resulted in the Harding Street Incident has never been more urgent.

**REQUEST FOR RELIEF**

27.    The Nicholas Family respectfully request an order authorizing the oral depositions, with subpoena duces tecum, as set forth herein.

Respectfully submitted,

_____

MICHAEL PATRICK DOYLE (#06095650)
PATRICK M. DENNIS (#24045777)
JEFFREY I. AVERY (#24085185
DOYLE LLP
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: 713.571.1146
Fax: 713.571.1148
service@doylelawfirm.com