# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **CLIFFORD F. TUTTLE, JR., AS REPRESENTATIVE OF THE ESTATE OF DENNIS W. TUTTLE, DECEASED, ROBERT TUTTLE, AND RYAN TUTTLE** <br> *Plaintiff*, <br><br> v. <br><br> **CITY OF HOUSTON, GERALD GOINES,** in his individual capacity; **STEVEN BRYANT**, in his individual capacity; **FELIPE GALLEGOS**, in his individual capacity; **ERIC SEPOLIO**, in his individual capacity; **MANUEL SALAZAR**, in his individual capacity; **THOMAS WOOD**, in his individual capacity; **OSCAR PARDO**, in his individual capacity; **FRANK MEDINA**, in his individual capacity; **CLEMENTE REYNA**, in his individual capacity; **CEDELL LOVINGS**, in his individual capacity; **NADEEM ASHRAF**, in his individual capacity, **MARSHA TODD**, in her individual capacity, and **ROBERT GONZALES**, in his individual capacity <br> *Defendant*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No.: 4:21-cv-270 |

## CONSOLIDATED WITH

| | |
|---|---|
| **JOHN NICHOLAS**, as temporary administrator of the Estate of Rhogena Nicholas and **JO ANN NICHOLAS**, individually and as an heir of the Estate of Rhogena Nicholas, <br><br> *Plaintiffs*, <br><br> v. <br><br> **CITY OF HOUSTON; ART ACEVEDO,** in his official capacity as the chief of police of | § § § § § § § § § § § § § § § |

| | |
|---|---|
| the Houston Police Department, **GERALD GOINES**, in his individual capacity; **STEVEN BRYANT**, in his individual capacity; **FELIPE GALLEGOS**, in his individual capacity; **ERIC SEPOLIO**, in his individual capacity; **MANUAL SALAZAR**, in his individual capacity; **THOMAS WOOD**, in his individual capacity; **OSCAR PARDO**, in his individual capacity; **FRANK MEDINA**, in his individual capacity; **CLEMENTE REYNA**, in his individual capacity; **CEDELL LOVINGS**, in his individual capacity; **NADEEM ASHRAF**, in his individual capacity; **MARSHA TODD**, in her individual capacity; and **ROBERT GONZALEZ** in his individual Capacity, | § § § § § § § § § § § § § § § § § § § |
| *Defendants*. | § |

## **DEFENDANTS CITY OF HOUSTON'S SUPPLEMENTAL MOTION TO STAY**

TO THE HONORABLE JUDGE OF SAID COURT:

1. Defendants, Gallegos, Ashraf, Wood, Pardo, Medina, Reyna, Lovings, and Gonzales ("City Defendants") file this their Supplemental Motion to Stay and show the Court the following:

### I. Exhibit List

- Exhibit A, affidavit of criminal defense counsel, Rusty Hardin, who represents Gallegos;
- Exhibit B, affidavit of criminal defense counsel, Paula Goodhart, who represents Gonzales;
- Exhibit C, affidavit of criminal defense counsel, Daniel Werlinger, who represents Ashraf;
- Exhibit D, affidavit of criminal defense counsel, Lisa Andrews, who represents Reyna;

### II. Background

2. On February 19, 2021 to March 16, 2021 Defendants, Gallegos, Wood, Pardo, Medina, Reyna, Lovings, Ashraf, and Gonzales ("City Defendants"), timely filed 12(b)(6) motions and in the alternative motions to stay (Doc. #s 11, 21, 22, 23, 24, 25, 26, and 34). On April 13, 2021 and April 7, 2021 Defendant Goines and Defendant Bryant, each filed motions to stay (Doc. # 52 and

Doc. # 43, respectively). These City Defendants supplement their motions to stay, and indicted former officers Goines and Bryant, the City of Houston ("City"), Chief Art Acevedo, in his official capacity ("Acevedo") and Todd join in the City Defendants' supplemental motion to stay these civil proceedings pending the resolution of criminal charges stemming from the same occurrence that is the subject of this lawsuit.

### III. Summary of Argument

3. This motion to stay should be granted because all of the factors the Court is required to consider in determining whether special circumstances warrant a stay are met. In addition, Plaintiffs have chosen to employ the criminally indicted offenses into their theories of liability in this case, including *Monell* claims against the City and Acevedo. Plaintiffs also rely on and incorporate the criminally indicted offenses of organized crime, tampering and falsifying government records, misappropriation of funds including overtime, and misuse of confidential informants as evidence of the defending officers' knowledge, intent, and motive. Since 10 of the 14 defending officers have been indicted and will be forced to assert Fifth Amendment privileges if the stay is denied, none of the parties will be served by a severely hampered discovery process that refuses the free flow of information.

