UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLIFFORD TUTTLE, et. al.<br><br>Consolidated with<br><br>JOHN NICHOLAS, et.al.<br><br>       Plaintiffs,<br><br>v.<br><br>CITY OF HOUSTON; ART ACEVEDO, et. al.<br><br>       Defendants. | Case No. 4:21-cv-00270<br><br>(JURY DEMANDED) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' PARTIALLY OPPOSED MOTION TO STAY**
**I.**
**Summary of the Argument**

Consistent with the Court's order on June 1, 2022 (Doc. 190), Plaintiffs issued notices for the depositions of Nicole Blankenship-Reeves, Lt. S.C. Nguyen, and Lt. J.L. French. Plaintiffs have also issued a subpoena for the deposition of Texas Ranger, Jeff Wolf. In order to avoid these depositions, Defendants have again sought to stay discovery in this case. Likewise, the City of Houston has filed a discovery dispute regarding the subpoena for Wolf. *See* Doc. 214. In all, Defendants' motions and letters are simply another form of delaying justice and preventing the families of Nicholas and Tuttle from

1

obtaining any information regarding the murder of Plaintiffs. For all the reasons explained below, Plaintiffs request that the Court deny Defendants' motion to stay.

## II.
## Background of Obstruction and Delay

Facing backlash after the murders on Harding Street, the City of Houston publicly promised "transparency" with regard to the botched raid and the underlying corruption in HPD. Instead, the City Attorneys have responded to this tragedy by thwarting the families of Tuttle and Nicholas at every turn as they desperately fight to discover the whole truth about what happened and why. This brief background provides important context, which further reveals how Defendants' motion to stay is part of an ongoing effort to delay for delay's sake.

In July 2019, within months after the shootings, the families initiated a Rule 202 petition for pre-suit discovery in Harris County. The City Attorneys objected to jurisdiction without merit and the state court overruled the objection. They took a lengthy interlocutory appeal, which the court of appeals rejected in November 2020. They filed a petition for review to the Texas Supreme Court which was denied. They filed a motion for rehearing which was denied by the Texas Supreme Court.

The state court set the Rule 202 petition for hearing on December 18, 2020. Just hours before the hearing, the City Attorneys wrongfully removed the lawsuit to federal court, nearly eighteen months after the initial filing in state court. Judge Hoyt granted the families' emergency motion to remand. The state court set the hearing a fourth time for January 12, 2021. The City Attorneys then filed a groundless appeal to the 5th Circuit –

only days before the two-year anniversary of the claim. Although they lost at every stage in multiple courts, the City Attorneys accomplished their only real goal which was to run out the clock and prevent the grieving families from obtaining important evidence prior to filing their federal civil rights claims.

On January 27, 2021, the families filed their civil rights lawsuits which are now consolidated into this action. Following their pattern of obstruction and delay, the City Attorneys filed multiple motions seeking a complete blanket stay. On July 1, 2021, in order to protect the indicted defendants' interest in asserting Fifth Amendment privileges while balancing Plaintiffs' interests in obtaining evidence, the Court rejected the blanket stay, allowed certain written discovery to go forward, and ordered that no depositions were to be taken until further order of the Court (Doc. #119).

The City Attorneys' requested clarification of the order (Doc. #122). Therefore, the Court on August 9, 2021, vacated the July 1, 2021, order and entered another similar order allowing certain written discovery and ordering that no depositions would be taken without further order of the Court (Doc. #134).

The Court conducted a status conference on November 5, 2021, at which the parties discussed moving forward with certain depositions in the context of the Fifth Amendment and qualified immunity. The Court encouraged the parties to discuss scheduling depositions which would shed light on qualified immunity.

On December 3 and December 10, 2021, the City Attorneys and counsel for Plaintiffs filed letters addressing their positions regarding the anticipated depositions (Docs. #152 and #154). At a status conference held on December 15, 2021, the Court heard

3

arguments on Plaintiffs' request to take depositions. The Court took the matter of Todd's deposition under advisement and indicated that three other depositions requested by Plaintiffs would be allowed. The Court specifically instructed counsel to "Get the deposition(s) scheduled" and to "let me know when these three are scheduled…" Transcript of 12/15/2021 Status Conf. at p. 84.

