United States District Court
Southern District of Texas
**ENTERED**
December 16, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFFORD F. TUTTLE, JR., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-00270 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court are five motions: Defendant Clemente Reyna's Motion to Dismiss (Doc. #93); Defendant Robert Gonzales' Motion to Dismiss (Doc. #94); Defendant Felipe Gallegos' Motion to Dismiss (Doc. #97); Defendants Nadeem Ashraf, Cedell Lovings, Frank Medina, Oscar Pardo, and Thomas Wood's Motion to Dismiss (Doc. #98); and Defendants Manual Salazar and Eric Sepolio's Motion to Dismiss (Doc. #99). Additionally before the Court are the Tuttle Plaintiffs' Omnibus Response (Doc. #110), the Nicholas Plaintiffs' Omnibus Response (Doc. #111), and the Defendant Officers' Reply (Doc. #113). Having considered the parties' arguments, submissions, and the applicable legal authority, the Court denies Defendant Robert Gonzales' Motion to Dismiss (Doc. #94) in its entirety and grants the other Defendant Officers' Motions (Doc. #93, Doc. #97, Doc. #98, and Doc. #99) in part.

## I.    Background

This case arises from the botched enforcement of a no-knock search warrant by the Houston Police Department's ("HPD") Narcotics Division, Squad 15, at 7815 Harding Street on January 28, 2019, during which Dennis Tuttle ("Tuttle") and Rhogena Nicholas ("Nicholas")

(jointly, the "Decedents") were killed.  The events leading up to and following the raid are highly relevant.  Earlier that month, Patricia Garcia—a neighbor of Tuttle and Nicholas—called HPD and falsely claimed that her daughter was doing crack and heroin inside the house at 7815 Harding Street, where the Decedents lived, and that the occupants had automatic weapons.  Doc. #48 ¶ 31; Doc. #49 ¶ 98.  In response, HPD dispatched Officers R. Morales ("Morales") and Nichole Blankenship-Reeves ("Blankenship-Reeves") who, upon investigation, observed no signs of criminal activity.  Doc. #48 ¶ 32; Doc. #49 ¶ 99.  Blankenship-Reeves gave her handwritten notes regarding the Harding Street call and activity to Lieutenant Marsha Todd ("Todd"), the officer in charge of Squad 24.  Doc. #48 ¶¶ 34–35; Doc. #49 ¶ 99.  On January 11, 2019, Todd "relayed" the notes indicating there was no criminal activity on Harding Street to Gerald Goines ("Goines"), a Squad 15 officer.  *Id.*  Lieutenant Robert Gonzales ("Gonzales") was in charge of Squad 15 and Goines' direct supervisor.  Doc. #48 ¶ 105; Doc. #49 ¶ 68.  Upon receiving Blankenship-Reeves' notes from Todd, Goines signed a false affidavit for the purpose of obtaining a "no-knock" search warrant for 7815 Harding Street.  Doc. #48 ¶¶ 36–38; Doc. #49 ¶¶ 100–102.  Plaintiffs allege Goines had a demonstrated pattern of unlawful conduct, including obtaining illegitimate search warrants, of which Gonzales was aware.  Doc. #48 ¶ 105; Doc. #49 ¶¶ 71–72.  Specifically, Plaintiff alleges that between 2016 and 2018, Gonzales allowed Goines to misappropriate government property, improperly pay informants, and use fraudulently obtained information to receive illegal warrants.  Doc. #48 ¶ 105; Doc. #49 ¶ 72.  As of the filing of Plaintiffs' complaints, Gonzales was facing criminal charges for this conduct.  Doc. #48 ¶ 105; Doc. #49 ¶ 86.

Goines stated under oath in his affidavit to obtain the 7815 Harding Street warrant, among other things, that: (1) he personally saw a confidential informant ("CI") enter the Harding Street house and meet a man inside, (2) he saw the CI leave the house with heroin, (3) the CI told him

2

that the man had a large quantity of heroin in the house along with a semi-automatic weapon, and (4) the presence of the weapon indicated the man's intent to use it. Doc. #48 ¶¶ 36; Doc. #49 ¶ 101. Based on this information, Judge Marcum of the Houston Municipal Court signed the no-knock search warrant at 1:37 p.m. on January 28, 2019. Doc. #48 ¶¶ 37–38; Doc. #49 ¶ 102. After obtaining the signed warrant, Goines assembled ten armed and armored Squad 15 narcotics officers to discuss, plan, and then execute the no-knock warrant at 7815 Harding Street. Doc. #48 ¶¶ 39–40; Doc. #49 ¶ 103. These officers included Clemente Reyna ("Reyna"), Felipe Gallegos ("Gallegos"), Nadeem Ashraf ("Ashraf"), Cedell Lovings ("Lovings"), Frank Medina ("Medina"), Oscar Pardo ("Pardo"), Thomas Wood ("Wood"), Manuel Salazar ("Salazar"), and Eric Sepolio ("Sepolio") (collectively with Gonzales, "Defendant Officers"). Officer Steven Bryant ("Bryant") was also present.

