# United States Court of Appeals for the Fifth Circuit

United States Courts
Southern District of Texas
FILED
*August 09, 2023*
Nathan Ochsner, Clerk of Court

United States Court of Appeals
Fifth Circuit
**FILED**
May 23, 2023
Lyle W. Cayce
Clerk

No. 22-20279
c/w No. 23-20013

---

CLIFFORD F. TUTTLE, JR., *as Representative of the Estate of Dennis W. Tuttle, Deceased*; ROBERT TUTTLE; RYAN TUTTLE; JO ANN NICHOLAS; JOHN NICHOLAS,

*Plaintiffs—Appellees,*

*versus*

ERIC SEPOLIO; MANUEL SALAZAR; THOMAS WOOD; OSCAR PARDO; FRANK MEDINA; CLEMENTE REYNA; CEDELL LOVINGS; NADEEM ASHRAF; MARSHA TODD; ROBERT GONZALES,

*Defendants—Appellants.*

---

Appeals from the United States District Court
for the Southern District of Texas
USDC Nos. 4:21-CV-270; 4:21-CV-272

---

Before RICHMAN, *Chief Judge*, and ELROD and OLDHAM, *Circuit Judges*.

PER CURIAM:*

This appeal concerns civil-rights claims brought by the estates of Dennis Tuttle and Rhogena Nicholas in relation to the Houston Police Depart-

---

* This opinion is not designated for publication. See 5TH CIR. R. 47.5.

ment's attempt to execute a search warrant at 7815 Harding Street. Appellees are various police officers. They asserted qualified immunity and moved to dismiss. The district court dismissed some claims and allowed others to proceed. We AFFIRM in part, REVERSE in part, and VACATE in part.

I

In reciting these facts, we accept all well-pleaded allegations as true and construe them in Plaintiffs' favor, rejecting all naked assertions and legal conclusions. *Walker v. Beaumont ISD*, 938 F.3d 724, 735 (5th Cir. 2019). The controversy began with a phone call reporting suspected unlawful activity. Patricia Garcia called the police department, claiming that the residents in 7815 Harding Street were involved in selling heroine and possessed various firearms, including machine guns. Tuttle owned that home, and lived there with Nicholas, his wife. Police officers investigated the home, observed no criminal activity, and forwarded their notes to Lieutenant Marsha Todd, a member of the department's narcotics division and responsible in part for assigning cases to other narcotics officers.

Todd relayed the information concerning Harding Street to Officer Gerald Goines, an officer in narcotics division Squad 15. Goines then took a series of actions to fraudulently obtain a search warrant for the residence at issue. First, Goines executed an affidavit swearing that a confidential informant told him that the informant purchased heroine from the residence and observed firearms within the home. Based on the affidavit, Goines then applied for and received a no-knock search warrant from a municipal judge.

It turned out that the testimony contained in Goines's affidavit was false. Goines later admitted that he had not paid any confidential informant to purchase drugs from the Harding Street home. He maintains that he purchased the heroine and witnessed the firearms himself, but Plaintiffs deny that allegation. In any event, Goines and Officer Steven Bryant organized

2

Squad 15 officers to execute the search warrant. These are Eric Sepolio, Manuel Salazar, Felipe Gallegos, Thomas Wood, Oscar Pardo, Frank Medina, Clemente Reyna, Cedell Lovings, and Nadeem Ashraft.

The events that followed are highly contested. Plaintiffs allege that officers fired without provocation, shooting and killing a dog owned by Tuttle and Nicholas. Plaintiffs further allege that officers, both inside the home and outside of it, began firing their weapons after the initial shot was fired. And they allege that all the officers mentioned above were on the scene and involved in executing the warrant. Nor do any of those officers deny being present and participating. Any firing done by Tuttle, Plaintiffs contend, was done purely in defense of himself and his wife. As a result of the gunfire, Tuttle and Nicholas were killed and four officers seriously injured.

Also at issue is Lieutenant Robert Gonzales, the supervisor of Squad 15. Plaintiffs contend that Gonzales was aware that Goines regularly violated City policy relating to confidential informants and regularly lied in order to obtain no-knock search warrants. And they assert that Gonzales knew that Goines had not actually investigated the Harding Street home.

Plaintiffs brought multiple claims against various defendants pursuant to 42 U.S.C. § 1983. As relevant here, they asserted two general categories of claims—that the officers used excessive force in executing the search warrant and that the search and seizure were unlawful. As against the individual officers, Plaintiffs asserted both direct claims and claims premised on failure to intervene. And as against Gonzales and Todd, Plaintiffs asserted that the two lieutenants are directly liable for excessive-force and search-and-seizure, and liable on a failure to supervise theory. Finally, Plaintiffs also asserted wrongful death and survival as separate "causes of actions," in their words.

Several of the officers moved to dismiss, asserting qualified immunity. Those officers are Sepolio, Salazar, Gallegos, Wood, Pardo, Medina, Reyna,

No. 22-20279
c/w No. 23-20013

Lovings, and Ashraft, as well as Gonzales and Todd. As to Plaintiffs' excessive-force claims, the district court denied the motions in full, including the claims for failure to supervise. As to Plaintiffs' search and seizure claims, the district court dismissed the claims against the individual officers, but allowed the failure-to-supervise claims to proceed. And the district court denied the motions to dismiss as to Plaintiffs' claims for wrongful death and survival.

