UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

– – –

THE HONORABLE ALFRED H. BENNETT, JUDGE PRESIDING
_____

CLIFFORD F. TUTTLE, JR. et al.,

                          Plaintiffs,

vs.                          Case No. 4:21-cv-00270

CITY OF HOUSTON et al.,

                          Defendants.
_____

STATUS CONFERENCE

OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS

HOUSTON, TEXAS

OCTOBER 13, 2023
_____

APPEARANCES:

For the Plaintiff:
          L. Boyd Smith, Jr.
          Boyd Smith Law Firm PLLC
          2905 Sackett Street
          Houston, TX 77098

          Michael P. Doyle
          Doyle LLP
          3401 Allen Parkway, Suite 100
          Houston, TX 77019

For the Defendants:
          Alistair B. Dawson
          Beck Redden LLP
          1221 McKinney, Suite 4500
          Houston, TX 77010

          Christy L. Martin
          City Of Houston
          900 Bagby Street, 4th Floor
          Houston, TX 77002

```
 1          H. Al Odom, III
            Odom Law Firm
 2          601 Sawyer, Suite 225
            Houston, TX 77007
 3
            David A. Nachtigall
 4          David A. Nachtigall PLLC
            1545 Heights, Suite 100
 5          Houston, TX 77008

 6          Armstead C. Lewis
            Rusty Hardin & Associates, LLP
 7          1401 McKinney, Suite 2250
            Houston, TX 77010
 8
            Melissa Azadeh
 9          City of Houston Legal Department
            P.O. Box 368
10          Houston, TX 77002-0368

11          Kelly A. Dempsey
            City of Houston Legal Department
12          900 Bagby Street, 3rd Floor
            Houston, TX 77002
13
            Alexander E. Garcia
14          City of Houston
            900 Bagby Street
15          Houston, TX 77002

16          Michelle C. Taylor
            City of Houston
17          900 Bagby Street, 3rd Floor
            Houston, TX 77002
18

19   Other appearances:
            Lisa Andrews, Edward C. McClees
20

21
     Reported by:
22          Cheryl Cummings, RDR-RMR-CRR-CRC
            Official Court Reporter
23          U.S. District Court
            Southern District of Texas
24
     Proceedings recorded by mechanical stenography.
25   Transcript produced by Reporter on computer.
```

```
 1                    P R O C E E D I N G S
 2         (Proceedings commenced at 10:28 a.m., as follows:)
 3              THE COURT:  On Cause No. 4:21-cv-270, Tuttle
 4    et al. vs. City of Houston.
 5              Counsel, your appearances for the record.
 6              MR. DOYLE:  Good morning, your Honor.  Mike
 7    Doyle here for the family of Rhogena Nicholas.
 8              MR. SMITH:  Good morning, Judge.  Boyd Smith for
 9    the family of Dennis Tuttle.
10              MR. DAWSON:  Good morning, your Honor.  Alistair
11    Dawson for the City of Houston.
12              MR. ODOM:  Good morning, Judge.  Al Adom for the
13    City of Houston also.
14              MR. LEWIS:  Good morning, your Honor.  Armstead
15    Lewis here for Mr. Felipe Gallegos.
16              MS. MARTIN:  Good morning.  Christy Martin for
17    Officers Gonzales and Medina.
18              MS. DEMPSEY:  Good morning, Judge.  Kelly
19    Dempsey for Officer Salazar.
20              Oh, and, Judge, we also have criminal defense
21    attorneys Lisa Andrews and Ed McClees in case the Court
22    has any questions or issues that he would like to
23    discuss with the criminal side.
24              Thank you.
25              MS. AZADEH:  Good morning, your Honor.  Melissa
```

```
 1  Azadeh for Defendants Pardo, Lovings, and Sepolio.
 2           MR. GARCIA:  Good morning, your Honor.
 3  Alexander Garcia for Thomas Wood and Clemente Reyna.
 4           MS. TAYLOR:  Good morning, your Honor.  Michelle
 5  Taylor on behalf of Officer Ashraf.
 6           MR. NACHTIGALL:  Good morning, your Honor.
 7  David Nachtigall for Steven Bryant.
 8           And I received a message from Dwayne Day this
 9  morning who is Gerald Goines counsel.  He was supposed
10  to appear telephonically, but he asked me to advise the
11  Court he's having some sort of connection issue.
12           THE COURT:  Yes, sir.  Thank you.
13           Counsel, this is a status conference.  Again,
14  more traffic from the appellate Court.  And I understand
15  that we met recently and just trying to get a sense of
16  where we're at, where we're going.  Timingwise, I think
17  there has been a motion for continuance filed or a stay
18  or something.  I want to get some clarity on that as
19  well.
20           So first, status from plaintiffs.
21           MR. DOYLE:  Sure.  It was actually a request of
22  adjustment of one of the deadlines, expert.
23           THE COURT:  Yes.
24           MR. DOYLE:  It had to do with the way the
25  deposition pace has been going and is intended to give
```

1  them time to actually review it.

2          THE COURT:  Understood.

3          MR. DOYLE:  We ask for a month's extension.

4  That's unopposed.  There is a request to move the trial

5  that it goes with.

6          Well, in the nearly two months since we've been

7  before you, we have been able to get agreement to five

8  depositions, two of which were my 85-year-old client and

9  the widow of John Nicholas who were two days, yesterday

10 and the day before.  We have I think received as of

11 yesterday a clear indication that the absolute most the

12 City would ever agree to would be fifteen depositions,

13 which means that we're basically over that by taking the

14 defendants' depositions which have been at least

15 tentatively set in February pending the Court's

16 confirmation.

17         We learned as of yesterday at 4:30 that one of

18 the defendants, Lovings, after many hours of

19 in-person/remote telephonic conference, we were told for

20 the first time yesterday he can't actually give a

21 deposition.  So that number is down.

22         THE COURT:  Cannot?

23         MR. DOYLE:  That's what we were told yesterday

24 at 4:25 p.m. via e-mail after two months of spending

25 time discussing these depositions.  Apparently, it has

something to do with his injuries that he sustained
during the raid. He's the officer I understand to be
paralyzed. But apparently we've been told he cannot
speak.

THE COURT: You were told that by a doctor?

MR. DOYLE: We were told that by a lawyer for
the City, Ms. Dempsey, in an e-mail -- for the first
time after months of going back and forth on
depositions, by the way, this fellow that we noticed,
they said he can't speak. I don't have any reason to
doubt that. That's what I was told in writing.

