UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLIFFORD F. TUTTLE, JR., AS REPRESENTATIVE OF THE ESTATE OF DENNIS W. TUTTLE, DECEASED, ROBERT TUTTLE, AND RYAN TUTTLE,<br><br>*Plaintiffs*,<br><br>vs.<br><br>CITY OF HOUSTON, *et al.*<br><br>*Defendants*. | § § § § § § § § § § § § § § |  CIVIL ACTION NO. 4:21-cv-00270 |

CONSOLIDATED WITH

| | |
|---|---|
| JOHN NICHOLAS, as temporary administrator of the Estate of Rhogena Nicholas and JO ANN NICHOLAS, individually and as an heir of the Estate of Rhogena Nicholas,<br><br>*Plaintiffs*,<br><br>vs.<br><br>CITY OF HOUSTON, *et al.*<br><br>*Defendants*. | § § § § § § § § § § § § § § § § |

**DEFENDANT STEVEN BRYANT'S MOTION FOR SUMMARY JUDGMENT (NICHOLAS PLAINTIFFS)[1]**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALFRED H. BENNETT:

Defendant Steven Bryant ("Bryant") files *Defendant Steven Bryant's Motion for Summary Judgment (Nicholas Plaintiffs)*, and in support would respectfully show the Court as follows:

---

[1] Bryant concurrently files a mostly identical motion for summary judgment in response to the claims made by the Tuttle Plaintiffs. Because the complaints made by each set of plaintiffs vary slightly, two motions are filed for the purposes of clarity.

1

**SUMMARY OF THE MOTION**

Steven Bryant pleaded guilty to the only criminal charge made against him arising from the January 28, 2019 execution of a search warrant on 7815 Harding Street: he made a false entry in a supplemental police report concerning the incident *after* the raid took place. Mr. Bryant's conduct cost him his employment as a police officer, and may very well cost him his freedom when he is sentenced in federal court. As explained below, however, Mr. Bryant did not violate the constitutional rights of the decedents, nor did he proximately cause their deaths. Mr. Bryant's wrongful conduct in relation to the Harding Street raid occurred *after* the deaths of Dennis Tuttle and Rhogena Nicholas, and summary judgment is appropriate because there is an absence of evidence to the contrary.

### I.   BACKGROUND

1. Plaintiffs Jo Ann Nicholas and John Nicholas ("Plaintiffs", "Nicholas Plaintiffs") have brought this action individually and as representatives of the Estate of Rhogena Nicholas, against the City of Houston ("City"), Bryant, and twelve other individual current or former Houston Police Department officers ("HPD Defendants"), for alleged federal civil rights violations and for Texas state causes of action arising out of the execution of a search warrant on January 28, 2019, at 7815 Harding Street, Houston Texas.

2. Although now a private citizen, Bryant was, at all material times relevant to the lawsuit, an HPD officer employed by the City, and was acting under the color of law.

**Nicholas Plaintiffs' Causes of Action**

3. The Nicholas Plaintiffs bring four causes of action against Mr. Bryant: two federal claims under 42 U.S.C. §1983 and two Texas state law claims.

4.      The Nicholas Plaintiffs, in their first federal cause of action under 42 U.S.C. § 1983, allege that all of the HPD Defendants (including Bryant) used excessive and deadly force during the execution of a search warrant at 7815 Harding Street.  Plaintiffs also allege that all HPD Defendants (including Bryant) are liable for failing to intervene to stop Squad 15 from violating the decedent's rights. Plaintiffs allege that Rhogena Nicholas suffered general and special damages as a "direct and proximate result of the violation of the constitutional rights by the Defendants." [*See* Dkt. 49, *Nicholas Plaintiffs' First Amended Original Complaint*, ¶¶ 146-152]

5.      The Nicholas Plaintiffs' second federal cause of action alleges that all the HPD Defendants (including Bryant), "illegally and unreasonably obtained a search warrant for 7815 Harding Street with the absence of probable cause or reasonable suspicion in violation of the Fourth Amendment of the United States Constitution."  The Nicholas Plaintiffs further allege in support of their second cause of action that all HPD Defendants (including Bryant), are liable for failing to intervene to stop Squad 15 from executing the search warrant. [*See* Dkt. 49 ¶¶ 154-159].

