IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFFORD F. TUTTLE, JR., REPRESENTATIVE OF THE ESTATE OF DENNIS W. TUTTLE, DECEASED, ROBERT TUTTLE, AND RYAN TUTTLE, <br><br>    Plaintiffs <br><br> v. <br><br> CITY OF HOUSTON, *et al.*, <br><br>    Defendants. | § § § § § § § § § § § § § § | Civil Action No. 4:21-cv-00270 |

AND

| | | |
|---|---|---|
| JOHN NICHOLAS, as temporary administrator of the Estate of Rhogena Nicholas and JO ANN NICHOLAS, individually and as an heir of the Estate of Rhogena Nicholas, <br><br>    Plaintiffs <br><br> v. <br><br> CITY OF HOUSTON, *et al.*, <br><br>    Defendants. | § § § § § § § § § § § § § § § | Civil Action No. 4:21-cv-00272 |

**DEFENDANT CITY OF HOUSTON'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF ANDREW SCOTT AND MICHAEL MALONEY**

Plaintiffs have failed to overcome the challenges raised in the City of Houston's ("City") Motion to Exclude the expert opinions and testimony of Andrew Scott and Michael Maloney ("Motion"). Accordingly, the City respectfully submits that its Motion should be granted.

**A. Scott's opinion on Goines' departure from HPD standards is impermissibly cumulative.**

It is undisputed that Goines lied to obtain the search warrant. Still, Plaintiffs attempt to recast Scott's first opinion as merely giving context for "generally accepted national police

1

standards."[1]  But Scott admits that he did no independent investigation enabling him to provide additional context to HPD's findings related to Goines' lying on the search warrant affidavit.[2]

Further, all of the cases on which Plaintiffs rely involved a dispute over whether the defendant officer or municipality had departed from relevant, applicable standards.  *See Restivo v. Hesseman*, 846 F.3d 547, 579-80 (2d 2017); *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 67, 71 (1st Cir. 2016); *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th 2013); *Young v. Cnt. of Los Angeles*, 655 F.3d 1156, 1158, 1162 (9th Cir. 2011); *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 460 (8th 2010); *Smith v. Marasco*, 318 F.3d 497, 509 (3d Cir. 2003); *West v. Waymire* 114 F.3d 646, 652 (7th 1997).  Plaintiffs point to **_no_** authority supporting their position that where, as here, the relevant standards and an officer's departure therefrom are undisputed, an expert can nonetheless expertly opine that the officer's conduct was "contrary to well-established police practices and official [police department] policy."[3]  Because such testimony will obviously not aid the jury in determining a fact at issue, it should be excluded as irrelevant.  Fed. R. Evid. 702(a); *Rivera v. Robinson*, No. CV 18-14005, 2020 WL 7318082, at *3-4 (E.D. Tex. 2020) (excluding expert opinion and testimony that merely corroborated eyewitnesses' statements).

**B. Scott's opinion regarding HPD's failure to discipline is unreliable.**

Despite Plaintiffs' contention that Scott's fourth opinion "shows HPD's practice of encouraging excessive force," Plaintiffs do not dispute that Scott has failed (1) to point to a single prior incident in which he believes that an HPD officer actually used ***excessive*** force, or (2) to connect his conclusion that the City had a custom of condoning the use of excessive force with his allegation that HPD deemed most shootings between 2009 and 2014 as justified.  Given Scott's

---

[1] Dkt. 335 at 1.
[2] Dkt. 303 at 3.
[3] Dkt. 304, Scott report at 16.

2

reliance on nothing more than his own *ipse dixit* regarding the City's alleged "custom and practice" of allowing officers to use force "with little to no disapproval of the agency's management,"[4] "[Scott's] testimony that 'it is so' is not admissible.'" *Brown v. Ill. Cent. R. Co.,* 705 F.3d 531, 537 (5th Cir. 2013).[5]

### C. Maloney's skepticism regarding his own opinions necessitates exclusion.

Plaintiffs' counsel "cherry picked" the evidence that they gave to Maloney for purposes of formulating his opinions in this case.[6] In doing so, Plaintiffs' counsel failed to provide Maloney with key evidence that was relevant to his prior opinion that HPD officers had tampered with evidence after the initial shooting incident. Once confronted with that evidence, Maloney promptly recanted his evidence-tampering opinion,[7] apologized to the Individual Officers for having accused them of tampering with evidence absent "the information necessary to draw the proper conclusion,"[8] and acknowledged his newfound lack of confidence as to whether he has been provided with all relevant facts or data for formulating reliable opinions in this case.[9] Importantly, Maloney testified that before being made aware of the withheld evidence, he had held all of his opinions, including the evidence-tampering opinion, with the same degree of confidence.[10]