### IV. Pending Felony Criminal Charges Relating to Plaintiffs' Allegations in this Suit

4. Each of these City Defendants has been criminally indicted as a result of the incident made the basis of this suit, which involved the shooting deaths of the decedent Plaintiffs, use of confidential informants ("CIs"), and the raid of decedent Plaintiffs' home on Harding Street on January 28, 2019 ("Harding Street raid"). State criminal charges are pending against, Reyna, Wood, Ashraf, Lovings, Medina, and Pardo, for felony charges of engaging in organized criminal activity on January 28, 2019, the day of the Harding Street raid. In addition, other pending state

criminal charges against these City Defendants include felony murder of decedent/Plaintiff Tuttle ("Tuttle") on January 28, 2019 (against Gallegos), several felony charges for misapplications of funds for CIs (against Gonzales), several felony charges for tampering (falsifying) governmental records concerning CIs (against Reyna and Wood), and felony aggregate theft by public servant (against Reyna and Wood).  Indicted Defendants and former officers, Goines and Bryant, have both state and federal criminal charges pending against them for felony murder of Tuttle (against Goines), multiple felony counts of tampering with (falsifying) governmental records (against Goines and Bryant), and felony aggregate theft by public servant  (against Goines and Bryant). Finally, both Goines and Bryant have been federally indicted for acts occurring during the Harding Street raid.  Specifically, Goines has been federally indicted for two (2) counts of deprivation of rights under color of law, two (2) counts of falsification, destruction, or alteration of records, and three (3) counts of tampering with a witness or informant.  Bryant has been federally indicted for falsification, destruction, or alteration of records relating to the Harding Street raid.  Consequently, there are some 34 criminal felony charges for which these officers have been indicted.

5. As established in the attached affidavits of criminal defense counsels, the criminal trials are expected to conclude by this year, in fall 2021, and if convicted, Gallegos, Ashraf, and Reyna (and others) face incarceration for 99 years or life.  Exhibits A- D, attached hereto.

### V. Plaintiffs Incorporate these Criminal Charges as the Bases for their Theories of Civil Liability

6. These criminal charges stem from the Harding Street raid, but what is more problematic and enhances the worthiness of a stay is that Plaintiffs' complaints incorporate these alleged criminally indicted acts and evidence into the bases for their theories of civil liability.  If this case were simply about the subject shooting, the need for a stay based on Fifth Amendment concerns would belong solely to the shooter.  Instead, Plaintiffs squarely interject the factual allegations

stated in the criminal indictments directly into their complaints as alleged evidentiary support for their theories in this civil suit, including but not limited to *Monell* policies, practices, and customs and the indicted, defending officers' intent, knowledge and motivation behind the acts. Specifically, Plaintiffs complain of:

> "illegal search warrants obtained by perjury, …false statements…improper payments to informants…murder…" (Doc #49 ¶ 1 and see Doc # 48 ¶¶ 86 and 97). Reyna, Wood, Bryant and Goines are indicted for falsifying these government records;

> "murder, civil rights violations to overtime theft and tampering with evidence" as to "Goines, Gallegos, Bryant, Reyna, Pardo, Ashraf, Lovings, Wood [and] Medina…" (Doc #49 ¶ 2 and see Doc # 48 ¶¶ 86 and 97);

> "custom and practice that killed Nicholas…[with a] practice of lying to obtain a search warrant for 7815 Harding Street." (Doc #49 ¶ 3) and include "misapplied government property" that Gonzales is charged with (Doc # 48 ¶¶ 97- 105 and Doc # 49 ¶ 91). Gallegos and Goines are charged with murder;

> the "April 25, 2018" Goforth raid allegedly involving false affidavits and CIs and other "no-knock warrants" allegedly secured via falsification of government records (Doc #49 ¶43, ¶¶74-75 and ¶¶ 33-45 and Doc # 48 ¶¶142-143); Reyna, Goines and Bryant have been indicted for their acts in this raid;

> the alleged organized crime of Reyna, Wood, Medina, Pardo, Lovings, and Ashraf, have all been indicted for engaging in organized from from January 3, 2018 to January 28, 2019, the day of the Harding Street raid, which covers a number of alleged raids by Plaintiffs (Doc #49 ¶ 57-58, 70-71, and Doc # 48 ¶¶ 152- 161) including the Tuam raid (Doc # 49 ¶¶ 76-77 and Doc # 48 ¶156), Knoxville raid Doc #49 ¶ 80; Doc # 48 ¶ 156 and the Napoleon raid Doc #49 ¶ 81-82 and Id.); and

> failure-to-train-and-supervise, alleged history of securing no-knock warrants, and "use of CIs" (Doc #49 ¶¶59 and 72 and Doc # 48 ¶¶ 105 and 128) stem in part from their supervisory claims against Lt. Gonzales.