Importantly, the Court recognized that disagreements over the scope of permissible questions might emerge during the depositions and proposed a possible mechanism for resolving same in real time. However, the Court did not rule or suggest that the parties should not or could not proceed with the depositions simply because they could not agree on scope. On the contrary, the Court told the parties to schedule the depositions.

Over the course of several weeks following the status conference, Plaintiffs made multiple requests for dates when the witnesses could be deposed. Despite the Court's unequivocal instructions, the City Attorneys flatly refused to get the depositions scheduled, basing their refusal on a dilatory and unilaterally imposed condition that the Court must enter yet another order clarifying the scope of the depositions.

On February 1, 2022, Plaintiffs' counsel filed a letter seeking direction from the Court regarding the City Attorneys' refusal to schedule depositions (Doc. #166). The City Attorneys filed an opposing letter (Doc. #167).

On April 26, 2022, the Court denied Todd's motion to dismiss based on qualified immunity (Doc. #170). On April 27, 2022, Plaintiffs' counsel again requested dates for the three witnesses along with dates for the deposition of Marsha Todd.

On June 1, 2022, the Court entered an order authorizing the depositions of Blankenship-Reeves, Nguyen, French, and Wolf. In that same order, the Court found that Plaintiffs have pleaded detailed, plausible facts to overcome the assertion of qualified immunity. On June 15, 2022, Plaintiffs noticed the depositions of Nicole Blankenship-Reeves, Lt. S.C. Nguyen, Lt. J.L. French. And on July 12th, Plaintiff issued a subpoena for the deposition of Wolf.

Defendants have appealed from that order and requested a stay of all discovery.

### III.
### Argument and Authorities

**1. Defendants have waived their right to the defense of qualified immunity by pleading the Fifth Amendment.**

As a threshold matter, Defendants' motion to stay fails because Defendants have waived their right to assert the affirmative defense of qualified immunity defense by invoking their Fifth Amendment rights. Specifically, as an affirmative defense, qualified immunity is subject to the doctrine of wavier. And under Texas law, a party waives their right to a defense when: (1) the party hods an existing right, benefit, or advantage; (2) they have actual knowledge of its existence; and (3) they have actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex. 2008). The doctrine of waiver "is largely a matter of intent, and for implied waiver to be found through a party's conduct, intent must be clearly demonstrated by the surrounding facts and circumstances." *Trelltex, Inc. v. Intecx, L.L.C.,* 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)). While waiver is ordinarily a

5

question of fact, waiver becomes a question of law "when the surrounding facts and circumstances are undisputed." *Trelltex, Inc.*, 494 S.W.3d 781, 790 (citing *Jernigan v. Langley*, 111 S.W.3d 153, 156-57 (Tex. 2003)).

Consistent with the doctrine of wavier, federal courts have repeatedly refused to allow Defendants to use the Fifth Amendment as a sword and a shield. *See e.g. Boim v. Quranic Literacy Inst.,* 2004 U.S. Dist. LEXIS 2060; *Studesville v. Buck*, No. 2:13-CV-254-J, 2014 U.S. Dist. LEXIS 192843 at *5 (N.D. Tex. Aug. 25, 2014); *Cisco Sys. v. Sheikh*, 2020 U.S. Dist. LEXIS 184463 *14 (N.D. Cal. Oct. 2, 2020) (holding that the defendant was "asserting the Fifth Amendment rights[,]" which "constitutes the shield[,]" but at the same time "affirmatively, and offensively, preventing the 3rdPDs from obtaining information relevant to their defense against the indemnification claims; the sword.") This particularly important in the context of a wrongful death claim, where the "person most likely to rebut the officers' version of events—the one killed—can't testify." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

Following that background, Defendants have acted with "intentional conduct inconsistent with the right" of qualified immunity. On one hand, Defendants have argued that they should be immune from suit because they dispute their conduct both violated a constitutional right and that the violated right was "clearly established" in that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[1]

---

[1] See Doc. 98. Defendants' Motion to Dismiss

Yet on the other hand, Defendants have asserted "if required to answer the allegations, or respond to discovery in this matter, they each would decline to do so and assert the privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution based upon pending or potential criminal charges against them arising out of the same or similar events."[2] And based on that argument, Defendants have obtained a stay discovery. In other words, Defendants seek the "best of all worlds: to be able to . . . raise affirmative defenses [including, qualified immunity], to avoid having to respond to discovery, and to avoid having to assert the Fifth Amendment, while effectively availing [themselves] of its protections." *United Auto. Ins. v. Veluchamy*, No. 09 C 5487, 2010 U.S. Dist. LEXIS 19432 (N.D. Ill. March 1, 2010).