During the execution of the warrant, Tuttle and Nicholas were both killed by multiple gunshot wounds. Their deaths were ruled as homicides by the Harris County Medical Examiner. Doc. #48 ¶¶ 46–48; Doc. #49 ¶ 108. No trace of heroin or semi-automatic weapons were found at 7815 Harding Street after the shooting. Doc. #48 ¶¶ 57–58; Doc. #49 ¶ 110. Goines was taken to the hospital for treatment of injuries sustained during the raid. From his hospital bed, he told another HPD officer that there were drugs in the console of his vehicle. Doc. #48 ¶ 59. That officer relayed that information to Bryant, who retrieved the drugs from Goines' vehicle, took them to the lab, and filed a report claiming that he recognized them as the drugs purchased by the alleged CI at 7815 Harding Street the day before the shooting. Doc. #48 ¶¶ 60–61; Doc. #49 ¶ 115. After Goines changed his story multiple times, HPD investigators interviewed every CI that worked for Goines. They all denied purchasing narcotics from the Decedents or 7815 Harding Street. Doc. #48 ¶¶ 63–70; Doc. #49 ¶¶ 115–18.

3

The families and estates of Tuttle and Nicholas ("Plaintiffs") now bring this case pursuant to 42 U.S.C. § 1983, alleging constitutional violations against Goines, Bryant, Defendant Officers, and Lieutenant Marsha Todd. Doc. #48 ¶¶ 93–121; Doc. #49 ¶ 146–63. Plaintiffs also bring §1983 municipal liability claims against the City of Houston and former HPD Chief of Police Art Acevedo. Doc. #48 ¶¶ 122–85; Doc. #49 ¶¶ 164–211. Lastly, Plaintiffs bring wrongful death and survival claims against all individually named Defendants under Texas state law. Doc. #48 ¶¶ 186–92; Doc. #49 ¶¶ 212–17.

## II.   Legal Standards

### a.   Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claim. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss under Rule 12(b)(6), courts must liberally construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Id.* at 662. The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* at 678. In addition,

4

all reasonable inferences must be drawn in the plaintiff's favor. *Severance v. Patterson*, 566 F. 3d. 490, 501 (5th Cir. 2009). A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

### b. Qualified Immunity

Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Once a defendant has invoked the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). In *Saucier v. Katz*, the Supreme Court set forth a two-part framework to determine if a plaintiff has overcome a qualified immunity defense. 533 U.S. 194 (2001). First, the Court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Second, the Court considers whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted." *Id.* When deciding whether the right allegedly violated was "clearly established," the court asks whether the law so clearly and unambiguously prohibited the conduct such that a reasonable official would understand that what she was doing violated the law. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust

consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar." *Id.* When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity. *Id.*

Even if "the defendant's actions violated a clearly established constitutional right," however, the inquiry under the *Saucier* test is incomplete. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The court will then ask whether qualified immunity is nevertheless appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Id.* Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Collins*, 382 F.3d at 537.

## III.   Analysis

Plaintiffs assert claims for constitutional violations pursuant to § 1983 against the Defendant Officers for unlawful search and seizure due to lack of probable cause and use of excessive force. Doc. #48 ¶¶ 94–121; Doc. #49 ¶¶ 146–63. Plaintiffs additionally bring survival and wrongful death claims against the Defendant Officers under state law. Doc. #48 ¶¶ 186–92; Doc. #49 ¶¶ 212–17. Defendant Officers move to dismiss each of the claims against them. Doc. #93; Doc. #94; Doc. #97; Doc. #98; and Doc. #99. The Court evaluates each claim in turn, starting with the constitutional violations and then moving to the state law claims.

### a.   42 U.S.C. § 1983 – Unlawful Search and Seizure, No Probable Cause

To plead a § 1983 claim, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) the defendant was acting under the color of state law while doing so. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Fourth Amendment guarantees "the right of the people to be secure in their persons . . . against unreasonable searches

and seizures . . . and [that] no warrants shall issue, but upon probable cause." U.S. CONST. amend.