II

We have jurisdiction to review orders denying qualified immunity because they are immediately appealable according to the collateral-order doctrine. *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022). We review *de novo* a district court's denial of a qualified-immunity defense. *Allen v. Hays*, 21-20337, slip op. at 4 (5th Cir. 2023). To overcome such a defense, the plaintiffs must plead facts showing: (1) that the defendants violated their constitutional right; and (2) that the right at issue was clearly established at the time of the violation. *Henderson v. Harris County*, 51 F.4th 125, 132 (5th Cir. 2022). We have discretion to consider those inquiries in whatever order best suits the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A

We first consider the claims asserted against the officers who did not have a role in supervising other officers. That is, the claims asserted against Sepolio, Salazar, Gallegos, Wood, Pardo, Medina, Reyna, Lovings, and Ashraft. As to those officers, Plaintiffs asserted claims for excessive force and unlawful search-and-seizure, based on direct liability and failure to intervene.

1

The district court denied the officers' motions to dismiss Plaintiffs' excessive-force claims. To state such a claim, a plaintiff must establish that he was injured as a result of force that was "clearly excessive to the need" as

4

well as "objectively unreasonable" in light of the relevant circumstances. *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021).

Plaintiffs' allegations state an excessive-force claim that overcomes qualified immunity. Accepting Plaintiffs' version of events as true, the officers fired upon Tuttle and Nicholas without provocation. Taken together, the facts alleged are sufficient at the pleading stage. The officers deny that they shot first, as is their right. But such a denial does not override our obligation to accept the well-pleaded facts. We find no error in the district court's denial of the motions to dismiss these claims.

2

The district court granted the officers' motions to dismiss Plaintiffs' search-and-seizure claims. It did not specify whether it dismissed the claims with prejudice. In such a case, we presume that claims are dismissed without prejudice. *Marshall v. Kansas City S. Ry. Co.*, 378 F.3d 495, 500–01 (5th Cir. 2004). The officers urge us to amend the dismissal to being with prejudice, but they cite no legal authority for the proposition that we have jurisdiction to consider an appeal from an order granting a motion to dismiss without prejudice. Indeed, they admit that the "claims of unlawful search [asserted against these defendants] . . . are not an active part of this case." That admission is appropriate. In this interlocutory posture, we lack jurisdiction to consider arguments "unrelated to the denial of qualified immunity." *Burnside v. Kaelin*, 773 F.3d 624, 626 n.1 (5th Cir. 2014).

3

Last, the district court denied the officers' motions to dismiss Plaintiffs' claims for excessive force and unlawful search-and-seizure based on a failure-to-intervene theory. Such a theory requires a plaintiff to show that an officer was present while another officer violated someone's constitutional right, was aware of the violation, and had a clear opportunity to intervene but

5

failed to do so. *See Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). With respect to the excessive-force claims, even viewing the allegations in Plaintiffs' favor, we must conclude that they fail to show that the officers had a sufficient opportunity to intervene while the firefight was in progress. And supposing that the facts as pleaded demonstrate such an opportunity, they certainly do not show a clearly established right to intervention. The same is true with respect to the search-and-seizure claims. The facts as alleged do not show that the officers were involved in obtaining the search warrant or otherwise knew the warrant was obtained fraudulently. *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). It therefore follows that they had no opportunity to intervene and prevent the unlawful search. We thus hold that the district court erred in allowing these claims to proceed. The claims will be dismissed with prejudice because they are futile. *See, e.g., Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021).

B

Next, we consider the claims asserted against the officers who allegedly had a role in supervising other officers: Lieutenants Todd and Gonzales. Against these defendants, Plaintiffs asserted claims for excessive force and unlawful search-and-seizure, based on direct liability and failure to supervise.

1

As an initial matter, Todd argues that the district court erred in addressing her motion to dismiss in the order at issue here. We agree. Before entering the order from which the officers appeal, the district court had already ruled on Todd's motion to dismiss, and Todd had already appealed that order. Indeed, a separate appeal is proceeding specifically addressing those issues. *See Tuttle v. Todd*, No. 22-20233. The district court therefore lacked jurisdiction to enter any judgment respecting Lieutenant Todd. *See*

*Williams v. Brooks*, 996 F.2d 728, 729–30 (5th Cir. 1993). The district court's order must be vacated insofar as it concerns Todd.

2

The district court denied Gonzales's motion to dismiss the excessive force and search-and-seizure claims based on direct liability. We conclude that this was error because Gonzales was not personally involved in obtaining the search warrant or in effectuating the search. "Personal involvement is an essential element" of demonstrating liability under § 1983. *Delaughter v. Woodall*, 909 F.3d 130, 137 (5th Cir. 2018) (quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)). As discussed below, it may conceivably be the case that Gonzales is liable for the actions of Goines and others based on his failure to supervise those officers. But the facts alleged show that Gonzales had no direct role in the allegedly unlawful activity at issue here. This claim should have been dismissed as a matter of law.