But the practical matter is, at this point I
don't personally believe, and that's why I requested
some time ago, that we're going to get a resolution
after months and months to this issue of who we can
depose. So by way of example, Chief Acevedo who we
dismissed, who is no longer an employee, his
agreement -- his deposition can't be agreed. The chiefs
below him, more or less the Monell line, they can't be
agreed.

So as a practical matter, I know you warned us
where it is --

THE COURT: It wasn't a warning.

MR. DOYLE: I understand. It was a promise.
But I think there will be a need for the Court to

1    determine who we can depose to be able to do proper

2    discovery.

3            I think there's an agreement because of the pace

4    and because of just the practical matter of where are

5    experts are, we're going to need at least another month

6    for them to be able to do a proper compliant Rule 26(f)

7    report.  There are some documents' issues that I think

8    probably after conference we would need some

9    clarification.  I wouldn't put it as disagreement in

10   terms of the custodial, per the order you entered.

11           And I think that lays out the waterfront from at

12   least my perspective, although Mr. Smith probably will

13   point out something that I missed.

14           MR. SMITH:  Yes, your Honor.  Boyd Smith.

15           The only thing to add, and we talked about this

16   with counsel, is another issue if the Court is inclined

17   to hear it today.  Again, "dispute" may be too big of a

18   word, but a misunderstanding that might need some

19   clarification on the City's production of the 2019 audit

20   report.  The Court may or may not recall that after this

21   Harding Street incident, Chief Acevedo ordered a full-on

22   operational audit of what happened at Harding Street,

23   what went wrong, and what needs to be changed in this

24   city to keep it from happening again.  So months later

25   they came out with an audit.

1    It was produced to us by the City in redacted

2  form.  We asked Mr. Dawson for an unredacted copy, and

3  instead what we got -- the original version was redacted

4  on 30 pages.  Instead, what we got was a production of

5  11 unredacted pages that go to a completely different

6  version of the audit report.

7    So what we're wanting is an unredacted copy of

8  the audit report previously produced and an unredacted

9  copy of the version of the audit from which these 11

10  unredacted pages came from, which is different in its

11  substance not just the page numbers.  So that's an

12  additional issue.

13    THE COURT:  Mr. Dawson, can you lead us off for

14  the defense?

15    MR. DAWSON:  Yes, your Honor.

16    Let me begin if I can with the deposition issue.

17  And I agree with Mr. Doyle that I think unfortunately

18  the Court is going to have to decide the number of

19  depositions that the plaintiffs are allowed to take.

20    And if I can give you the background, when we

21  were last here, you will recall that you set a schedule

22  that I think your Honor acknowledged was fairly

23  aggressive.  And you told us when you were here, and I

24  went back and looked at the transcript, that in setting

25  that aggressive schedule, you wanted the parties to,

1  quote -- and this is your Honor speaking -- Refocus on

2  taking depositions that are truly important, end quote.

3  And you made the comment that this was not going to be a

4  case where there was going to be scorched-earth

5  depositions.

6       And after that, shortly after that we received a

7  request from Mr. Doyle for twenty-nine depositions in

8  Round 1 with more to come.  And I said to Mr. Doyle and

9  I said to Mr. Smith in separate conversations, really

10 focus on who you really need.  If you tell me who you

11 really need, we can get those arranged.

12      And they declined to do so and, instead, they

13 added to their list.  So they took a deposition of

14 Lieutenant Todd this week, and they've added three more

15 people that they want to take.  So now they want to

16 depose thirty-two people.  And respectfully, your Honor,

17 I don't think they need all those depositions, and I'll

18 explain why.

19      Three of the officers they want to take were not

20 in Squad 15, were not part of the warrant, were not part

21 of the execution of the warrant, were not at Harding

22 Street on January 28th.  I don't consider those

23 important depositions.  They want to take a confidential

24 informant who, again, knows nothing about the warrant or

25 the execution of the warrant.  And you can obviously

understand why deposing a confidential informant is
highly problematic.

        And respectfully, they don't need all of the
individual defendant's depositions.  Officer Gallegos is
going to testify next month.  He is going to say, as
Mr. Harden has informed the Court, that he was the one
who shot and killed Ms. Nicholas and he was the one who
shot and killed Mr. Tuttle.  And we know that two of the
officers never fired their guns, we know that four never
fired in a way that hit either of the decedents.  So why
do they need those depositions on an excessive force
claim if Mr. Gallegos is going to acknowledge that he
was the one who killed both of the decedents?

        THE COURT:  You don't think their testimony as
to eyewitnesses?

        MR. DAWSON:  They could be.  They could be, but
my suggestion -- so let me tell you where you are.  They
have issued twenty deposition notices thus far with more
to come.  And those dates are agreed to by the City with
the caveat that we respectfully submit that they should
ask the Court for leave to take more than the 10 that is
permitted in the rules.

        And I know your Honor said at the last hearing
that you expected there to be between twenty and thirty
depositions in this case, so I get it that you're going

1   to give them more than 10. I understand that. And I'm

2   not suggesting you shouldn't, but I do think --

3         THE COURT: What's the number of actual

4   defendants in the case?

5         MR. DAWSON: I believe that there are 11

6   individual defendants.

7         THE COURT: So even under the rules, if we were

8   to follow the rules strictly, each defendant, one

9   defendant at a minimum wouldn't even be subject to a

10   deposition.

11         MR. DAWSON: I'm not suggesting that we apply

12   the rules, your Honor. What I'm suggesting is that they

13   should -- either the Court should say you get no more

14   than X, whatever the Court thinks is appropriate, or you

15   should ask them to file their motion for leave to exceed

16   the 10 that's permitted. And we'll respond to you, and

17   then you can decide what you think is appropriate.

18         But we need a limit because we have asked

19   them -- we have suggested fifteen and said, okay, if you

20   don't like that number, tell us a number. And they

21   said, no, we're not going to give you a number because

22   every time we take a deposition, we may find more people

23   that we want to depose. And we respectfully can't have

24   an unlimited number in the compressed time frame that

25   you have given us.

1        We have worked with them on scheduling, and I'm

2    not aware of any current employees that are not

3    scheduled.  There's one they've asked for, this

4    Officer Armstrong, he's no longer with the department.

5    And I've tried to contact him on several occasions.  I

6    even sent him a letter and haven't heard back from him.