6.      Specifically, with regard to Bryant, the Nicholas Plaintiffs allege that sometime *after* the execution of the warrant, Bryant lied to HPD investigators and lied in his supplemental report concerning a drug "buy" that supposedly occurred on January 27, 2019.  Because of Mr. Bryant's post-raid misconduct, Plaintiffs simply assert that he "obviously" knew during the tactical plan meeting days earlier, prior to the raid, and during the raid itself that there was no probable cause for the search of the home or for "any use any force, especially excessive or deadly force." Plaintiffs plead, "[e]ven so, Bryant deliberately, callously, and recklessly executed the phony warrant, used excessive force, and proximately caused Dennis Tuttle's injuries and death." [See Dkt. 49 ¶ 89]

7.      In their third and fourth causes of action, Plaintiffs bring a Texas wrongful death action

3

pursuant to Tex. Civ. Prac. & Rem. Code § 71.004. [*See* Dkt. 49 ¶¶ 212-214] and a Texas survival action pursuant to Tex. Civ. Prac. & Rem. Code § 71.021 against Bryant. [*See* Dkt. 49 ¶¶ 215-217]

## II.
## PLAINTIFFS' EXPERT WITNESS'S TESTIMONY

8.  Plaintiffs retained Andrew J. Scott, III, Ph.D., as their expert witness to review the case file and offer expert testimony. Mr. Scott identifies an expert in subjects in including the search warrants, use of force, supervision, custom and practices regarding investigations of officers. *See* **Exhibit A**, excerpted portions of Dr. Scott's July 18, 2024 deposition, 12:15-13:3. *See also* **Exhibit B**, Curriculum Vitae of Dr. Andrew Scott. In the preparation of his opinions and expert report, Dr. Scott performed an exhaustive review of the case materials including 125 enumerated items of evidence or documents. [Ex. A, 17:5-7]. *See* **Exhibit C**, list of materials reviewed. On July 18, 2024, the Tuttle Plaintiffs' expert, Andrew J. Scott, III, Ph.D. was deposed.

9.  Dr. Scott testified that in his report he delineated three distinct areas of allegedly unlawful conduct that caused the alleged constitutional violations:

> 1) Officer Goines lying to obtain the warrant.
>
> 2) Officer Gallegos shooting Ms. Nicholas because she did not pose a threat.
>
> 3) Officer Gallegos firing the final shot at Mr. Tuttle because Mr. Tuttle no longer posed a threat.
>
> [Ex. A, 22:24-24:4]

10. During his deposition, Dr. Scott testified that there were no other instances of unlawful conduct that caused the alleged constitutional violations:

> Q.   Okay. So I want to make sure that I'm clear. Is there any other instance of unlawful conduct that you contend was committed by the officers on the scene that caused the alleged constitutional violations other 8 than these three that we just went over?
>
> A.   No.

[Ex. A, 24:5-10]

11. During his deposition, Dr. Scott testified to the following as it relates to Steven Bryant:

- Dr. Scott had not seen any evidence that Bryant assisted Goines in falsifying information to obtain the warrant;

- Dr. Scott had not seen any evidence that Bryant was involved in drafting the probable cause affidavit;

- Dr. Scott had not seen any evidence that Bryant was involved in presenting the warrant application to a magistrate;

- Bryant's post-raid conduct did not contribute to Defendant Goines' unconstitutional actions prior to the raid, and Bryant's post-raid conduct was not the moving force or proximate cause of the death of Mr. Tuttle or Ms. Nicholas; and

- It was the City's failure to supervise Defendant Goines and Bryant that was the moving force or proximate cause of the underlying constitutional violations and death of Mr. Tuttle and Ms. Nicholas.