---

[4] *Id.* at 40.
[5] Plaintiffs' reliance on *Baker v. Castro* is misplaced. *Baker v. Castro*, No. CV H-15-3495, 2018 WL 11354973, at *1 (S.D. Tex. Sept. 18, 2018). The *Baker* court was concerned with whether the same newspaper articles that underlie Scott's opinion in this case were "inadmissible hearsay." *Baker*, 2018 WL 11354973, at *4. But the City is not making a hearsay argument. Rather, because Scott has never reviewed or analyzed the individual incidents cited in those newspaper articles to determine whether they were, in fact, unjustified uses of force, his opinion that HPD had a purported pattern of "uniform[ly]" justifying unconstitutional uses of force is unreliable.
[6] Dkt. 303-3, Maloney Dep. Vol. II at 64:12-17.
[7] Dkt. 303-2, Maloney Dep. Vol. I at 234:22-235:8.
[8] Dkt. 303-3, Maloney Dep. Vol. II at 25:25-26:12.
[9] *Id.* at 62:14-17 (**Q**: . . . [D]oes it make you wonder what other information has not been provided to you? **A**: Absolutely.)
[10] *Id.* at 54:3-7.

Maloney's skepticism as to whether he has been provided with all relevant facts and data for forming conclusions in this case wipes out the reliability of his opinions.[11] *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) ("[A]n opinion based on insufficient, erroneous information fails the reliability standard."). Maloney's failure to review all but one Individual Officer's deposition is further evidence that his opinions are based "on altered facts and speculation designed to bolster [Plaintiffs'] position," which necessitates exclusion under *Daubert*. *Id*. Like a crumbling house of cards, Maloney's opinions collapse in the absence of foundational reliability.

**D. Maloney's opinions regarding the shooting of Nicholas are neither reliable nor relevant.**

Maloney's opinion that Gallegos could not have seen Nicholas over the body of Medina when Gallegos shot her because, according to Maloney, Nicholas was on the far side of the living room and, therefore, was not visible to Gallegos from his position outside the house is an unreliable opinion.[12] Maloney admits that he cannot exclude other plausible causes for his key piece of evidence—the presence of Tuttle's and Nicholas' DNA on a bullet recovered from the couch. The requirement that an expert exclude with reasonable certainty other plausible causes has never been limited to "differential diagnos[es] for . . . medical causation opinion[s]."[13] *See e.g.*, *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp.2d 805, 836-37 (S.D. Tex. 2013).

Additionally, because Plaintiffs have adopted Gallegos' account that he intended to shoot Nicholas,[14] they have dismantled Maloney's theory that it was impossible for Gallegos to see Nicholas when he shot her because she was purportedly on the far side of the room at the north

---

[11] *Id*. at 64:12-17.
[12] Dkt. 303 at 13-14.
[13] Dkt. 335 at 3.
[14] Dkt. 330 at 14, 16.

4

end of the couch.[15]  Maloney's theory is not only defunct, it is also now irrelevant to the issue of whether Gallegos was reasonable in his belief that Nicholas posed an imminent threat of serious harm to Medina.  Accordingly, the Court should exclude as both unreliable and irrelevant Maloney's opinions that when Gallegos shot Nicholas, (1) he could not see her, and (2) she was located at the north end of the couch.  Fed. R. Evid. 702(a); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (U.S. 1999).

### E.  CONCLUSION

The City respectfully requests that the Court grant its Motion and exclude the testimony of Scott and Maloney as set forth above, as well as grant all other just relief.

Dated: September 27, 2024

Respectfully submitted:

**BECK REDDEN LLP**

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
Federal Bar I.D. 12864
adawson@beckredden.com
Garrett S. Brawley
State Bar No. 24095812
Federal Bar I.D. 3311277
gbrawley@beckredden.com
Lena E. Silva
State Bar No. 24104993
Federal Bar I.D. 3608019
lsilva@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700

**THE ODOM LAW FIRM**

*/s/ Al Odom*
Al Odom
State Bar No. 15201100
Federal Bar I.D. 12913
601 Sawyer Street, Suite 225
Houston, Texas 77007
Telephone: (713) 357-5153
E-mail: aodom@aodomlawfirm.com

**ATTORNEYS FOR DEFENDANT CITY OF HOUSTON**

---

[15] Dkt. 336-34, Maloney report at 22, 26, & 35 ("[Nicholas] was on the far side of the poorly illuminated room and . . . was not visible from [Gallegos'] firing position/location.") of 71.

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document was sent to all counsel of record on this the 27th day of September 2024, pursuant to the Federal Rules of Civil Procedure.

                                                    */s/ Alistair B. Dawson*
                                                    Alistair B. Dawson