7. Plaintiffs also rely on the very investigation of the "Harris County District Attorney's office" (sic) (Doc #49 ¶ 85), "which [allegedly] produced recovered cell phone data among other things…" (Doc #49 ¶ 85). Plaintiffs attempt to use this evidence to prove the indicted defendant officers' intent and knowledge of the alleged lies to show "Goines was not anywhere near Harding

Street" (Doc #49 ¶ 87).   Plaintiffs also allege that the indictments concerning "overtime pay" served as the financial incentive for these defendant officers. (Doc # 48 ¶¶ 157-165 and Doc # 49 ¶¶ 85-86).

8.      Plaintiffs' incorporation and reliance on the very facts of the criminal indictments heightens the need for a stay in this case.  As recognized by their criminal defense counsels, "Plaintiff have therefor incorporated the criminal allegations into their civil theories."  Exhibit B, but also see exhibits A, C, and D.

### VI.    Court's Considerations of Stay Based on 5th Amendment

9.      A court may, in its discretion, stay a civil case pending the resolution of a parallel criminal proceeding when the interests of justice so require. *Alcala v. Tex. Webb County*, 625 F. Supp. 2d 391, 396 (S.D. Tex. 2009) (citing *Dominguez v. Hartford Fin. Servs. Group, Inc.,* 530 F.Supp.2d 902, 905 (S.D. Tex. 2008)).  If a criminal indictment is returned against a civil defendant, a <u>court should strongly consider staying the civil proceedings</u> until the related criminal proceedings are resolved.  *Whitney Nat. Bank v. Air Ambulance ex rel. B & C Flight Mgmt., Inc.,* CIV.A. H-04-2220, 2007 WL 1468417, at *3 (S.D. Tex. May 18, 2007).  Courts consider the following factors in determining whether special circumstances warrant a stay: (1) the extent to which the issues in the criminal case overlap with the issues presented in the civil case; (2) the status of the case, including whether the criminal defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.  *Dominguez*, 530 F. Supp. 2d at 905 (S.D. Tex. 2008).  The movant, Defendant Officers, bear the burden of demonstrating the stay is warranted.  *Wedgeworth v. Fibreboard Corp.,* 706 F. 2d 541, 545 (5th Cir. 1983).

10. That said, the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay. *Id.* at 906-07. The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil action involving the same matter. *Whitney Nat. Bank*, 2007 WL 1468417, at *2; *Librado v. M.S. Carriers, Inc.,* CIV.A. 3:02-CV-2095D, 2002 WL 31495988, at *2 (N.D. Tex. Nov. 5, 2002) ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations."). When evaluating this factor, courts should consider whether, by allowing the civil case to continue, the defendant can effectively defend the civil lawsuit without being pressured into waiving his Fifth Amendment rights. *Reed-Veal v. Encinia,* CV H-15-2232, 2016 WL 6915963, at *2 (S.D. Tex. Apr. 21, 2016). In determining whether issues are related, courts impose a common-sense, fact-bound analysis. *Id.*

### VII. Stay Should Be Granted

11. In addition to the arguments discussed above, the motion to stay should be granted for the following reasons: 1) The six requisite factors for judicial consideration establish the special circumstances that warrant the grant of the stay; 2) The practical impact on the parties' ability to conduct discovery is so severely hampered as to create injustice; and 3) There is no significant harm to Plaintiffs for the delay.

12. First, the six factors, which warrant the grant of a stay in this case, are well established. There is unquestionably substantial and serious overlap between Plaintiffs' civil claims against the

indicted Defendants and their indictments stemming from the same operative facts surrounding the Harding Street raid, such that each's right against self-incrimination could be jeopardized if this civil suit proceeds before the conclusion of the criminal cases. The murder of Mr. Tuttle during the Harding Street raid and the factors leading up to it are at the heart of both criminal and civil suits. The criminal charges are "inextricably intertwined" with the civil rights case and "the Plaintiffs' theories of recovery in the civil lawsuits." Exhibit A. See also exhibits B-D. As discussed above and as cited in Plaintiffs' pleadings, the roughly 34 criminal indictments concern or are alleged by Plaintiffs to concern the January 28, 2019 warrant execution at 7815 Harding Street, and Plaintiffs' theories for civil liability are based on both the alleged criminal acts made during the Harding Street raid and the alleged criminal acts, occurring prior to the raid, including other raids, use of CIs, falsifying government records such as search warrants, and misappropriation of funds, for which ten of the defending officers have been indicted.