Likewise, by asserting the fifth amendment, the "court is . . . free to draw adverse inferences from that invocation," including the factual rejection of qualified immunity. *See Vestas-American Wind Tech., Inc. v. Salazar,* 2021 U.S. Dist. LEXIS 73361 *(Citing S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998)). Put differently, in addition to waiver, the Court is also free to find an adverse inference against Defendant's claim of qualified immunity based on their assertion of the fifth amendment.

Therefore, Defendants' motion to stay should be rejected and the Court should enter an order finding that Defendants Gallegos, Sepolio, Salazar, Wood, Pardo, Medina, Reyna, Lovings, Ashraf, and Gonzales have waived their defense of qualified immunity.

2. **Because Defendants have taken the position that the Court has rejected its qualified immunity defense,** *Carswell* **does not apply**

---

[2] Doc. 135 and Doc. 138.

Next, citing to the recent Fifth Circuit panel opinion in *Carswell v. Camp*, the individual Defendants and the city argue that discovery must be stayed. *See Carswell,* No. 21-10171, __ F.4th __, 2022 U.S. App. LEXIS 16901 (5th Cir. June 17, 2022). Yet in the same breath, Defendants also argue that the Court has "deny[ed] their motions to dismiss the Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(b)(6) on qualified immunity grounds by 'find[ing] that Plaintiffs have stated sufficient facts in their Amended Complaints to overcome the assertions of qualified immunity by' Defendants. . . ."

Importantly, the Court in *Carswell* did not address discovery **after** a court has found that the plaintiff plausibly pleaded sufficient facts to defeat qualified immunity. Rather, *Carswell* held that the Court must rule on qualified immunity at the "earliest possible stage in litigation." *Id*. at *11-12. And "a plaintiff asserting constitutional claims against an officer must **survive the motion to dismiss** (and the qualified immunity defense) without any discovery." *Id.* at *8. As a result, *Carswell* does not apply to this case because, as confirmed by Defendants' motion, the Court found "sufficient facts in [Plaintiffs'] Amended Complaints to overcome the assertions of qualified immunity by' Defendants."

Therefore, *Carswell* does not mandate a stay of discovery.

**3. Defendants have not shown that a complete stay of discovery is justified**

Finally, Defendants' argument should also be rejected based on the merits of the stay factors. As Defendants noted in their motion, Courts generally consider four factors when deciding to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

8

the other parties interested in the proceeding; and (4) where the public interest lies." *Wilde v. Huntington Ingalls, Inc.*, 616 Fed. Appx. 710, 712 (5th Cir. 2015). Plaintiffs address each of those factors below.

### A. Defendants' appeal is not likely to be successful on the merits

The parties have spent extensive amounts of time briefing the merits of the motion to dismiss at the pleadings stage. As explained in detail in those motions, Plaintiffs have pleaded detailed, plausible facts showing that Defendants violated their rights and that the violated rights were clearly established in that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. In contrast, Defendants' motion simply rehashes those exact same arguments.

Even more so, in an attempt to justify its requested stay, Defendants have relied on facts not within Plaintiff's pleading – an undisputed violation of the 12(b)(6) standard of review.  By example, Defendants argue that "Plaintiffs' acknowledgment that Dennis Tuttle may have fired at officers undermines their ability to overcome City Officers official immunity as the U.S. Supreme Court has now rejected the provocation doctrine." Yet despite making this claim repeatedly, Defendants have not cited to a single portion of the Nicholas' Complaint that makes this allegation. Because Defendants' motion to stay does not even follow the required disposition for a 12(b)(6) motion under *Iqbal*, Defendants' motion should fail.

Therefore, for all the reasons stated in their prior briefings, Defendants' appeal is also likely to fail.