IV. "The Supreme Court has defined probable cause as the 'facts and circumstances within the

officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution,

in believing, in the circumstances shown, that the suspect has committed, is committing, or is about

to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan*

*v. DeFillippo,* 443 U.S. 31, 37 (1979)).

Under Fifth Circuit law, if facts supporting an arrest are placed before an independent

intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of

causation for false arrest, potentially insulating the arresting officer from liability. *Arizmendi v.*

*Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). "Despite review by an independent intermediary, the

initiating party may [still] be liable for false arrest if the plaintiff shows that 'the deliberations of

that intermediary were in some way tainted by the actions of the defendant.'" *Deville v. Marcantel*,

567 F.3d 156, 170 (5th Cir. 2009) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)).

To survive a motion to dismiss under this "taint" exception, the plaintiff must plead facts

supporting the inference that the defendant withheld or misdirected the independent intermediary.

*McLin v. Ard*, 866 F.3d 682, 689–90 (5th Cir. 2017).

### 1. Officers Clemente Reyna, Felipe Gallegos, Manual Salazar, and Eric Sepolio

Reyna, Gallegos, Salazar, and Sepolio make their arguments in three separate motions.

Doc. #93; Doc. #97; Doc. #99. For purposes of efficiency with respect to Plaintiffs' § 1983

unreasonable search and seizure claims based on lack of probable cause, the Court analyzes their

arguments simultaneously due to similar facts and application of law.

Reyna, Gallegos, Salazar, and Sepolio move to dismiss Plaintiffs' § 1983 unreasonable

search and seizure claims based on lack of probable cause, arguing that Plaintiffs fail to allege that

they had any role in obtaining the no-knock warrant.  Doc. #93 ¶ 9; Doc. #97 ¶ 9; Doc. #99 ¶ 11.

Reyna, Gallegos, Salazar, and Sepolio further argue that Plaintiffs' allegations fail to overcome

their independent intermediary and qualified immunity defenses.  Doc. #93 ¶¶ 9–10, 19; Doc. #97

¶¶ 9–10, 17; Doc. #99 ¶¶ 11–12, 14, 19.  Plaintiffs allege that Reyna, Gallegos, Salazar, and

Sepolio all met with Goines to plan and discuss the execution of the no-knock search warrant.

Doc. #48 ¶ 40; Doc. #49 ¶ 103.  Plaintiffs also allege that Reyna, Gallegos, Salazar, and Sepolio

all worked closely with Goines on a regular basis and knew about his unconstitutional conduct

generally.  Doc. #48 ¶¶ 99–101; Doc. #49 ¶¶ 78, 85–88.

Plaintiffs' allegations that Reyna, Gallegos, Salazar, and Sepolio knew that Goines

fraudulently obtained the no-knock warrant for 7815 Harding Street are conclusory.  Such

allegations standing alone cannot create an inference that Reyna, Gallegos, Salazar, or Sepolio

knew the no-knock warrant was fraudulent.  Moreover, Plaintiff does not make any allegations of

Reyna, Gallegos, Salazar, or Sepolio's involvement in obtaining the warrant.  *See* Doc. #48; *see*

*also* Doc. #49.  Therefore, Judge Marcum's signing of the warrant breaks the causal chain with

respect to Reyna, Gallegos, Salazar, and Sepolio, and insulates them from liability with respect to

Plaintiffs' § 1983 unreasonable search and seizure claims based on lack of probable cause.

### 2.  Officer Robert Gonzales

Gonzales moves to dismiss Plaintiffs' § 1983 unreasonable search and seizure claims made

against him, first arguing that Plaintiffs fail to establish that he was at the Squad 15 meeting before

the raid or that he had knowledge that the raid was to occur.[1]  Doc. #94 ¶ 14.  However, Plaintiffs

are not required to allege that Gonzales was present at the planning meeting for the raid, only that

---

[1] Of course, these were the type of facts that the Court hoped would be established as a result of
the narrowly tailored discovery it previously ordered.  However, pursuant to the remand order,
such discovery is not permitted to go forward.

there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Floyd v. City of Kenner*, 351 F. App'x 890, 897 (5th Cir. 2009).

### i.   Supervisory Liability

Supervisory officials cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious or *respondeat superior* liability. *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Rather, Plaintiffs must show that the conduct of the supervisors denied Plaintiffs their constitutional rights. *Id.* When, as here, a plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–53 (5th Cir. 1994). Deliberate indifference is a "stringent standard of fault," requiring the plaintiff to show that the official "disregarded a known or obvious consequence of his action." *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017). To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the supervision is obvious and obviously likely to result in a constitutional violation. *See Est. of Davis*, 406 F.3d at 381; *see also Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.").