3

The district court denied Gonzales's motion to dismiss the excessive force and search-and-seizure claims based on a failure-to-supervise theory. A "supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate 'when [the supervisory official] breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury.'" *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)). We have understood this inquiry to contain three elements: (1) that the supervisor failed to train or supervise the subordinate; (2) a causal link between the failure to train or supervise and the constitutional violation; and (3) that the failure to train or supervise amounts to deliberate indifference. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005); *Smith*, 158 F.3d at 911–12.

The threshold for pleading a failure-to-supervise claim is high, but we

conclude that it is satisfied here. Plaintiffs allege multiple specific instances in which Goines fraudulently obtained a search warrant and in which violence occurred. They further allege that Gonzales—in his capacity as Goines's supervisor—knew about these infractions, but did nothing to correct them. As such, these allegations present the uncommon case where deliberate indifference may be attributed to an officer's supervisor. The facts alleged also support the inference that Gonzales failed to supervise Goines, and that a causal link exists between his failure to supervise and the actions that ultimately occurred. The district court did not err in allowing this claim to proceed.

## C

Finally, we address Plaintiffs' state-law wrongful death and survival claims. The officers contend that those claims should be dismissed because they are not separate causes of action for purposes of state law. However, at this interlocutory posture, the officers have not adequately raised this issue. Federal qualified immunity does not apply to state-law claims, *see Brown v. Miller*, 519 F.3d 231, 238–39 (5th Cir. 2008), and the officers have not briefed the argument that they are entitled to qualified immunity as a matter of Texas law. Our jurisdiction extends only to issues concerning the denial of qualified immunity, and the officers have not framed this issue in that light. *Burnside*, 773 F.3d at 626 n.1. We therefore do not address this topic.

## III

For the reasons stated above, the judgment below is AFFIRMED in part, REVERSED in part, and VACATED in part. The district court denied the motions to dismiss the excessive-force claims asserted against Sepolio, Salazar, Gallegos, Wood, Pardo, Medina, Reyna, Lovings, and Ashraft. It also denied Robert Gonzales's motion to dismiss as to Plaintiffs' excessive force and search-and-seizure claims premised on a failure-to-supervise theory. Those aspects of the judgment are AFFIRMED.

Next, the district court denied the motions to dismiss Plaintiffs' excessive-force and search-and-seizure claims premised on a failure-to-intervene theory. It also denied Gonzales's motion to dismiss Plaintiffs' excessive-force and search-and-seizure claims premised on a direct-liability theory. Those aspects of the judgment are REVERSED and those claims are DISMISSED WITH PREJUDICE.

In addition, the district court appears to have included Marsha Todd in its rulings. Because the district court was deprived of jurisdiction as to Todd when she filed a separate appeal, any aspects of the judgment relating to Todd are VACATED.

Finally, the district court granted the motions to dismiss the search-and-seizure claims asserted against Sepolio, Salazar, Gallegos, Wood, Pardo, Medina, Reyna, Lovings, and Ashraft and denied the motions to dismiss the state-law wrongful death and survival claims asserted against all defendants. We lack jurisdiction to consider those components of the district court's judgment and so do not address them.

The case is REMANDED to the district court for proceedings consistent with this opinion.

No. 22-20279
c/w No. 23-20013

ANDREW S. OLDHAM, *Circuit Judge*, concurring in part and dissenting in part:

In my view, Officer Gonzalez is entitled to qualified immunity because neither the plaintiffs nor the district court pointed to any clearly established law holding otherwise.

Qualified immunity is an affirmative defense, and after it's raised, it's the plaintiffs' burden to overcome it. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Plaintiffs can meet their burden by pointing to a Supreme Court case that places "the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quotation omitted); *see Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (assuming published circuit precedent can in theory clearly establish law but only to reverse the Ninth Circuit's reliance on it). That precedent must be "clear enough that every reasonable official would interpret it to establish the particular rule." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Again and again, the Supreme Court has emphasized that the legal principle must "clearly prohibit the officer's conduct *in the particular circumstances before him*." *Ibid.* (emphasis added); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (instructing courts not to define clearly established law at a "high level of generality" (quotation omitted)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (same); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (the clearly-established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition" (quotation omitted)).

Here, however, the district court did not apply the correct standard. In its analysis of the clearly established prong, the district court merely

No. 22-20279
c/w No. 23-20013

quoted general legal principles from *Wanger v. Bonner*, 621 F.2d 675, 680 (5th Cir. 1980), and *Brown v. Callahan*, 623 F.3d 249, 253–55 (5th Cir. 2010). But neither case is even close to this one. *See Salazar v. Molina*, 37 F.4th 278, 287 (5th Cir. 2022), *cert. denied*, No. 22-564, 2023 WL 3046124 (Apr. 24, 2023) (mem.). And the plaintiffs don't attempt to point to a factually similar case either. Pls' Supp. Br. 13–14.

I therefore respectfully dissent from the majority's denial of qualified immunity to Officer Gonzalez.