7    He's the only one that I know of.  We have arranged, for

8    example, Commander Follis who is no longer with the

9    department, he was the head of the narcotics division at

10   the time, he has agreed to his deposition.

11       So we have cooperated with them when we

12   scheduled all these, but I do think that the Court is

13   going to have to determine whether there's a cap on the

14   number that they take and, if so, what that cap should

15   be.

16       With respect to the unopposed motion, I just

17   want to point out, your Honor, that Mr. Smith contacted

18   me and asked if we would agree to it.  And I agreed to

19   it with the caveat that we're asking that all the dates

20   be moved by 30 days.  So that's the request that's

21   pending before you.  Because the end of fact discovery

22   has a relationship to the expert discovery which in turn

23   has a relationship to when we file our dispositive

24   motions.

25           And then with respect to the document that

1 Mr. Smith made mention to, I think he and I will get

2 this worked out. But just to give you the background,

3 in the final audit, we redacted -- or, it came to me as

4 already redacted, I should say. The confidential

5 informant information was redacted. The payroll

6 numbers, you heard us talk about that before, those were

7 redacted. It also redacted the names of the officers

8 that were involved in the matters that were being

9 audited. So it would mention Officer Goines' name, but

10 whoever he was working with was redacted.

11 I did not think that was appropriate so I went

12 to try to unredact it. But believe it or not, they

13 couldn't find -- so when it came to me, someone had

14 taken a black marker and marked through the redacted

15 copy. They couldn't find a clean copy of that document.

16 Nobody could find it. And so what we did is we went

17 back to an earlier version, and I produced to Mr. Smith

18 unredacted pages that identified from an earlier version

19 so he could know who the name of the officer was that

20 Officer Goines was working with on the matters that were

21 being audited.

22 THE COURT: And I'm not prejudging a ruling on

23 the redactions or the production, but I want to make

24 sure I understood something you just represented to me.

25 You're telling me that the City of Houston's position is

1  that in regards to this raid, which has been the subject

2  of numerous lawsuits, criminal actions, media coverage,

3  that the report that looks into it, they cannot find a

4  clean copy of it?

5          MR. DAWSON:  So the audit was not about Harding

6  Street.  There have been many investigations about

7  Harding Street, all of which have been produced.  There

8  were, I believe, two -- three SIU investigations and two

9  IAD investigations.  All of that has been produced, all

10 that have we have a copy of.

11         There was an audit about other search warrants

12 that Officer Goines and Squad 15 had been involved in,

13 and they compared those search warrants to what happened

14 in other squads, and that is the document that's been

15 referred to as the final audit.  It's not about Harding

16 Street, but it is about other matters that were handled

17 by Squad 15, and there is a redacted version of it.

18 They have not located an unredacted version of that

19 document.

20         But in any event --

21         THE COURT:  Hold on.

22         MR. DAWSON:  Okay.

23         THE COURT:  I'm trying to digest what you just

24 told me because I find that extremely hard to believe.

25 I take you at your word that the audit is not about the

1    Harding -- Harding Street raid.  But it does involve

2    Officer Goines who has been prosecuted both on the state

3    level and the federal level.  Correct?

4              MR. DAWSON:  Well, he's under Indictment.

5              THE COURT:  Under Indictment.  And how he went

6    about his job in securing warrants or raids or whatever

7    the case may be, there was an audit done which you have

8    a redacted copy.  And somehow, as of today, the

9    representation in this federal district court is that

10   the City of Houston cannot locate an unredacted version?

11             MR. DAWSON:  That is what I have been told,

12   your Honor.

13             Now, in fairness, I don't think it's going to

14   change your position or opinion about it, it does

15   involve Officer Goines -- and it's been a while since I

16   looked at it so this is from memory.  It doesn't get

17   into details about how he went about his business.

18   There's a separate investigation into that, that has

19   been produced.  It's more generally about how Squad 15

20   did their business, how Squad 15 compared to other

21   squads in the narcotics division, how many times they

22   had no-knock warrants, for example, how many times they

23   used confidential informants, things of that nature.  It

24   is related to Harding Street, no doubt about it.  But,

25   yes, I am informed -- I will go back and triple-check,

1  but I asked for it several times and that's what I've

2  been told.

3           And in relation to the issue that Mr. Smith

4  raised, he asked me yesterday if I would give him an

5  unredacted version of the draft.  I need to go back and

6  look at it.  I'm sure he and I will get that worked out.

7           So I'll conclude by saying we've been very

8  cooperative.  We scheduled everything.  I think we are

9  going to need the Court's assistance on the number of

10 depositions that you think is appropriate.  And I get

11 your point about the eyewitnesses, but --

12          THE COURT:  Well, I do concur with you on, given

13 the aggressive schedule that we're under, it would be

14 difficult to take every deposition that you would want.

15 And my goal in setting an aggressive schedule was, as

16 you pointed out, to focus the attention on that which

17 truly matters.  And so I concur with you on that.  So it

18 may not be the number that you want, but probably not

19 going to be the number that the plaintiffs want.  And

20 I'm happy to visit with you in greater detail on that.

21          MR. DAWSON:  And my respectful suggestion is set

22 a number, your Honor, with the understanding that, hey,

23 if it turns out you need more, you can come back and

24 ask.

25          THE COURT:  Right.  But I need to know -- before

1   I just pick a random number, I want to get a sense of

2   what we're talking about, what has been requested from

3   whom such that I can have a better grasp. And this

4   particular schedule we're talking about, what's

5   necessary.

6           MR. DAWSON: And to fill that in for you,

7   your Honor, there have been twenty scheduled, twenty

8   depositions scheduled.

9           THE COURT: Mutually scheduled?

10           MR. DAWSON: Mutually scheduled and noticed on

11   the dates that were scheduled.

12           I will tell you that -- not to presume the

13   Court's ruling, but anticipating that the Court might

14   grant the 30-day extension that has been requested, some

15   of those are scheduled in February. Because you had

16   said before we should take the indicted officers at the

17   end of the fact discovery period. So anticipating that,

18   some of those are scheduled in February. The total that

19   they currently asked for is thirty-two, and, you know,

20   as I said earlier, I don't agree with that number. So

21   that's kind of the universe of where we are at this

22   point.