12. As will be shown, Dr. Scott further testified that he had not seen any information that suggested that Bryant had fired any shots at Mr. Tuttle or Ms. Nicholas, and it was Dr. Scott's understanding that Bryant did not shoot at Mr. Tuttle or Ms. Nicholas. Moreover, there is an absence of evidence that Mr. Bryant even entered the home during the firefight between the police and Dennis Tuttle, much less fired any shots.

### III. ARGUMENTS AND AUTHORITIES

13. Under Federal Rule of Civil Procedure 56, Bryant may move for summary judgment on the grounds that there is an absence of evidence supporting the Plaintiffs' case. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v.*

*Catrett*, 106 S. Ct. 2548, 2554 (1986). The moving party does not have to cite evidence "negating the opponent's claim." *Id.* at 2553. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2514 (1986). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela,* 684 F.3d 564, 571 (5th Cir. 2012). "In reviewing summary judgment, [the] court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *Id.* (quoting *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010)). *See Aina v. Mayorkas,* No. CV H-24-1006, 2024 WL 3070185, at *1–2 (S.D. Tex. June 20, 2024).

**Nicholas Plaintiff's First Cause of Action: Excessive Deadly Force (42 U.S.C. §1983)**

14. With respect to Plaintiffs' first federal cause of action, the use excessive force, the Nicholas Plaintiffs allege that:

15. Plaintiffs' expert, Dr. Andrew Scott, testified that, at the moment Bryant breached the door to allow the officers entry to 7815 Harding, he was not aware of any information that would lead to the belief that Bryant knew that the warrant was based upon false information.

16. Dr. Scott also testified that he had not seen any information that suggested that Bryant had fired any shots at Mr. Tuttle or Ms. Nicholas, and it was his understanding that Bryant did not shoot at either of them:

> Q. Now, according to your report during the raid on 7815 Harding Street Mr. Bryant breached the door. Is that correct?
>
> A. That is correct.
>
> Q. And have you reviewed or seen any information to suggest that Mr. Bryant fired any shot at either Mr. Tuttle or Ms. Nicholas at 7815 Harding?
>
> A. It's my understanding that he did not.

[Ex. A, 201:19-23]

17. To bring a § 1983 excessive force claim under the Fourth Amendment, Plaintiffs must show that the decedent suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi,* 202 F.3d 730, 740 (5th Cir. 2000).

18. In *Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2019 WL 3322868, at *17 (W.D. Tex. July 24, 2019), the trial court granted an officer's summary judgment on an excessive force claim arising out of a warrantless entry where the decedent was shot by another officer. Citing *Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1549 (2017), the Court reasoned:

> Here, there is at most a murky link between Smith's entry and Mr. Salas-Sanchez's death (more likely, there is no link). Plaintiffs do not allege that Smith ever drew any weapon, either prior to entering the home or while in the home. *See* Pl. App. Ex. A (Factual App.), at 13–14. Instead, Plaintiffs emphasize that "two of the officers had weapons drawn" and argue that it should have been foreseeable to Smith that her entry would result in a shooting. Resp. to Smith 23. However, Smith is only legally responsible for her own actions. Thus, even if it was foreseeable that Smith's colleagues' entry into the home with their weapons drawn could result in an injury, Smith cannot be shoehorned into responsibility for the other officers' constitutional torts.

19. Finally, there is an absence of evidence that Bryant had a sufficient opportunity to intervene while the firefight was in progress. *See Tuttle v. Sepolio*, 68 F.4th 974. Of note, there would have been no reason for Mr. Bryant to believe an intervention was necessary, as the testimony from the Plaintiffs' expert is that there is an absence of evidence that Mr. Bryant knew about the falsification of the search warrant affidavit prior to the deaths of Dennis Tuttle and Rhogena Nicholas.

20. Accordingly, Bryant requests that the Court grant summary judgment on the Nicholas Plaintiffs' first cause of action.