13. Criminal defense counsel for Gonzales, Paula Goodhart, explains that Plaintiffs' claims against Gonzales, are "the same gravamen as the State's criminal case against him." Exhibit B. These numerous and substantial overlaps of civil and criminal issues weigh heavily in favor of the stay.

14. Second, these officers have already been criminally indicted and face multiple serious felony charges with sentences to include 99 years to life. Exhibits A-D. Criminal indictments weigh heavily in favor of the stay. Third, weighing the private interests of the Plaintiffs in proceeding expeditiously against the prejudice to Plaintiffs caused by the delay also favors a stay. There is little prejudice to the decedent Plaintiffs, their heirs and estates in a delay. No records, information, documents, or other forms of evidence will be lost due to a short delay. Plaintiffs may likely benefit from the criminal matters proceeding first, as those charges are decided. Delay

is not expected to be "immoderate or of an indefinite duration", as the criminal matters and the right to a speedy criminal trial, are already moving toward trial determinations. *McKnight v. Blanchard*, 667 F. 2d 477,479 (5th Cir. 1982). Exhibits A-D. As established by the attached affidavits of the criminal defense counsels, the criminal trials are expected to conclude this year, in 2021, and therefore will not delay "the civil trial for any unreasonable length of time in consideration of the importance of the privilege and the interests of justice." Exhibit D. See also Exhibits A-C, which draw the same conclusions.

15.    In contrast, weighing the competing interests of the indicted defendants with the minimal disruption to the Plaintiffs greatly weigh in favor of the stay. First, it is undisputed that if the stay is not granted the defending officers will be forced to assert Fifth Amendment rights. A simple review of the only two answers, filed on behalf of any defending officers, demonstrates this: Goines asserted the Fifth Amendment 135 times just in his answer, and Bryant asserted the Fifth Amendment 125 times in his answer [Docs. #33 & #35]. Moreover, criminal defense counsels assure this court that their clients will be forced to assert their Fifth Amendment rights in their answers, responses to discovery, and in depositions. Exhibits A-D. Criminal defense counsel for Gonzales, Paula Goodhart, highlights the pervasiveness of the Fifth-Amendment assertion when she explains, "[e]ven a question as simple as 'Were you a lieutenant with HPD?' must necessarily draw a Fifth Amendment response because both the criminal (and civil) allegation against Gonzales hinges on his alleged supervisory capacity…" Exhibit B. In addition, criminal defense counsels identify the heavy burdens placed on them and their clients should the stay be denied, as they will be required to actively review and approve all pleadings, answers, and responses to discovery made on behalf of their clients to ensure Fifth Amendments rights are not waived. Exhibits A-D. Likewise, criminal defense attorneys anticipate appearing at the depositions of their

clients. Exhibits A-D. The "huge burden" that will be placed upon the criminal defense attorneys if a stay is not granted is detailed in their affidavits and include their review of the indicted defendants' answer, responses to discovery, including interrogatories and requests for admissions and production of documents, and attending their clients' deposition. Exhibits A-D. Some of the defense counsel expressed an inability to "timely meet these (civil) deadlines to preserve my client's privileges." Exhibits D, B, and C. Finally, the admissibility of each defending officer's invocation of the Fifth Amendment, if a stay is denied, will unfairly and negatively impact the officers in "extreme and unfair" ways. Exhibit A. See also discussion below.

16. Other civil defendants, besides these criminally indicted officers, will also be greatly prejudiced if the stay is not granted. For example, the City and Acevedo's *Monell* defenses, will be much more difficult to establish without the testimony and discovery of the indicted defending officers. Likewise, the individual defending officers, who were not present at Harding Street, or who were only tangentially involved ("tangential officers"), will need the testimony and discovery responses from those indicted officers to prepare their defenses. Once the indicted officers invoke the Fifth Amendment, the City and those tangential officers will be denied justice; they will be denied necessary discovery and evidence important to their defenses. Simply put, Fifth Amendment assertions made by 10 indicted defendant officers out of a total of 13 defendant officers, will undoubtedly deny all of the parties important and necessary discovery and evidence, and justice will be denied until the completion of the criminal proceedings.