### B. Defendant will not be irreparably injured absent a stay

9

Next, Defendants will not be irreparably injured absent a stay. Indeed, the Court has authorized only four depositions. This discovery is minimal and not intrusive. In addition, as stated above, Defendants will also not be harmed by the depositions because Defendants have already waived their qualified immunity defense. Therefore, this factor also does not support a stay.

### C. Staying this case will cause substantial injury to Plaintiffs, including the 86-year old Jo Ann Nicholas.

Next, Jo Ann Nicholas is eighty-six years old. For an eighty-six-year-old, time is invaluable. This case largely mirrors the background of *Elijah McClain.* In denying a stay, the Court in that case explained that "Plaintiffs have a powerful interest in avoiding an open-ended, indefinite stay and proceeding expeditiously with their case."[3] Indeed, "[t]he plaintiffs here are family members of a dead young man" and "deserve[] answers to the questions of why he died and whether anyone or any entity is to be held to account."[4] In contrast, "issuing the requested stay would cause those wheels to simply grind to a halt, delaying for months or even years the process of answering those important questions."[5]

Therefore, this factor strongly supports denying the stay.

### D. The public has an interest in this case proceeding expeditiously

Finally, the public also maintains a strong interest in moving this case forward. This case involves immense national and local public interest.[6] When addressing a similar factor

---

[3] *Estate of McClain v. City of Aurora*, No. 20-cv-02389-DDD-NRN, 2021 U.S. Dist. LEXIS 17099 at *16.
[4] *Id.* at *12.
[5] *Id.*
[6] *See e.g.,* St. John Barned-Smith, *Harding Street victims' families sue city and Houston cops, likening botched raid to 'Training Day'*, HOU. CHRON. January 28, 2021; (Houston Chronicle); Jacob Sullum, *Two Federal Lawsuits Say the Houston Police Department's Culture of Corruption and Impunity Killed an*

in the Elijah McClain case, the Court noted the following:

> [T]he Court can take judicial notice that this case has received widespread attention locally, state-wide, and nationally. The public, too, has a strong interest in knowing the answers to the same difficult questions being posed by Mr. McClain's family. It is not in the interest of the public or in the interest of justice to "put on the back burner" discovery in a case that raises significant questions about the City of Aurora's policing and paramedic practices. It may be that there is nothing constitutionally wrong with the conduct that eventually led to Mr. McClain's death. If so, then the public will be better served by knowing that hard reality, as fairly determined by the judicial process, sooner rather than later. In short, a stay of discovery is not appropriate in this case.[7]

Based on these same reasons a stay is not appropriate in this case.

## IV.
## Conclusion

Therefore, Plaintiffs request that the Court deny Defendants' motion to stay and for any further relief the court finds justified.

Respectfully submitted,

**DOYLE LLP**

*/s/ M. Doyle*

MICHAEL PATRICK DOYLE (#06095650)
PATRICK M. DENNIS (#24045777)
JEFFREY I. AVERY (#24085185)
The Clocktower Building

---

*Innocent Couple*, Reason, Jan. 28, 2021 (Reason); Neil Vigdor, *6 More Houston Police Officers Charged After Fatal 2019 Raid*, N.Y. TIMES, January 21, 2021 (New York Times); Brittney Martin and Eli Rosenberg, *Two people were killed in a botched drug raid. Investigators say the official story was a lie.*, WASH. POST, July 26, 2019 (the Washington Post); Christina Maxouris, Tina Burnside and Jeremy Grisham, *Houston officer lied in search warrant leading to drug raid that left 2 people dead, 5 officers hurt, affidavit says*, CNN, Feb. 19, 2019 (CNN).

[7] *Estate of McClain*, 2021 U.S. Dist. LEXIS 17099 at *13-14.

3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: (713) 571-1146
Fax: (713) 571-1148
Email: service@doylelawfirm.com

CHARLES C. BOURQUE, JR.
Louisiana State Bar No. 20118
*Pro Hac Vice* pending
ST. MARTIN & BOURQUE, LLC
315 Barrow St.
Houma, LA 70360
985-876-3891 (phone)
985-851-2219 (fax)
cbourque@stmblaw.com

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record on this the 15th day of July, 2022, via CM/ECF, hand delivery, electronic mail, overnight courier, U.S. Mail, certified mail, return receipt request, and/or facsimile, pursuant to the Federal Rules of Civil Procedure.

_____
MICHAEL PATRICK DOYLE