Gonzales argues that to the extent Plaintiffs seek to assert supervisory liability claims against him, Plaintiffs failed to plead facts sufficient to support a failure to train or supervise claim. Doc. #94 ¶ 19. Plaintiffs allege that Gonzales was Goines' direct supervisor and in charge of Squad 15. Doc. #48 ¶¶ 105, 153; Doc. #49 ¶¶ 68, 91. Plaintiffs also allege that Gonzales worked

9

very closely with Squad 15 in the years leading up to the botched raid, was charged with crimes related to illegal searches along with Goines in the past, and therefore knew of Goines' pattern of illegal conduct generally. Doc. #48 ¶¶ 99–100, 102; Doc. #49 ¶¶ 85–86, 88, 91, 160–62. Plaintiffs list numerous instances of Goines falsely testifying to obtain fraudulent warrants, amounting to a pattern. Doc. #48 ¶¶ 155–62; Doc. #49 ¶¶ 70–85. Specific to the no-knock warrant that Goines fraudulently obtained in this case, Plaintiffs allege that Gonzales knew that Goines did not investigate narcotics activity at 7815 Harding Street because he supervised Goines during those two weeks. Doc. #48 ¶ 105; Doc. #49 ¶ 90–91. Additionally, Plaintiffs allege that Gonzales knew Goines was not anywhere near Harding Street on January 27, 2019, as stated in the false affidavit. *Id.*

Contrary to Gonzales' red herring arguments that he did not play a direct role in obtaining the warrant and was not present at the planning meeting prior to the raid, it was his failure to supervise or intervene that permitted Goines' conduct to go unchecked, resulting in Goines' fabrication of the affidavit, Squad 15's unlawful search, and the eventual use of excessive and deadly force. Doc. #48 ¶¶ 101, 105; Doc #49 ¶¶ 91, 151–52. Goines' history of illegal conduct was significant enough that Gonzales should have anticipated it would likely result in a future constitutional violation. Gonzales knew from personal experience that Goines was a "loose cannon" and failure to closely monitor his activities could lead to additional "illegal searches." *See* Doc. #48 ¶¶ 155–62; Doc. #49 ¶¶ 70–85 (listing numerous instances of Goines falsely testifying to obtaining fraudulent search warrants); *see also Est. of Davis*, 406 F.3d at 381 (stating that deliberate indifference requires a demonstrated pattern of violations). Gonzales was even charged with unlawful conduct for his failure to supervise Goines, allowing Goines to misappropriate government funds by paying CIs while obtaining illegal warrants. Doc. #48 ¶¶

10

102, 105, 159; Doc. #49 ¶¶ 72, 85–88, 129.  The Court therefore finds that, considering the entirety of Plaintiffs' complaints and taking the allegations as true, Gonzales' failure to supervise Goines and Squad 15 amounted to deliberate indifference sufficient to survive a 12(b)(6) motion to dismiss.  *See Lormand*, 565 F.3d at 257.

### ii.   Independent Intermediary Doctrine

Gonzales next argues that the causal chain between his lack of supervision and the raid is broken under the independent intermediary doctrine.  Doc. #94 ¶¶ 15–17.  Under Fifth Circuit law, if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, potentially insulating the arresting officer from liability.  *Arizmendi*, 919 F.3d at 897.  Regarding no-knock warrants, officers' reasonableness is evaluated at the time they enter the premises.  *Richards v. Wis.*, 520 U.S. 385, 395 (1997).  Plaintiffs do not allege that Gonzales falsified the affidavit or planned the false arrest, but that his lack of supervision led to the falsified affidavit and caused the constitutional violations.  Doc. #48 ¶ 105; Doc. #49 ¶¶ 91, 160–63.  Plaintiffs further allege that Gonzales knew there was no probable cause for the warrant because he knew Goines was not near 7815 Harding Street to monitor drug activity in the weeks leading up to the raid.  *Id.*  Simply put, Goines would not have been before a judge seeking a no-knock warrant if Gonzales had properly exercised his supervisory authority and prohibited Goines from presenting false information to the judge.  Therefore, the independent intermediary doctrine does not protect Gonzales and Plaintiffs have sufficiently alleged a causal link between Gonzales' lack of supervision and the violations of Plaintiffs' constitutional rights.