23           THE COURT: Understood. Thank you, sir.

24           MR. DAWSON: May I be excused?

25           THE COURT: Yes, sir.

1     MR. DAWSON:  Thank you.

2         Next?

3         MR. ODOM:  Nothing additional for me, Judge.

4         MS. DEMPSEY:  Judge, may I approach?

5         THE COURT:  You may.

6         MS. DEMPSEY:  Kelly Dempsey for Officer Salazar.

7         On behalf of the individual officers, a few

8  things.  What we did was we made our individual clients,

9  the officers, available for a two-week period between

10 February the 5th and the 16th, which we promise we would

11 carve out that time barring if we're assigned to trial

12 or something like that.  We checked with our clients to

13 make sure they could be available.  And so we offered

14 those two weeks to figure out when we could take the

15 depositions during those two weeks.  So we have offered

16 them for their depositions.

17        What I had asked from plaintiff's counsel was an

18 agreement that we had in other depositions, where if

19 something comes up, we can reschedule it within the same

20 time period.  For example, if my client is sick that day

21 and I get notice, or something comes up, I'll need to

22 reschedule it in that two-week time period.  Will you

23 work with us?  And before, that had been the agreement.

24 But I guess it's not now.  That was one of the questions

25 that I had asked for.

1    I also read the Court's record on August 18th,

2   and it said that we would like them to go last because

3   Judge Bennett said on page 37 they're going to go last.

4   So that's something that the Court had instructed us.

5    We also are unopposed for their motion for

6   extension of time.  So we are working with them.  Like

7   Mr. Dawson said, we would request that all the deadlines

8   be extended.

9    Finally, we said our criminal defendants who are

10   going to plead the Fifth or may plead the Fifth may want

11   and need their criminal defense counsel present which,

12   as the Court knows too, are here.  So we said we need to

13   work with them during the two-week period also.

14    Finally, we did, as Mr. Dawson and I offered, I

15   said we can agree to fifteen because Judge Bennett said

16   on page 30 that between twenty and thirty depositions

17   would take place, and they flat-out rejected that.  And

18   that's when I think Mr. Dawson and I both said, Well,

19   how many do you need?  And we can't get an answer on

20   that.  So our clients need a number of the depositions

21   that the Court is going to allow.  And whatever

22   information the Court wants, we're happy to provide to

23   the Court to make that decision.

24    That takes care of the plaintiffs' request for

25   the extension of all deadlines, the number of

1  depositions issues, and the fact that we have made
2  everybody available in the last month of discovery
3  depending on if the Court grants an extension.

4        The final thing is with Officer Lovings.  That
5  was my fault.  I got the e-mail this morning before
6  coming to Court that Mr. Doyle said I will rely on your
7  assertions.  I received information yesterday afternoon
8  that Lovings could not talk, so I conveyed that when I
9  sent my last e-mail yesterday afternoon before this
10 hearing to them.  Since I was relying on someone else
11 who told me that, I wanted to confirm.  I had just
12 confirmed this morning that we believe he can talk some,
13 so I want to withdraw that.  I apologize for the error.
14 I relied on someone who I should not have relied on, on
15 that information.  So I apologize for that.

16        But that's all I have, your Honor.

17        THE COURT:  Much of what you said I agree with.

18        MS. DEMPSEY:  Thank you, your Honor.

19        THE COURT:  To start out.

20        MS. DEMPSEY:  I'm going to wear this yellow suit
21 every time I'm here now.  Okay.

22        THE COURT:  Whatever works.

23        MS. DEMPSEY:  That's what I say.  Whatever
24 works.

25        THE COURT:  In regards to scheduling

1  depositions -- and I always take the position until I am

2  shown otherwise, that I'm dealing with learned counsel,

3  I'm dealing with counsel that I can take at their word.

4  If you schedule a deposition and you call up and say, I

5  got pulled into a trial, I cannot be present for a

6  deposition, my client has COVID, we cannot appear for

7  the deposition, I understand that and that's reasonable.

8  And that's assuming I'm dealing with learned counsel and

9  counsel that I can take at their word. So to the extent

10 that your schedule is subject to those types of

11 communications, I respect that and I have no problem

12 with that.

13         I appreciate the clarification regarding

14 Officer Lovings.

15         MS. DEMPSEY: Yes, sir.

16         THE COURT: So I assume that you'll have another

17 conversation with plaintiffs' counsel about the

18 potential of that particular deposition going forward

19 and what that looks like with your new information.

20         I think those are the two that I need to hear

21 from. I'll defer ruling on this extension until I've

22 given each lawyer an opportunity to come up and tell me

23 their nonopposition to that. And once I've heard that,

24 I anticipate granting that.

25         So thank you, counsel.

1          MS. DEMPSEY:  Thank you, your Honor.

2          MR. LEWIS:  May I approach, your Honor?

3          THE COURT:  Yes, sir.

4          MR. LEWIS:  Armstead Lewis here on behalf of

5    Mr. Gallegos.

6          And I don't have much to add other than we have

7    scheduled the deposition of Mr. Gallegos for the end of

8    November.  We're prepared to move forward with that.

9    He's prepared to move forward.  And that's all I have.

10          THE COURT:  Any opposition to the request for

11   extension?

12          MR. LEWIS:  No, your Honor.

13          THE COURT:  Very well.

14          Oh, and, counsel, one other point.  You

15   mentioned -- I know there was something else.  I just

16   couldn't think.

17          The availability of criminal defense lawyers for

18   their deposition, that's a reasonable request for those

19   defendants that are under Indictment and are requesting

20   that their criminal defense lawyers be present.  It's

21   not a requirement, it's a request.  And to the extent

22   that those defendants are seeking the presence of their

23   criminal defense lawyers, please convey that to the

24   extent that you and whomever reach agreement with the

25   plaintiffs' attorneys about the deposition date, that

1  that's an important date.

2      And my expectation is that if the criminal

3  defense attorney wishes to participate, he or she needs

4  to make that a priority on their schedule such that they

5  are, in fact, available.  Because if we turn this into

6  this cannot go forward until multiple lawyers' schedules

7  align, it may be undue delay.  So I understand again

8  where lawyers have important things that they need to

9  tend to.  This is one of those things.  And so I

10  acknowledge that that's an important consideration for

11  some of the defendants sitting for deposition, but

12  please convey to those defendants and their criminal

13  defense attorneys that if those criminal defense

14  attorneys are going to participate in the deposition at

15  the request of their client, that they need to make

16  their appearance at that deposition a priority.

17      Now, having said that, I do acknowledge there

18  may be the odd situation where another judge in another

19  building or even this building calls a criminal defense

20  lawyer in and, therefore, makes him or her unavailable.