21.     Finally, there is no evidence that Bryant had a sufficient opportunity to intervene while the firefight was in progress. *See Tuttle v. Sepolio*, 68 F.4th 974. Moreover, there would have been no basis for intervention as the evidence as the testimony from Plaintiffs' expert is that there is no evidence that Mr. Bryant knew about the falsification of the search warrant affidavit prior to the deaths of Dennis Tuttle and Rhogena Nicholas.

22.     Bryant requests that the Court grant summary judgment on Plaintiffs first federal cause of action for use of excessive force and failure to intervene.

**Nicholas Plaintiff's Second Cause of Action: Unlawful Search and Seizure (42 U.S.C. §1983)**

23.     With respect to Plaintiffs' second cause of action for wrongfully obtaining the search warrant, Dr. Scott testified that it was only Officer Goines who fabricated evidence to obtain the search warrant, which was contrary to well-established police practices and official HPD policy. [Ex. A, 72:16-23] In confirming this opinion as a law enforcement expert, Dr. Scott was in agreement with HPD's report that only blamed Defendant Goines for the fabrication. [Ex. A, 74:1-10]

24.     With respect to the warrant Defendant Goines obtained using fabricated information, Dr. Scott testified that he had not seen any evidence that Bryant assisted Goines in falsifying information to obtain the warrant:

> Q.     You do not state in your report that Steven Bryant assisted Gerald Goines in falsifying information used to obtain the search warrant. Correct?
>
> A.     That's correct.
>
> Q.     And have you seen any evidence that Mr. Bryant assisted Gerald Goines in falsifying information used to obtain the search warrant?
>
> A.     No.
>
> [Ex. A, 202:12-19]

25. Dr. Scott also testified that he had not seen any evidence that Bryant was involved in drafting the probable cause affidavit:

> Q. You do not state in your report that Mr. Bryant was involved in drafting the probable cause affidavit?
>
> A. Correct.
>
> Q. And have you seen any evidence that Mr. Bryant was involved in drafting that probable cause affidavit for the search warrant?
>
> A. No.
>
> [Ex. A, 202:20-203:2]

26. Dr. Scott also testified that he had not seen any evidence that Bryant was involved in sending the warrant application to the magistrate:

> Q. Further, you do not state in your report that Mr. Bryant was involved in presenting the search warrant application to the magistrate judge who signed it. Is that correct?
>
> A. Correct.
>
> Q. Have you seen any evidence that Mr. Bryant was involved in sending the search warrant application to the magistrate judge?
>
> A. No.
>
> [Ex. A, 203:3-11]

27. Dr. Scott's criticism of Bryant was Bryant's helping Goines with the "cover-up" *following* the raid:

> Q. Is it fair to say that what your report states or suggests is that Mr. Bryant was involved in cover-up for Gerald Goines after the shooting took place?
>
> A. Correct.
>
> Q. And so basically what -- what is alleged that Mr. Bryant did was to help Goines cover-up whatever his prior misconduct was after the shooting. Is that correct?

A.     Yes, sir.

[Ex. A, 203:12-20]

28.    Notwithstanding Bryant's post-raid conduct, it is Dr. Scott's opinion that it was the <u>City's failure to supervise</u> Goines and Bryant that was the moving force or proximate cause of the underlying constitutional violations and death of Mr. Tuttle and Ms. Nicholas:

> Q.    On page 28 of your report opinion two states in part that the failure to supervise identified above, was the moving force or proximate cause of the underlying constitutional violations by Goines and Bryant in the moving force or proximate cause of the death of Tuttle and Nicholas. Is that correct?
>
> A.    Yes.