17. Finally, and as mentioned above, justice, fairness and the public's interest favor the grant of the stay. Clearly, justice will not be served if the parties are denied the full and robust discovery, which is a recognized and treasured hallmark in civil lawsuits. This injustice is readily apparent when one considers the practical impact of ten (10) criminally indicted defendants, who will be

unable to answer complaints, discovery and provide testimony due to Fifth-Amendment-right invocations. As criminal defense counsel, Rusty Hardin, explains, "[a]llowing the civil cases to continue during the criminal matter would undoubtedly result in the State and the Plaintiffs sharing information during the parallel proceedings." Exhibit A. Denial of the stay will allow greater "coordination" between Plaintiffs' counsel and the State's prosecutor "to the extreme and unfair detriment of Officer Gallegos." Exhibit A. This is true for the other indicted defendants, as well, since the "State would also have access to the broad reach of discovery involved in the civil case that it otherwise would not be entitled to receive under the Texas Rules of Criminal Procedure." Exhibit A. As established by defense counsel, the denial of a stay will force the indicted officers "to choose between two extremely prejudicial options: assert …Fifth Amendment privilege in this litigation and suffer adverse inferences to his own defense in these cases, or testify in this litigation and waive…Fifth Amendment right(s)." Exhibit A. See also exhibits B-D.

18. Wherefore prayer, the City Defendants and those Defendants who join in this motion, including the City, Acevedo, Todd, Goines and Bryant respectfully request that this stay this case until resolution of the criminal matters.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

Date: April 19, 2021   By:   */s/ Kelly Dempsey*
**KELLY DEMPSEY**
Chief, Torts & Civil Rights Section
SBN: 00789253
FBN: 17969
Phone: (832) 393-6450 (direct)
Kelly.Dempsey@houstontx.gov

CHRISTY L. MARTIN
Senior Assistant City Attorney
SBN: 24041336
FBN: 754168
Phone: (832) 393-6438 (direct)
Christy.Martin@houstontx.gov

MELISSA AZADEH
Senior Assistant City Attorney
SBN: 24064851
Phone: (832) 393-6270 (direct)
Melissa.Azadeh@houstontx.gov

BRADLEY A. MOREFIELD
Senior Assistant City Attorney
SBN:  24051079
FBN:  567899
Phone: (832) 393-6320 (direct)
Bradley.Morefield@houstontx.gov

City of Houston Legal Department
P.O. Box 368
Houston, Texas 77002
Fax (832) 393-6259

**ATTORNEYS FOR CITY DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing was filed via CM/ECF and served via electronic filing manager to the following:

| | |
|---|---|
| Michael Patrick Doyle<br>Patrick M. Dennis<br>Jeffrey I. Avery<br>Doyle LLP<br>The Clocktower Building<br>3401 Allen Parkway, Suite 100<br>Houston, Texas  77019<br>service@doylelawfirm.com | Michael T. Gallagher<br>L. Boyd Smith, Jr.<br>Pamela R. McLemore<br>The Gallagher Law Firm, PLLC<br>2905 Sackett Street<br>Houston, Texas 77098<br>mike@gld-law.com<br>bsmith@gld-law.com<br>pamm@gld-law.com |
| Charles C. Bourque, Jr.<br>St. Martin & Bourque, LLC<br>315 Barrow St.<br>Houma, Louisiana  70360<br>Cbourque@stmblaw.com | *Counsel for Plaintiffs*<br>*Clifford F. Tuttle, Jr.,*<br>*Representative of the Estate of*<br>*Dennis W. Tuttle, Deceased, Robert*<br>*Tuttle, and Ryan Tuttle* |
| *Counsel for Plaintiffs*<br>*John Nicholas as temporary*<br>*administrator of the Estate of*<br>*Rhogena Nicholas and Jo Ann*<br>*Nicholas, individually and as an*<br>*heir of the Estate of Rhogena Nicholas* | David A. Nachtigall<br>George A. Nachtigall<br>1545 Heights Blvd.<br>Houston, Texas 77008<br>david@dnttriallaw.com |
| Dwayne R. Day<br>3401 Allen Parkway, Suite 100<br>Houston, Texas 77019<br>dday@ddaylaw.com | *Counsel for Defendant,*<br>*Steven Bryant* |
| *Counsel for Defendant,*<br>*Gerald Goines* | |

                                                             */s/ Kelly Dempsey*
                                                            Kelly Dempsey