### iii.    Qualified Immunity

Lastly, Gonzales argues that Plaintiffs' allegations do not overcome Gonzales' qualified immunity defense. Doc. #94 ¶ 18.  In deciding the issue of qualified immunity, district courts use a two-prong inquiry to consider (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right, and (2) whether the constitutional right was clearly established within the specific context of the case. *Saucier*, 533 U.S. at 200.  Supervisors are entitled to qualified immunity "unless both the underlying constitutional right and the supervisors' duty with respect to that right were clearly established." *Pena v. Givens*, 637 Fed. App'x 775, 786 (5th Cir. 2015).  The district court has discretion to decide which of the two prongs to address first. *Pearson*, 555 U.S. at 236.

As to the first prong, the Decedents were shot dead in their own living room by raiding HPD officers as a result of a fraudulently obtained no-knock warrant.  Doc. #48 ¶¶ 44–48; Doc. #49 ¶¶ 103–07.  In almost any light or by any measure, that is a violation of the Fourth Amendment protections in the Constitution.  As to the second prong, it is clearly established in this circuit that supervisors of police officers can be liable for the actions of their officers, even if they did not participate in those actions, if the supervisor "knew or should have known that the allegedly unconstitutional acts were occurring and [the supervisor] acquiesced in them." *Wanger v. Bonner*, 621 F.2d 675, 680 (5th Cir. 1980).  As discussed above, Plaintiffs sufficiently plead that Goines had a demonstrated pattern of unconstitutional conduct and that Gonzales was aware of that conduct because he participated in some of it.  Doc. #48 ¶¶ 99–105, 151–55; Doc. #49 ¶¶ 85–86, 88, 91.  Plaintiffs sufficiently plead that Goines lied in his affidavit and fraudulently obtained the no-knock warrant for 7815 Harding Street.  Doc. #48 ¶¶ 66–77, 103; Doc. #49 ¶¶ 3–4, 111–18. Again, Gonzales was Goines' supervisor generally but also directly supervised him during the two

weeks in January when 7815 Harding Street was investigated; he knew or should have known the facts alleged in Goines' affidavit were patently false. Doc. #48 ¶ 105; Doc. #49 ¶¶ 91, 160–63.

The Court finds Plaintiffs' allegations regarding Goines' known pattern of wrongfully obtaining illegal warrants, Gonzales' supervisory acquiescence or participation in that conduct, Gonzales' awareness that Goines did not participate in the Harding Street investigation (which resulted in no sign of criminal activity), and Gonzales' lack of supervision over Goines are sufficient for the Court to plausibly infer that: (1) Gonzales knew or should have known that allegedly unconstitutional acts at the hands of Goines were likely to occur, (2) he was "deliberately indifferent," and (3) such conduct was not "objectively reasonable." *See Brown*, 623 F.3d at 253. As such, the Court finds that Gonzales is not entitled to qualified immunity at this stage of the litigation. Perhaps additional discovery will reveal what he knew or did not know with respect to Goines' submission of the false affidavit.

### 3. Officers Nadeem Ashraf, Cedell Lovings, Frank Medina, Oscar Pardo, and Thomas Wood

Ashraf, Lovings, Medina, Pardo, and Wood (collectively, the "Five Officers") move to dismiss Plaintiffs' § 1983 unreasonable search and seizure claims based on lack of probable cause, arguing that Plaintiffs plead no facts from which to infer they had any role in obtaining the no-knock warrant. Doc. #98 ¶ 9. The Five Officers further argue that Plaintiffs' allegations fail to overcome their independent intermediary and qualified immunity defenses. Doc. #98 ¶¶ 9–10, 17. Plaintiffs allege the Five Officers met with Goines to plan the raid, discuss, and execute the no-knock search warrant. Doc. #48 ¶ 40; Doc. #49 ¶ 103. Plaintiffs further allege that the Five Officers worked closely with Goines, knew about Goines' pattern of questionable conduct, and knew that he fraudulently obtained the no-knock warrant in this case. Doc. #48 ¶¶ 99–101; Doc. #49 ¶¶ 68, 85–88. Plaintiffs' allegations that the Five Officers knew that Goines fraudulently

13

obtained the 7815 Harding Street no-knock warrant are conclusory.  The fact that the Five Officers worked closely with him in Squad 15 cannot, absent any additional facts, create an inference that they knew the no-knock warrant in this case was fraudulent.  Moreover, Plaintiffs do not make any allegations of the Five Officers' direct involvement in obtaining the warrant.  Therefore, Judge Marcum's signature as an independent intermediary breaks the causal chain with respect to the Five Officers' liability for Plaintiffs' § 1983 unreasonable search and seizure claims based on lack of probable cause.