21  I hope that that does not occur.  But in the event that

22  it does, have conversation among learned counsel.  I

23  would prefer -- again, I think I've been very clear

24  about this -- the respect for defendants' Fifth

25  Amendment rights, obviously the protection afforded by

1  having advice and council from criminal defense counsel.

2  It's my preference that those defendants who are seeking

3  the presence of their criminal defense attorneys have

4  them present.  But we're not going to reschedule just

5  because of unmeshing schedules ad nauseam, but there are

6  certain situations, certain instances, as you well know,

7  you get called into something unexpected.  And so among

8  learned counsel, I assume you can work that out and I

9  expect as much.

10        So thank you for that, that final point.  I just

11  forget to mention.

12        MS. DEMPSEY:  And, your Honor, in a quick

13  response.

14        Amongst us at the City legal department, we have

15  not upheld or withheld any depositions because one

16  lawyer or two may not attend.  We moved forward with

17  those depositions without even those counsel who's had

18  conflicts.  So we have an agreement on the record that

19  just because some of these attorneys are not here, we're

20  accommodating the Court's scheduling order by doing

21  that.  I can't speak for the criminal defense counsel,

22  but I can speak for our office in the way we're handling

23  it.  So we are doing just what the Court has asked.

24        THE COURT:  Thank you, counsel.

25        MS. DEMPSEY:  Thank you.

1          THE COURT:  Next lawyer.

2          MR. NACHTIGALL:  On behalf of Steven Bryant, no

3   objection to the extension and nothing else beyond that

4   at this time.

5          THE COURT:  Thank you, sir.

6          MS. AZADEH:  Your Honor, on behalf of Pardo,

7   Lovings, and Sepolio, we have no opposition to the

8   extension.

9          THE COURT:  And your name, for the record.

10          MS. AZADEH:  Melissa Azadeh.

11          THE COURT:  Thank you.

12          MR. GARCIA:  Alexander Garcia for Thomas Wood

13   and Mr. Reyna.  No objection to the extension, your

14   Honor.

15          THE COURT:  Anything else?

16          MR. GARCIA:  No, your Honor.

17          THE COURT:  Thank you, sir.

18          MS. TAYLOR:  Michelle Taylor on behalf of

19   Mr. Ashraf.  And again, no objection.  We agree with

20   Ms. Dempsey.

21          THE COURT:  Very well.  Thank you, counsel.

22          So in regards to the -- oh, my apologies.

23   Ms. Martin.

24          MS. MARTIN:  May I approach?

25          THE COURT:  With a binder as well.  Come on up.

1    MS. MARTIN:  On behalf of Gonzales and Medina,

2    do not oppose the, you know, 30-day extension of all the

3    deadlines.

4         The only thing I wanted to mention to the Court

5    is at the last hearing, the Court did strongly encourage

6    counsel for the plaintiffs to avoid the overtime issues.

7    And that would seriously allay some of the Fifth

8    Amendment concerns that these witnesses will surely face

9    with the current DA.

10        THE COURT:  I think I also stated I'm not

11   presiding over an overtime case.

12        MS. MARTIN:  Yes, you have.  Many times.

13        And so in the communications that have been

14   going back and forth about negotiating these depositions

15   and getting them scheduled, there have been several

16   different requests for, Hey, are y'all going to

17   stipulate that you're not going to ask anything beyond

18   the officer-involved shooting so that we can really

19   evaluate the Fifth Amendment concerns here?  The last

20   e-mail was Mr. Dawson's e-mail yesterday, and there was

21   no response to that.  So we are still facing some

22   uncertainty here, and it would be helpful if that strong

23   suggestion from the Court would be converted into a more

24   direct order, perhaps.

25        THE COURT:  If I understand, what you are

1   requesting is you want me to have a formal order in

2   place that, in regards to the depositions taking place

3   in this case, that plaintiffs' counsel not be permitted

4   to inquire into any potential overtime issues in regards

5   to their employment; correct?

6          MS. MARTIN:  Yes, Judge.

7          THE COURT:  The only caveat to that, and I don't

8   know because I'm not in the weeds on this, do any of the

9   overtime issues, i.e., the officers involved in the

10  raid, were they working overtime at that particular

11  time?  Is that an issue, do you know?

12         MS. MARTIN:  I do not know the answer to that

13  question.  What I do know is the Indictments include

14  allegations --

15         THE COURT:  What indictments?

16         MS. MARTIN:  The overtime indictments from the

17  DA's office do include up to the date of the raid as a

18  potential area of criminal inquiry.

19         THE COURT:  To the extent that an officer was

20  involved in the raid and his or her actions in regards

21  to that raid, their status being on normal time or

22  overtime, that would be just, you know, "Were you

23  working your normal, 40-hour a week?", for instance, or,

24  "Were you on overtime when you appeared for the raid?",

25  I think that's proper, just their status.

1    In regards to the -- and I don't know because
2  I've not read the criminal Indictment from the DA
3  regarding the overtime cases, but as to any other
4  overtime issues, again I'm not presiding over any
5  overtime matters in this case, but if an officer was
6  there on the day of the raid, I think it's fair game to
7  ask him or her, you know, "Was this your normal shift?",
8  "Was this an overtime shift?", things along that line,
9  simply their status while they were there.  Understood?
10    MS. MARTIN:  Understood.  Thank you for the
11  clarification.
12    THE COURT:  Okay.  Oh, wait a minute, was that
13  it?  With the binder and all, nothing else?
14    MS. MARTIN:  I mean, I could go on.
15    THE COURT:  Thank you, counselor.
16    All right.  Let's deal with what we've agreed
17  to.
18    In regards to the requested extension, counsel,
19  I believe the request was for 30 days.  And the counsel
20  for the defense stood up and said they want -- if I
21  remember correctly, I took some time in coming up with
22  this schedule, they want the other days extended by
23  30 days.  So with that caveat I'll grant your request,
24  but all the other days are going to be extended by
25  30 days because I had picked those dates with precision

1　in regards to the other dates.  Understood?

2　　　　　MR. SMITH:  Fair enough, your Honor.

3　　　　　THE COURT:  So, Ms. Edwards, in regards to those

4　dates, we'll perhaps need to have an amended scheduling

5　order prepared in that regard and I'll get that

6　executed.