[Ex. A, 203:21-204:2]

29.    Dr. Scott does not offer the opinion that Bryant's post-raid conduct contributed to Goines' unconstitutional actions prior to the raid – or that Bryant's post-raid conduct was the moving force or proximate cause of the death of Mr. Tuttle or Ms. Nicholas. Rather, Dr. Scott testified:

> Q.    Did you form an opinion that Mr. Bryant violated the constitutional rights of Mr. Tuttle in relation to the Harding Street raid?
>
> A.    No, I can't say that he contributed to the unconstitutional actions prior to the raid. But obviously engaged in the cover-up afterwards.
>
> Q.    But that cover-up would not be a violation of Mr. Tuttle's constitutional rights. Is that correct?
>
> A.    You're correct, sir.
>
> Q.    Similarly, did you form an opinion that Mr. Bryant violated the constitutional rights of Ms. Nicholas in relationship the Harding Street raid?
>
> A.    I don't believe I did.
>
> Q.    And is it your opinion that there was not a violation of Ms. Nicholas's constitutional rights by Mr. Bryant? (*MR. SMITH: Object to the form.*)
>
> A.    Correct.

10

> Q. So what were -- and correct me if I'm wrong here, but what were the constitutional violations by Mr. Bryant that were either a moving force or proximate cause of the death of Mr. Tuttle and Ms. Nicholas?
>
> A. Basically there were none in reference to the acquisition of the affidavit, although Officer Bryant did engage in breaking down the door which allowed the team to gain entry based on the fictitious warrant.
>
> Q. And at the time that he broke down that door to gain entry we don't have information that would lead us to believe that he knew that it was based on a falsified search warrant. Is that correct?
>
> A. Correct, we have no information in the record.
>
> [Ex. A. 204:3-205:9]

30. The evidence in this case, as reviewed and analyzed by Dr. Scott, does not show that Bryant was involved in obtaining the search warrant or the Bryant otherwise knew that the warrant was obtained fraudulently or that Bryant had an opportunity to intervene to prevent its execution. *See Tuttle v. Sepolio*, 68 F.4th 969, 974–75 (5th Cir. 2023).

31. Because there is an absence of evidence to support the Nicholas Plaintiffs' first federal cause of action, the Court is asked to grant a summary judgment on that claim.

**Nicholas Tuttle Plaintiffs' Third and Fourth Causes of Action: Texas State Law Claims**

32. With respect to Plaintiffs' Texas survival action brought pursuant to Civ. Prac. & Rem. § 71.021(a), the actionable wrong in a survival action is that which the decedent suffered before death. *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 131–32 (Tex. App.—Dallas 2020, no pet.). "The parties to a survival action seek adjudication of the decedent's own claims for the alleged injuries inflicted upon him by the defendant, and the decedent's survival claim becomes part of his estate at death." *Gantt v. Harris Cnty.*, 674 S.W.3d 553, 560 (Tex. App.—Houston [1st Dist.] 2023, no pet.) *See Austin Nursing Ctr.*, 171 S.W.3d at 850.

33. With respect to Plaintiffs' Wrongful Death Act claim brought under Tex. Civ. Prac. &

Rem. Code § 71.004, the Tuttle Plaintiffs allege that the HPD Defendants (including Bryant) wrongfully caused Mr. Tuttle's death.

34. In *Slade v. City of Marshall, Tex.*, 814 F.3d 263, 264–65 (5th Cir. 2016), the Court examined the causation requirement under the Wrongful Death Act in the context of a § 1983 action. In that case, decedent Slade was tazed by an officer. Slade was subsequently transported to the jail where he died of PCP toxicity. Slade's mother filed a wrongful death suit under § 1983 against the City of Marshall and several of the officers involved in the incident. Among other claims, Slade alleged that the officers had violated her son's constitutional rights by failing to seek medical treatment for her son until he became unresponsive at the jail. The district court granted summary judgment in favor of the defendants because the plaintiff could not establish a causal link between the officers' alleged denial of medical care and her son's death. *Id.* at 263-264.

35. In affirming the dismissal, the Court instructed:

> This Court has held that "a plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." Texas law is clear that "[u]nder the Wrongful Death Act, liability may be predicated only on 'an injury that causes an individual's death.' " That is, a plaintiff seeking to recover under Texas's wrongful death statute must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree.

36. For the reasons set out in paragraphs 15-19, above, there is an absence of evidence that Bryant caused any injury to, or the death of Ms. Nicholas. Rather, Bryant did not shoot at Ms. Nicholas and her injury and death were caused by the actions of others.