### b.    42 U.S.C. § 1983 – Unlawful Search and Seizure, Excessive and Deadly Force

To plead a § 1983 claim, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) the defendant was acting under the color of state law while doing so.  *Gomez*, 446 U.S. at 640.  "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  To state a claim for the use of excessive force under the Fourth Amendment, Plaintiffs must allege an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017).  The test used to determine whether a use of force was reasonable under the Fourth Amendment "is not capable of precise definition or mechanical application."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Rather, "its proper application requires careful attention to the facts and circumstances of each particular case."  *Id*.

Moreover, "[a]n officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4)

chose not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Bystander liability requires more than mere presence in the vicinity of the violation; the Fifth Circuit also considers whether an officer 'acquiesced in' the alleged constitutional violation. *Id.*

### 1. Officers Clemente Reyna, Felipe Gallegos, Manuel Salazar, Eric Sepolio, Nadeem Ashraf, Cedell Lovings, Frank Medina, Oscar Pardo, and Thomas Wood

Reyna, Gallegos, Salazar, Sepolio, and the Five Officers (collectively, the "Squad 15 Officers,")[2] make their arguments in four separate motions. Doc. #93; Doc, #97; Doc. #98; Doc. #99. As a matter of efficiency and clarity, the Court analyzes the Squad 15 Officers' excessive force arguments simultaneously due to their similar facts and application of law.

The Squad 15 Officers move to dismiss Plaintiffs' § 1983 excessive force claims, primarily arguing that Plaintiffs implicitly acknowledged that Tuttle may have shot at the officers when they unlawfully entered his home. Doc. #93 ¶ 21; Doc. #97 ¶ 19; Doc. #98 ¶ 19; Doc. #99 ¶ 21. Officers may be entitled, when reasonably in fear for their lives or others' lives, to use appropriate force. Officers' use of deadly force is not dependent on the underlying offense being investigated, but whether the subject of the investigation causes the officers to reasonably fear for their own safety or the public's safety. *Garza v. Briones*, No. 5:16-CV-251, 2018 WL 8874191, at *9 (S.D. Tex. Aug. 16, 2018), *aff'd*, 943 F.3d 740 (5th Cir. 2019). However, Plaintiffs have explicitly pleaded that the officers in this case used excessive and deadly force without any such provocation. Doc. #48 ¶¶ 44–48; Doc. #49 ¶¶ 103–07. Plaintiffs do not allege that Tuttle fired at the officers first but argue in the hypothetical alternative that if Tuttle did fire, it was justifiable under Texas law. Doc. #48 ¶¶ 56, 78, 121; Doc. #49 ¶ 107. Parties may plead alternative, hypothetical, or inconsistent claims without peril. *See* Fed. R. Civ. P. 8(d).

---

[2] This moniker is not to be confused with "Defendant Officers," which refers to all ten Defendants addressed in this Order. *See supra* p. 3.

Next, the Squad 15 Officers argue that Plaintiffs' excessive force claims are not sufficient to overcome their qualified immunity defenses. Doc. #93 ¶ 21; Doc. #97 ¶ 19; Doc. #98 ¶ 19; Doc. #99 ¶ 21. As to the first qualified immunity prong, Plaintiffs sufficiently allege that HPD Squad 15 forced itself into the house at 7815 Harding Street while conducting a search based on a fraudulently obtained no-knock warrant and shot the Decedents dead in their own living room without provocation. Doc. #48 ¶ 44–48; Doc #49 ¶¶ 103–07. As to the second prong, Fifth Circuit case law clearly establishes that it is a constitutional violation for a police officer to "seize an unarmed, nondangerous suspect by shooting him dead." *See Releford v. Rosemon*, 678 F. App'x 267, 268 (5th Cir. 2017) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Again, taken in almost any light, Plaintiffs' allegations amount to violations of the Decedents' clearly established constitutional rights to be secure in their home. *See* U.S. CONST. amend. IV. Plaintiffs also allege that even for the Squad 15 Officers that did not fire the killing shots,[3] each of the Squad 15 Officers was individually present, acquiesced, and are therefore liable as bystanders. As such, the Court finds that the Squad 15 Officers are not entitled to qualified immunity at this stage of the litigation. Perhaps additional discovery will reveal more about their specific actions or lack thereof in furtherance of the shooting.[4]

### 2. Officer Robert Gonzales

Gonzales moves to dismiss Plaintiffs' § 1983 excessive and deadly force claims made against him, arguing that Plaintiffs do not allege he participated in or was present at the 7815

---

[3] Again, the Court hoped that the narrowly tailored discovery it previously ordered would have established the specific shooters of the Decedents. This would have allowed a more informed view of the individual officers' conduct as they seek dismissal at this stage.