7　　　　　THE CLERK:  Yes, sir.

8　　　　　THE COURT:  Now, counsel, in regards to anything

9　that you heard, more importantly turning our attention

10　to the number of depositions, again I'm not in the weeds

11　on your case although you've repeatedly attempted to

12　bring me there.  And it's fine.  So sitting here, saying

13　a proper number of depositions is fifteen versus

14　eighteen or twenty, I'm going to be picking a random

15　number.  I do know that, at a minimum, that you have I

16　think I was told 11 defendants.  I would assume that

17　there are some other fact witnesses and eyewitnesses who

18　are not defendants.  And then after that, I assume

19　you're moving into other areas of inquiry.

20　　　　　So I'll give you an opportunity first to speak

21　to the number of depositions.  Because again, it was not

22　anticipated when I came up with the schedule to push

23　this along, as you have repeatedly requested, that this

24　would be taking depositions to your heart's content,

25　uncovering or overturning every rock along the way.  I

1  just don't think you would have time to do that and push

2  it to a setting that you're seeking.

3         So speaking to what is a reasonable number of

4  depositions and anything else you heard counsel mention

5  that you'd like to respond to.

6         MR. DOYLE:  I guess my concern with just picking

7  a number, as the Court pointed out, is just picking a

8  number.  We've done -- plaintiffs -- three depositions

9  in two months.  We spent more time conferring, I think

10  pretty safely, than in those depositions.

11         THE COURT:  Well, I'm under the impression that

12  there are twenty depositions on the books right

13  scheduled.

14         MR. DOYLE:  That's including the ones they've --

15         THE COURT:  Is that correct?

16         MR. DOYLE:  That's including the ones they've

17  noticed.  So for example, that includes my client; like

18  I said, my 85-year-old client.  And the widow of John

19  Nicholas who died during it.  It includes Lieutenant

20  Ranger Wolf who they wanted to do.  And I'm not sure who

21  the other one, I think there's at least --

22         MR. SMITH:  Two more.

23         MR. DOYLE:  -- two more.

24         THE COURT:  So five of the twenty have been

25  requested by them.  So that leaves you with the fifteen

1  that we're at now that are on the books scheduled;

2  correct?

3        MR. DOYLE:  I believe that's correct.

4        THE COURT:  Of the fifteen that you have not

5  scheduled, of those that you have not scheduled included

6  in the fifteen, that takes the number up to thirty-two

7  or whatever they were suggesting?

8        MR. DOYLE:  No, that wouldn't be accurate.

9        THE COURT:  Okay.  Let's get the clarification.

10        MR. DOYLE:  We put the count in there as

11  twenty-four is what we're looking for.

12        THE COURT:  You're looking for twenty-four.

13        MR. DOYLE:  Correct.

14        THE COURT:  And of the twenty-four, how many are

15  on the books scheduled right now?

16        MR. DOYLE:  Fifteen, I believe.

17        THE COURT:  Fifteen.

18        MR. DOYLE:  But here's where I would at least

19  suggest the Court might want to look and where we tried

20  to go as opposed to, Give me a number.

21        Here's a person, Chief Acevedo.  Hip deep in

22  this.  He is the chief.  We absolutely need to get some

23  testimony from the middle of the case as opposed to,

24  Okay, what's the problem with this one?  No, you need to

25  limit it to ten or fifteen whatever it is on that

1  particular day.  I don't believe that's the appropriate

2  way to go about it because we are trying to do it but we

3  can't do a case without doing the line of command.  So

4  if the conversation is, Well, just pick a number, any

5  number.

6          THE COURT:  No, that's definitely not the

7  conversation.

8          MR. DOYLE:  Well, that's where it's been.  So

9  from a practical standpoint, I can advise the Court who

10  we requested in writing, who they said, Well, until you

11  tell us ten or fifteen, we can't do it.

12          You're there.  I get it.

13          THE COURT:  You requested twenty-four.  You

14  scheduled fifteen.  My political science and math tell

15  me that leaves nine.

16          MR. DOYLE:  I think that's about right.

17          THE COURT:  So of nine that you do not have

18  scheduled that you requested, you mentioned the chief as

19  one.  Who are the other eight?

20          MR. DOYLE:  Assistant Chief Slinkard -- and this

21  is basically the line of command.

22          THE COURT:  This is an assistant chief.

23          MR. DOYLE:  Correct.

24          THE COURT:  Who else?

25          MR. DOYLE:  And Jones is another assistant

1  chief.

2          THE COURT:  Assistant Chief --

3          MR. DOYLE:  Jones.

4          THE COURT:  -- Jones.  Okay.  That's three.

5          MR. DOYLE:  Lieutenant Lopez who is the

6  lieutenant for this unit.

7          THE COURT:  What unit?

8          MR. DOYLE:  I'm sorry, I said that wrong.

9  Assistant chief.  He's in the line of command.

10          THE COURT:  Assistant Chief Lopez.  That gets us

11  to four.

12          MR. DOYLE:  The assistant chiefs and their

13  line of command and the lieutenant who we have.

14          The medical examiner.

15          THE COURT:  The medical examiner.  That's five.

16          MR. DOYLE:  There's a City corporate

17  representative.

18          THE COURT:  A City --

19          MR. DOYLE:  A corporate rep.  Rather than doing

20  the bunch, we think some of the documentation,

21  e-mail-type stuff can be sorted out.

22          THE COURT:  By "corporate rep," you mean for the

23  City?

24          MR. DOYLE:  Correct.

25          THE COURT:  So that takes us to six.

1    MR. DOYLE:  Hodgie Armstrong.

2    THE COURT:  Who is Mr. Armstrong?

3    MR. DOYLE:  That was a long-time partner of

4  Gerald Goines.  Was not his partner at the time, but

5  served with him as his partner for many years.

6    THE COURT:  Partner for Goines.  All right.

7  That's seven.

8    MR. DOYLE:  And then we've indicated potentially

9  experts -- actually, experts designated by the City, we

10  may be able to avoid those.

11    THE COURT:  Okay.  So that's two more.

12    MR. DOYLE:  Actually, I think that's our number.

13  Anybody else?  I think that's it.

14    Let me double-check with Mr. -- we tried to make

15  sure we had one line of communication.  He had the last

16  line of communication that listed everybody.

17    THE COURT:  Very well.

18    MR. DOYLE:  That's it.

19    THE COURT:  All right.

20    MR. SMITH:  Yeah, I think we need to add one to

21  the number because now Lovings is back on.

22    MR. DOYLE:  Well, yeah, I guess now that's

23  changed because apparently he may be able to do a

24  deposition.

25    THE COURT:  Well, that's a defendant.  That's

1   low-hanging.