37. Bryant asks the Court to grant summary judgment on Plaintiffs' Texas survival action and wrongful death claims made against him.

## IV.
## BRYANT'S ASSERTION OF HIS FIFTH AMENDMENT PRIVILEGE

38. Bryant has pleaded guilty to one count of falsification of records in a federal investigation in violation of 18 U.S.C. Sec. 1519 for his actions *after* the deaths of Dennis Tuttle and Rhogena Nicholas in U.S. v. Gerald M. Goines, Steven O. Bryant, and Patricia Ann Garcia; Criminal No. 19-CR-832; United States District Court for the Southern District of Texas. He is currently scheduled to be sentenced by the Hon. George C. Hanks, Jr. on October 22, 2024. There are no remaining state or federal criminal charges pending against Mr. Bryant.

39. Upon the advice of criminal defense counsel, Mr. Bryant asserted his privilege under the Fifth Amendment of the United States Constitution in his answers to Plaintiffs' complaints and in response to questions about the raid asked at his deposition. The Fifth Circuit has held that a defendant maintains a right to remain silent after a guilty plea and through sentencing See *Mitchell v. U.S.*, 526 U.S. 314, 315 (1999).

40. While assertions of one's Fifth Amendment privilege at trial may lead to an instruction that allows the jury to infer culpability, it is not a substitute for affirmative evidence. With respect to summary judgment, in *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999), the Court found that the adverse inferences that may be drawn from an assertion of the Fifth Amendment privilege did not preclude summary judgment.

41. In Curtis, plaintiffs argued, among other things, that the district court erred in granting summary judgment in favor of BRC against the refinery workers employed by BRC because BRC's representative, Mr. Barrett, invoked his privilege under the Fifth Amendment, the inference under the law is that all of BRC's actions were intentional and workers' compensation benefits are therefore not the workers' exclusive remedy. The Court disagreed:

> We do not agree with this contention. In *State Farm Life Insurance*

> *Co. v. Gutterman,* 896 F.2d 116, 119 (5th Cir.1990), we held that the adverse inference from a party's refusal to answer questions was not enough to create an issue of fact to avoid summary judgment. Similarly, in the present case, Plaintiffs have presented no other evidence that BRC's actions were intentional. Without more, the adverse inference from Mr. Barrett's refusal to answer questions at his deposition will not preclude summary judgment. The district court therefore correctly granted summary judgment in favor of BRC as to Michael Craft, Troy Luster, Bob Harris, and Larry Oakes, the refinery workers employed by BRC.

42. In the instant action, for the reasons set out above, there is an absence of evidence that Bryant knew that the warrant had been fraudulently obtained, that Bryant had the opportunity to prevent the execution of the warrant, that Bryant shot at Mr. Tuttle or Ms. Nicholas, or that he had the ability to prevent their shooting during the firefight. Mr. Bryant's assertions of his Fifth Amendment privilege are not a substitute for that evidence.

## V.
## CONCLUSION AND RELIEF SOUGHT

43. There have been and will continue to be tremendous consequences for Mr. Bryant as a result of his wrongful conduct after the Harding Street raid. However, in relation to his civil liability, for the foregoing reasons, Steven Bryant is entitled to summary judgment on Plaintiffs' federal and Texas State claims. Bryant requests that his motion be granted and that an order be entered dismissing all of Plaintiffs' claims against him. Bryant prays for such further relief to which he may be entitled.

Respectfully Submitted,

DAVID A. NACHTIGALL, ATTORNEY AT LAW, PLLC

/s/ David A. Nachtigall
David A. Nachtigall
Federal Bar No. 1358606
State Bar No. 24049076
1545 Heights Blvd., Suite 100
Houston, Texas 77008
Tel 713.229.0008
Fax 713.650.1602
david@dntriallaw.com

*Attorneys for Defendant Steven Bryant*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all counsel of record on August 9, 2024 via CM/ECF, pursuant to the Federal Rules of Civil Procedure.

*/s/ David A. Nachtigall*