[4] While on appeal, Plaintiffs indicated they may wish to dismiss certain individual Defendants. However, the Court is forced to engage in this discussion because of the jurisdiction afforded to it on this limited remand.

Harding Street raid. Doc. #94 ¶¶ 8–12. However, Plaintiffs are not required to allege that Gonzales was present at the raid, only that there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Floyd*, 351 F. App'x at 897. As discussed above, Plaintiffs sufficiently plead that Squad 15 conducted an unlawful search, used excessive deadly force, and shot and killed the Decedents in violation of their constitutional right to be secure in their home. Doc. #48 ¶ 105; Doc #49 ¶¶ 90, 152. Plaintiffs allege that Gonzales was Goines' direct supervisor and in charge of Squad 15. Doc. #48 ¶¶ 105, 153; Doc. #49 ¶¶ 68, 91.

Plaintiffs further allege that Gonzales' failure to supervise or intervene led to Goines' conduct—fabrication of the affidavit, unlawful search, and eventual use of excessive and deadly force—thus violating the Fourth and Fourteenth Amendments. Doc. #48 ¶¶ 101, 105; Doc #49 ¶¶ 91, 151–52. Goines' demonstrated and well-known pattern of illegal conduct was significant enough that Gonzales should have anticipated it could likely result in a constitutional violation. *See Est. of Davis*, 406 F.3d at 381 (stating that deliberate indifference requires a demonstrated pattern of violations). The Court therefore finds that, considering the entirety of Plaintiffs' complaints and taking the allegations as true, Gonzales' failure to supervise Goines and Squad 15 amounted to deliberate indifference sufficient to survive a 12(b)(6) motion to dismiss. *See Lormand*, 565 F.3d at 257.

Lastly, Gonzales argues that Plaintiffs' allegations of excessive force do not overcome Gonzales' qualified immunity defense. Doc. #94 ¶ 13. In deciding the issue of qualified immunity, district courts use a two-prong inquiry to consider (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right, and (2) whether the constitutional right was clearly established within the specific context of the case. *Saucier*, 533 U.S. at 200. Supervisors are entitled to qualified immunity "unless both the underlying

constitutional right and the supervisors' duty with respect to that right were clearly established." *Pena*, 637 Fed. App'x at 786.   It is clearly established in this circuit that supervisors of police officers can be liable for the actions of their officers, even if they did not participate in those actions, if the supervisor "knew or should have known that the allegedly unconstitutional acts were occurring and [the supervisor] acquiesced in them." *Wanger*, 621 F.2d at 680.

As thoroughly discussed above, Plaintiffs sufficiently plead that Goines had a demonstrated pattern of unconstitutional conduct and that Gonzales was aware of that conduct because he participated in some of it.   Doc. #48 ¶¶ 99–105, 151–55; Doc. #49 ¶¶ 85–86, 88, 91. Plaintiffs sufficiently plead that Goines lied in his affidavit and fraudulently obtained the warrant for 7815 Harding Street.   Doc. #48 ¶¶ 66–77, 103; Doc. #49 ¶¶ 3–4, 111–18.   Gonzales was Goines' supervisor generally but also was supervising him directly during the two weeks in January when 7815 Harding Street was investigated.   Doc. #48 ¶ 105; Doc. #49 ¶¶ 91, 160–63. The Court finds these allegations regarding Goines' known pattern of unlawful conduct, Gonzales' participation in that past conduct, Gonzales' knowledge that Goines did not participate in the Harding Street investigation (which resulted in a determination that no criminal activity was occurring at the address), and Gonzales' lack of supervision over Goines and his own police squadron are sufficient for the Court to plausibly infer that Gonzales knew or should have known that allegedly unconstitutional acts were likely to occur; he was "deliberately indifferent" and such conduct was not "objectively reasonable." *See Brown*, 623 F.3d at 253.   As such, the Court finds that Gonzales is not entitled to qualified immunity at this stage of the litigation.   Perhaps additional discovery will reveal what he knew or did not know with respect to planning the raid.