2          MR. DOYLE:  That may affect the number, and

3   that's what I'm saying.

4          THE COURT:  Understood.

5          MR. DOYLE:  That's it.

6          THE COURT:  All right.  So of the list that

7   you've just provided, that's ten with Lovings that

8   you've not scheduled.  So when we talk about additional

9   depositions, this is universe we're talking about.  Is

10  that correct?

11         MR. DOYLE:  Yes.  And that's all we've asked

12  for.

13         Now, I can't say I'll never come back --

14         THE COURT:  No, that's not --

15         MR. DOYLE:  -- and say, Guess what, at some

16  deposition, somebody's name came up.

17         THE COURT:  -- the conversation.

18         MR. DOYLE:  Understood.  That's where we've been

19  at for two months, basically.

20         The first list was eighteen.

21         THE COURT:  All right.  For the chief, Acevedo,

22  is he still in his official capacity as a defendant?

23         MR. DOYLE:  No.

24         MR. DAWSON:  No, your Honor.

25         THE COURT:  So he's a nonparty at this point?

1    MR. DAWSON:  Correct.

2    MR. DOYLE:  That is correct.

3    THE COURT:  All right.  And then Assistant Chief

4  Slinker?

5    MR. SMITH:  Slinkard, S-l-i-n-k-a-r-d, I

6  believe.

7    THE COURT:  Slinkard.  And what is his role in

8  all of this?

9    MR. SMITH:  It's my understanding, your Honor,

10  we learned some of this just this week at a deposition

11  of Ms. Todd, I believe the chain of command for

12  Officer Goines and his compatriots in Squad 15 went up

13  from their sergeants to Lieutenant Gonzales and then to

14  Commander Follis.

15    THE COURT:  Are there any specific facts or

16  evidence that you have right now other than him being in

17  the chain of command that he had knowledge of the

18  Harding Street raid?

19    MR. SMITH:  Yes, your Honor.  Specifically, on

20  the Monell side of our case against the City, we have to

21  show at the policy-making level what their knowledge was

22  and what their wrongdoing was, what they ignored and

23  what they did.

24    THE COURT:  Chief Acevedo cannot provide that?

25    MR. SMITH:  He may or may not, Judge.  We're

given to understand now that they don't know where he

is.

THE COURT: Let me go back -- well, he's on

Facebook, LinkedIn, and everywhere else from what I've

seen so he's not hard to find.

Go back to my particular question in regards to

the Harding Street raid, are you aware of any specific

fact, not eyewitness fact but fact that Assistant Chief

Slinkard would be aware of?

MR. SMITH: Not that I can represent to you

here.

THE COURT: That's fine. I'm just trying to get

the picture.

Assistant Chief Jones, same thing? What's his

value?

MR. SMITH: I believe I know that both Jones and

Slinkard were heavily involved in the investigation and

perhaps the audit, but I can't represent that as a fact

to the Court. But, yes, he's the same as Slinkard.

THE COURT: Okay. And the assistant chief or

Lieutenant Lopez.

MR. SMITH: Chief Lopez is different. We

learned about him a little bit this week for the first

time as well, and we received some documents from the

Harris County District Attorney's Office indicating that

1   he was interviewed about the narcotics division's

2   practice or lack thereof.

3          THE COURT: Interviewed by whom?

4          MR. SMITH: The district attorney.

5          THE COURT: Okay.

6          MR. SMITH: The question was to Chief Lopez, Why

7   did you all stop internally investigating yourselves?

8   It used to be done ten years ago, or at least this is

9   what I'm gathering from the document, and it was

10   stopped.

11          THE COURT: So this is internal procedures as

12   opposed to factual knowledge of the Harding Street raid?

13          MR. SMITH: Yes. This goes to our Monell claim,

14   Judge.

15          THE COURT: Okay. Understand.

16          The City corporate rep, what particular areas do

17   you anticipate covering there?

18          MR. SMITH: As I have explained to counsel in an

19   e-mail, we haven't determined those topics yet. It may

20   be that we don't need one, but Mr. Doyle mentioned one

21   that is conceivable which is to talk about custodians.

22   In other words, who is it at the City that's going to be

23   the custodian of electronic communications about Gerald

24   Goines' prior misconduct which we now know goes back at

25   least to 2008.

1          THE COURT:  Understood.

2          And Mr. Armstrong, that was the partner of

3  Officer Goines before the raid?

4          MR. SMITH:  Yes, your Honor.

5          THE COURT:  All right.  And then obviously, I

6  know who Mr. Lovings.

7          Thank you, sir.

8          MR. SMITH:  Yes, sir.

9          MR. DAWSON:  So to clarify the number, they have

10  noticed twenty depositions.  That does not include what

11  we had noticed.  There's the eleven individual

12  defendants.  Then there are French, Nguyen, Follis,

13  Officer Jean-Louis, Mr. Cantu, and Ranger Wolf.  So

14  that's seventeen and they've already taken three, so

15  that gets you to twenty.

16          THE COURT:  So they've taken three and they

17  have --

18          MR. DAWSON:  Noticed seventeen others.

19          THE COURT:  Three taken, seventeen noticed.

20          Are any of the seventeen that are noticed

21  cross-notices?

22          MR. DAWSON:  Ranger Wolf.

23          THE COURT:  Okay.  So of the seventeen, sixteen

24  their own doing, but you have a cross-notice for one;

25  correct?

1    MR. DAWSON:  I noticed it and then they also
2  noticed it.

3    THE COURT:  Understood.  Okay.

4    MR. DAWSON:  And so a couple of comments.

5    One is, on these other assistant chiefs, one, I
6  don't know them to have any knowledge about the Harding
7  Street incident.

8    THE COURT:  I think I just asked that.

9    MR. DAWSON:  And two, it seems to me that to the
10 extent that they want to have any Monell questions, that
11 could be included in their corporate rep notice, if they
12 wanted to do it that way.  And --

13    THE COURT:  Tell you what, I'm ready to rule.
14 I've heard enough.

15    So let me tell you that by way of the
16 plaintiffs' requested depositions, first let's start at
17 the top.

18    Chief Acevedo.

19    MR. DAWSON:  I told them yesterday, he's
20 somewhere in Aurora, Colorado.  That's all I know.

21    THE COURT:  I believe that's an appropriate
22 deposition.

23    Next, moving to the medical examiner.  I think
24 that to the extent that the medical examiner has
25 produced a report that day, that tells the injuries and

1 | cause of death, that's appropriate.