18

c.    **State Law Claims**

Defendant Officers make their arguments in five separate motions.  Doc. #93; Doc. #94; Doc, #97; Doc. #98; Doc. #99.  Defendant Officers' arguments in response to Plaintiffs' state law claims are identical, based on the same facts and law.[5]  Doc. #93 ¶¶ 27–29; Doc. #94 ¶¶ 27–29; Doc. #98 ¶¶ 25–28; Doc. #99 ¶¶ 27–29.   Therefore, the Court analyzes Defendant Officers' arguments simultaneously.

Defendant Officers argue that Plaintiffs' state law wrongful death and survivor claims should be dismissed for failure to state a claim for which relief can be granted.  Doc. #93 ¶¶ 27–29; Doc. #94 ¶¶ 27–29; Doc. #98 ¶¶ 25–28; Doc. #99 ¶¶ 27–29.   To state a claim for wrongful death, a plaintiff must allege that: (1) the plaintiff is a statutory beneficiary of the decedent; (2) the defendant is a person or corporation; (3) the defendant's wrongful act caused the death of the decedent; (4) the decedent would have been entitled to bring an action for the injury if she had lived; and (5) the plaintiff suffered actual injury. TEX. CIV. PRAC. & REM. CODE §§ 71.001-71.004, § 71.010.   To state a survival claim, a plaintiff must plead that: (1) plaintiff is the legal representative of the decedent's estate; (2) the decedent had a cause of action for personal injury to her health, reputation, or person before she died; (3) the decedent would have been entitled to bring an action for the injury if she had lived; and (4) the defendant's wrongful act caused the decedent's injury. *Id.* § 71.021.

As to the wrongful death claim, Defendant Officers argue that Plaintiffs have not proven that their actions caused the Decedents' death.  Doc. #93 ¶ 27; Doc. #94 ¶ 27; Doc. #98 ¶ 25; Doc. #99 ¶ 27.  As explained above, Plaintiffs plausibly allege that Squad 15's execution of the raid and

---

[5] Defendant Officer Gallegos did not move to dismiss the state law claims against him, but the arguments made by the other Defendant Officers still apply. *See* Doc. #97.

Gonzales' failure to supervise them violated the Decedents' constitutional rights and wrongfully caused their deaths.  Doc. #48 ¶¶ 31–35, 105–09; Doc. #49 ¶¶ 90, 152, 162, 212.  Defendant Officers also argue that Plaintiffs cannot maintain a survival claim because Plaintiffs have not pled a viable underlying cause of action.  Doc. #93 ¶¶ 28–29; Doc. #94 ¶¶ 28–29; Doc. #98 ¶¶ 26–28; Doc. #99 ¶¶ 28–29.  As explained above, Plaintiffs have plausibly alleged § 1983 claims against Defendant Officers based on their use of excessive force, bystander liability, and supervisor liability.  As such, the Court finds that Plaintiffs' wrongful death and survival claims are sufficiently alleged to survive a motion to dismiss.  Accordingly, the Defendant Officers' Motions to Dismiss are denied as to Plaintiffs' state law claims.

## IV.    Conclusion

In conclusion, Plaintiffs successfully plead § 1983 claims against Defendant Officers for unreasonable search and seizure based on lack of probable cause and excessive force.  They also sufficiently plead state law claims for wrongful death and survivorship.  However, the chain of causation for Plaintiffs' sufficiently pleaded § 1983 claims against the Squad 15 Officers[6] for an unreasonable search based on lack of probable cause is broken under the independent intermediary doctrine.  Those claims are therefore DISMISSED.  Plaintiffs' § 1983 claims for unreasonable search based on lack of probable cause against Officer Gonzales, § 1983 claims for excessive force against the Defendant Officers, and state law claims for wrongful death and survivorship against Defendant Officers all survive qualified immunity, at least for the motion to dismiss stage.

For the foregoing reasons, Defendant Clemente Reyna's Motion to Dismiss (Doc. #93); Defendant Felipe Gallegos' Motion to Dismiss (Doc. #97); Defendants Nadeem Ashraf, Cedell Lovings, Frank Medina, Oscar Pardo, and Thomas Wood's Motion to Dismiss (Doc. #98); and

---

[6] Defendant Officers minus Officer Gonzales.

Defendants Manual Salazar and Eric Sepolio's Motion to Dismiss (Doc. #99) are GRANTED IN

PART.  Defendant Robert Gonzales' Motion to Dismiss (Doc. #94) is DENIED.

      It is so ORDERED.

DEC 1 6 2022
_____
Date

                     _____
                     The Honorable Alfred H. Bennett
                     United States District Judge