2 | And as you have pointed out, the city's

3 | corporate representative and Mr. Lovings, by my count

4 | that's four additional depositions. And that's it for

5 | right now.

6 | And to the extent that you need to come back and

7 | request additional depositions, you can point out

8 | specific areas of inquiry that you were not able to

9 | cover with Officer -- I'm sorry, Chief Acevedo or the

10 | City's corporate representative. So that takes care of

11 | that. So by way of what has been noticed, by my count

12 | you're at nineteen. I've suggested four additional ones

13 | by name or title, and that takes you to a total of

14 | twenty-three depositions including -- not including your

15 | cross-notice. So if it turns out you need more, come

16 | back with a pleading that lays out who and the specific

17 | areas of testimony, and that will give the City and the

18 | defendants the opportunity to respond in writing, and

19 | I'll take it up at that time.

20 | So you have four additional ones from when you

21 | walked in the door this morning.

22 | Anything else?

23 | MR. DOYLE: One fact that might, at least for

24 | the Court to consider, this is a pattern of practice.

25 | Assistant Chief Lopez was not just -- there was

1  a reason he did this audit report that they don't have a

2  full copy of, so he looked into the pattern of practice,

3  audit, all that stuff.

4  THE COURT:  Let me stop you right there because

5  I picked Chief Acevedo because I would assume the person

6  sitting atop the pyramid would have answers to all those

7  questions.  So are you suggesting that, as opposed to

8  the chief, you would rather take someone a little bit

9  further down the chain of command who might have more

10 knowledge?  I'm happy to substitute someone else for the

11 chief.

12 MR. DOYLE:  Shot or stabbed, I'll go with

13 Chief Acevedo.

14 THE COURT:  And then again, and this is not the

15 be-all-to-end-all.

16 MR. DOYLE:  I understand.

17 THE COURT:  If it turns out that the chief sits

18 for deposition and he demonstrates through, "I don't

19 know," "I don't recall," things of that nature, and you

20 believe -- or he identifies in his deposition someone

21 with more knowledge of the areas you're inquiring about,

22 come back and tell me and we'll deal with it at that

23 time.

24 MR. DOYLE:  I think we can get him done soon.

25 Thank you, Judge.

1    MR. SMITH:  Your Honor, if the Court would

2  permit, I can respond to Mr. Dawson's comments on the

3  production of the audit, or does the Court not need

4  further information on those issues?

5    THE COURT:  I'm going to take Mr. Dawson at his

6  word that I believe counsel can work that out.

7    MR. SMITH:  All right.

8    THE COURT:  So if you're unable to do that, let

9  me know.  But I think Mr. Dawson has heard from my

10 inquiry, I do find it peculiar that the City would not

11 have an unredacted copy of this considering the subject

12 matter is so important.  And so Mr. Dawson has said that

13 he's going to go back and triple check his source to

14 confirm that to be the case, and then I assume he'll

15 have a conversation with you.

16    I'm sure that Mr. Dawson is going to convey to

17 whomever he's speaking at the City that there is a very

18 incredulous judge awaiting his response to that

19 particular question.  So I'll let Mr. Dawson do his

20 magic, and I'll deal with it after that.

21    MR. SMITH:  Thank you, your Honor.

22    THE COURT:  Anything else from the plaintiffs

23 that we need to take care of today?

24    MR. DOYLE:  We have another one that we think

25 we're hopefully going to be close to resolution, so I'd

1  rather not take the Court's time up with it.

2          THE COURT:  Very well.

3          Sir.

4          MR. SMITH:  Nothing further.

5          THE COURT:  Mr. Dawson.

6          MR. DAWSON:  Two quick points, your Honor.

7          First, I just want to let the Court know that

8  Chief Acevedo is not under our control.

9          THE COURT:  I understand that.

10          MR. DAWSON:  I have his e-mail address and I

11  intend to communicate to him that you have ordered him

12  to be deposed.  Hopefully, he'll be responsive to that.

13  I just want to let you know that.

14          THE COURT:  Hold on.  Let me wordsmith this.

15          I have ordered that the plaintiffs can take his

16  deposition.  I have not ordered Chief Acevedo to sit for

17  a deposition.  There are rules in place that allow you

18  to go out and take witnesses from out of state, how that

19  is done.  It is up to the plaintiffs to follow those

20  rules.  I have said that he is in the number.  He's one

21  of the people that they can take.

22          MR. DAWSON:  I will communicate accordingly.

23          THE COURT:  I don't want you to tell the chief

24  that I ordered him to show up to Houston, Texas, to do

25  something or anything like that.  That's up to the

1  plaintiffs to their work and get service of process over

2  him for him to appear wherever that may be.

3          MR. DAWSON:  And I will follow up with the City

4  on the unredacted document.  I may not use the exact

5  wording that you used, but I will follow up and convey

6  the Court's consternation on this issue.

7          THE COURT:  Fair enough.

8          MR. DAWSON:  And then finally, we -- and I don't

9  want to take up the Court's time with it, we've got some

10 issues with some of their discovery responses.  I'm

11 going to send a letter out probably Monday.  We hope to

12 get those worked out.  But in the event we don't, you

13 may get one of our letters on that, and I just don't

14 want you to be surprised if that comes up.  I hope it

15 doesn't, by I just wanted to put that out there as a

16 possibility.

17         THE COURT:  Again, I reiterate time and time and

18 time and time again, the quality of counsel sitting

19 around this room, the number of times that I have

20 conducted hearings, that I have given you rulings and

21 opinions about how we're going to move this case forward

22 I think should guide learned counsel's discussion about

23 how things should be done.

24         And I understand that there comes a point in

25 time, like today with the number of depositions, that

1  you need my input, and I'm happy to provide that and

2  make time for that.  But my expectation is that

3  85 percent of your discovery issues learned counsel

4  should be able to work out.

5          So with that being said, anything else from the

6  defense table?

7          Seeing none, thank you again for your attention.

8          Enjoy your weekend.  We're adjourned.  You're

9  excused.

10      (Proceedings adjourned at 11:28 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           C E R T I F I C A T E

2

3           I hereby certify that pursuant to Title 28,

4    Section 753 United States Code, the foregoing is a true

5    and correct transcript of the stenographically reported

6    proceedings in the above matter.

7

8

9                    Dated this 7th day of November, 2023.

10                   /s/Cheryl L. Cummings

11                   Cheryl L. Cummings, RDR-CRR-RMR-CRC
                     Federal Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25