IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFFORD F. TUTTLE, JR., REPRESENTATIVE OF THE ESTATE OF DENNIS W. TUTTLE, DECEASED, ROBERT TUTTLE, AND RYAN TUTTLE, | § § § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. 4:21-cv-00270 |
| CITY OF HOUSTON, *et al.*, | § § § | |
| Defendants. | § | |

**AND**

| | | |
|---|---|---|
| JOHN NICHOLAS, as temporary administrator of the Estate of Rhogena Nicholas and JO ANN NICHOLAS, individually and as an heir of the Estate of Rhogena Nicholas, | § § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. 4:21-cv-00272 |
| CITY OF HOUSTON, *et al.*, | § § § | |
| Defendants. | § | |

## DEFENDANT CITY OF HOUSTON'S MOTION IN LIMINE[1]

---

[1] Throughout this filing, "Nicholas Plaintiffs" refers to the current Plaintiffs in the case originally filed as 4:21-cv-00272. "Tuttle Plaintiffs" refers to the current Plaintiffs in the case originally filed as 4:21-cv-00270. "Tuttle" refers to Dennis Tuttle. "Nicholas" refers to Rhogena Nicholas. "City" refers to the City of Houston. Each individual defendant is referred to by his or her last name. "HPD" refers to the Houston Police Department. "Individual Defendants" refers to all individual defendants. "Chief Acevedo" refers to Art Acevedo. The "Harding Street incident" refers to HPD's service of a search warrant on January 28, 2019, at 7815 Harding Street and the shooting of four HPD officers, Tuttle, and Nicholas that subsequently occurred.

Prior to the voir dire examination of the jury, and before presentation of evidence, Defendant City of Houston's (the "City") moves the Court to order Plaintiffs, their attorneys, and witnesses, to refrain from mentioning or referring to, directly or indirectly, in any manner whatsoever, including the offering of testimony and/or exhibit, before the jury panel or the jury itself, the matters listed below, without first approaching the bench out of the hearing and presence of the jury panel and jury:

**(1)      Any prior incidents of HPD officers or City employees shooting animals or the assertion that the shooting of any dog during the Harding Street incident was inappropriate, unjustified, or unconstitutional.**

Fed. R. Evid. 402, 403, 404.  Plaintiffs abandoned their claims based on the use of force against Tuttle's and Nicholas's dog.  *Compare* Dkt. 330 at 31 *with* Dkt. 308 at Argument Section II.  Moreover, a lethal "shooting-at-an-animal example is not factually similar enough to what ultimately transpired in this case—the death of a person—to establish a pattern." *Edwards v. Oliver*, No. 3:17-CV-01208-MBT, 2019 WL 4603794, at *6 (N.D. Tex. Aug. 12, 2019), report & rec. adopted, No. 3:17- CV-01208-M-BT, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019). Accordingly, any assertions related to HPD officers or City employees shooting animals or the assertion that the shooting of any dog during the Harding Street incident was inappropriate, unjustified, or unconstitutional would only serve to confuse the jury and unfairly prejudice the City.  Fed. R. Evid. 402, 403, 404.  Therefore, this motion should be granted.

GRANTED_____                    DENIED_____

**(2)      Any claims, complaints, or lawsuits against any employee of the City (including any officer of the HPD) or otherwise involving the City unless those claims, complaints, or lawsuits (1) were made prior to the Harding Street incident, (2) relate to conduct that occurred during Chief Acevedo's tenure as Chief of Police for HPD, and (3) relate either to the use of deadly force during the service of a search warrant or to an officer fabricating information on a search warrant.**

Fed. R. Evid. 402, 403, 404. The only potential relevance of any non-Harding Street related claims, complaints, or lawsuits against the City or any of its employees would be to attempt to establish, for purposes of municipal liability, an alleged pattern of prior misconduct sufficient to establish an inadequate City policy and deliberate indifference by the City's policymaker towards that policy.  However, only specific alleged misconduct is relevant:

- First, the alleged misconduct must come from the time period preceding the incident at issue. *Connick v. Thompson*, 563 U.S. 51, 70 nn.7, 11 (2011) ("[C]ontemporaneous or subsequent conduct **cannot establish a pattern of violations**." (emph. added)); *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL

625080, at *9 (N.D. Tex. Mar. 3, 2022) ("[T]he court can only consider *prior* incidents that evidence an obvious pattern[.]" (emph. in orig.)).

- Second, the alleged misconduct must relate to the time period when the municipality's relevant policy maker had policy making authority. *Lewis v. City of Houston*, No. 4:22-CV-00844, 2023 WL 2249991, at *8 (S.D. Tex. Feb. 27, 2023). Here, it is undisputed that Chief Acevedo was the relevant City policymaker for purposes of this case and that his tenure as HPD's Chief of Police began on November 30, 2016.

- Third, the alleged prior misconduct must "point to the specific [constitutional] violation in question" and be "fairly similar to what transpired in the present dispute" to be used to establish alleged deliberate indifference. *Lewis v. City of Houston*, No. 4:22-CV-00844, 2023 WL 2249991, at *7 (S.D. Tex. Feb. 27, 2023) (emph. added). A "bare list of prior incidents" will not suffice. *Bond v. Nueces Cnty.*, No. 2:19-CV-43, 2019 WL 13221680, at *5 n.5 (S.D. Tex. Sept. 5, 2019).

Despite these legal limits, the City expects that Plaintiffs may attempt to turn this trial into time consuming mini-trials related to the propriety of claims, complaints, or lawsuits that (1) were made after the Harding Street incident, (2) pre-date the tenure of Chief Acevedo, or (3) are unrelated to the alleged constitutional violations in question. Because such mini-trials would not only be time consuming but also clearly irrelevant, confusing, and unfairly prejudicial, the City respectfully requests that this Court grant the requested motion in limine.

GRANTED_____                    DENIED_____

**(3)    Evidence, testimony, attorney argument, or other comments concerning an alleged incident of prior misconduct by the City or any member of HPD unless the referenced incident resulted in contemporaneous documented allegations of constitutional violations made prior to the Harding Street incident.**

Fed. R. Evid. 402, 403, 404. As noted in MIL No. 2, the only potential relevance of non-Harding Street related alleged misconduct would be to attempt to establish, for purposes of municipal liability, an alleged pattern of prior misconduct sufficient to establish an inadequate City policy and deliberate indifference by the City's policymaker toward that policy. The City expects Plaintiffs may attempt to point to alleged incidents of misconduct that did not result in contemporaneous allegations of constitutional violations. For example, Plaintiffs repeatedly reference prior HPD officer-involved shootings in motion for summary judgment briefing that did not result in contemporaneous allegations of constitutional violations. But, as explained by the Fifth Circuit, a plaintiff must go beyond the "*potential* for constitutional violations" and show "a pattern of actual violations." *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010) (emph. in orig.).

Therefore, courts in the Fifth Circuit regularly refuse the consideration of incidents that did not "result[] in subsequent litigation alleging a constitutional violation." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (refusing to consider, for

purposes of establishing a pattern, incidents that did not "result[] in subsequent litigation alleging a constitutional violation"); *Reynolds v. Wood Cnty.*, No. 6:20-CV-271-JDK, 2022 WL 19717027, at *8 (E.D. Tex. May 26, 2022), *aff'd sub nom. Reynolds v. Wood Cnty.*, Tex., No. 22-40381, 2023 WL 3175467 (5th Cir. May 1, 2023) ("[T]he Fifth Circuit disfavors finding an unconstitutional custom or practice based on historical records lacking contemporaneous allegations of misconduct.").

Thus, evidence or testimony regarding alleged incidents of prior misconduct that did not result in contemporaneous allegations of constitutional violations is irrelevant to any fact issue that the jury will be tasked to decide. Fed. R. Evid. 402, 403, 404. Likewise, evidence or testimony regarding incidents of alleged misconduct for which allegations of constitutional violations were made, but only made *after* the Harding Street incident, are irrelevant to the fact issues in this case. *Id.*; *Connick v. Thompson*, 563 U.S. 51, 70 nn.7, 11 (2011) ("[C]ontemporaneous or subsequent conduct **cannot establish a pattern of violations**." (emph. added)). Introducing such evidence would do nothing more than potentially induce the jury to make a decision on a purely emotional basis, resulting in unfair prejudice to the City. Fed. R. Evid. 403. As such, this motion in limine should be granted.

GRANTED_____                    DENIED_____

**(4)     The disposition, dismissal, or reversal of any case on which Gerald Goines or Steven Bryant was an investigating officer unless the disposition, dismissal, or reversal occurred before the Harding Street incident.**

Fed. R. Evid. 402, 403, 404. As noted in MIL No. 2, the only potential relevance of non-Harding Street related alleged misconduct by Goines or Bryant would be to attempt to establish, for purposes of municipal liability, an alleged pattern of prior misconduct sufficient to establish an inadequate City policy and deliberate indifference by the City's policymaker toward that policy. The City expects Plaintiffs may attempt to establish such an alleged pattern by pointing to the post-Harding Street disposition, dismissal, or reversal of cases on which either Goines or Bryant was an investigation officer.

However, post-Harding Street dispositions, dismissals, or reversals are not relevant to the fact issues the jury will be asked to decide for at least two independent reasons:

- First, post-Harding Street dismissals or reversals do not evidence prior incidents of constitutional violations. Instead, the Harris County District Attorney's Office exercised its discretion to dismiss pending cases in which Goines or Bryant was an investigating officer only after extensive investigations occurring post the Harding Street incident. Additionally, at least one court presumed, without actually finding, that a third party's previous conviction was obtained by false testimony from Goines because of his actions related to Harding Street. *See e.g. Ex parte Prophet*, 696 S.W.3d 111, 115 (Tex. Crim. App. Aug. 21, 2024) (Yeary, J. dissenting) (noting that the court presumed, without making an actual finding, that the testimony and/or evidence presented by Goines was false). Accordingly, such evidence would only serve to confuse the jury related to the discretion afforded

district attorneys, the complicated standards related to claims of actual innocence, and the presumptions employed in such cases given the actions of Goines and Bryant during the Harding Street incident.

- Second, even if such dispositions, dismissals, or reversals could be used to establish alleged constitutional violations, post-Harding Street dispositions, dismissals, or reversals are irrelevant. *Connick v. Thompson*, 563 U.S. 51, 70 nn.7, 11 (2011) ("[C]ontemporaneous or subsequent conduct ***cannot establish a pattern of violations*.**" (emph. added)). As a matter of law, testimony or evidence regarding post-Harding Street events are not admissible or relevant. *See e.g.*, *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 625080, at *9 (N.D. Tex. Mar. 3, 2022) ("[T]he court can only consider *prior* incidents that evidence an obvious pattern[.]" (emph. in orig.)).

Accordingly, any evidence or testimony regarding the post-Harding Street disposition, dismissal, or reversal of any case for which Goines or Bryant was an investigating officer should not be introduced to the jury because such evidence and/or testimony is irrelevant to any fact issue that the jury will be asked to decide and unfairly prejudicial to the City. Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(5)     The list of prior convictions, extraneous offenses, and bad acts allegedly committed by Gerald Goines as alleged by the Harris County District Attorney's office in Goines' criminal proceeding, including the specifics on any of the identified alleged acts.**

Fed. R. Evid. 402, 403, 404, 802. The City expects Plaintiffs may attempt to refer to or rely on the Harris County District Attorney's list of "Prior Convictions, Extraneous Offenses, and Bad Acts" from Goines' criminal trial to establish allegedly "bad acts" against the City. Any reference to the hearsay assertion by the Harris County District Attorney's Office in a separate criminal proceeding of allegedly "bad acts" would be improper, irrelevant, confusing to the jury, and unfairly prejudicial to the City. Fed. R. Evid. 402, 403, 404, 802. Moreover, for the reasons laid out in MIL Nos. 2-4, the allegedly "bad acts" asserted by the Harris County District Attorney's Office are largely irrelevant, confusing to the jury, and unfairly prejudicial to the City.

GRANTED_____          DENIED_____

**(6)     Any claims of alleged police brutality or other claims against HPD police officers unless the claims relate to the use of deadly force during the service of a search warrant or to an officer fabricating information on a search warrant.**

Fed. R. Evid. 402, 403. For the reasons articulated in MIL No. 2, such claims are irrelevant to the issues to be decided by the jury and unfairly prejudicial to the City. *See e.g.*, *Lewis v. City of Houston*, No. 4:22-CV-00844, 2023 WL 2249991, at *7 (S.D. Tex. Feb. 27, 2023).

GRANTED_____          DENIED_____

(7)    **The determination of any officer-involved shooting or use of force incident as justified or unjustified and any discipline or lack of discipline related to that determination by HPD between 2009 – 2014.**

Fed. R. Evid. 402, 403.  In support of their use-of-force claims, the City anticipates Plaintiffs will attempt to rely on HPD's determinations of whether use of force incidents that occurred between 2009 and 2014 were justified.  Specifically, the City anticipates Plaintiffs will attempt to present global evidence that all or a high percentage of use of force incidents were determined to be justified without presenting evidence of specific alleged constitutional violations.  Because evidence regarding officer-involved shootings that occurred between 2009 and 2014 and the resulting HPD justifiability determinations are both irrelevant and unfairly prejudicial to the City, the Court should prohibit Plaintiffs and their experts from introducing such evidence or testimony without first approaching the bench.  Fed. R. Evid. 402, 403.

- First, each of the 2009-2014 officer-involved shootings occurred five to ten years before the Harding Street incident, and years before Chief Acevedo became chief of HPD.  The relevant time frame in Section 1983 cases alleging *Monell* liability against a municipality is the time during which the municipality's policymaker held policymaking authority.  *Lewis v. City of Houston*, No. 4:22-CV-00844, 2023 WL 2249991, at *8 (S.D. Tex. Feb. 27, 2023); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (noting that deliberate indifference hinges on the knowledge and actions of the municipality's policymaker).  It is undisputed that Chief Acevedo was the relevant City policymaker for purposes of this case and that he began his tenure in November 2016.

- Second, to impute an inadequate use-of-force related policy to the City, "[c]ase law is clear that Plaintiff[s] [are] required to show a pattern of *similar constitutional violations* resulting in injuries."  *Bailey v. Dallas Cnty.*, No. 3:09-CV-0865-K, 2012 WL 1033502, at *21 (N.D. Tex. Mar. 28, 2012) (emph. added), *aff'd sub nom. Bailey v. Quiroga*, 517 F. App'x. 268 (5th Cir. 2013).  It is not enough to simply show the existence of prior use-of-force incidents and HPD's subsequent justifiability determinations.  *Davidson*, 848 F.3d at 396 & n.6; *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002)*.  Such evidence is only relevant to the extent that Plaintiffs can go beyond that and show a resulting "pattern of unremedied abuses of citizens' rights" (*Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)) that "point to the specific violation in question" (*Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)).  Because Plaintiffs allege that the use-of-force constitutional violations at issue are Gallegos' purported uses of excessive deadly force against Nicholas and Tuttle during service of a search warrant, the officer-involved shootings that occurred between 2009 and 2014 are only arguably relevant if they (1) occurred during services of search warrants, and (2) were in fact excessive despite HPD findings to the contrary.  *Bailey*, 2012 WL 1033502, at *21.  Plaintiffs concede that they have not tried to make such a showing.  Dkt. 330 at 55.  Plaintiffs have no evidence regarding which, if any, of the 2009-2014 officer-involved shootings occurred during service of search warrants or involved excessive (aka, unjustified) uses of force.

Because the 2009-2014 officer-involved shootings and resulting justifiability determinations took place long before Chief Acevedo began his tenure as HPD chief, and because

Plaintiffs have no evidence that those shootings occurred during services of search warrants or amounted to excessive uses of force, any testimony or evidence regarding officer-involved shootings that occurred between 2009 and 2014 and the resulting HPD justifiability determinations should be excluded as both irrelevant and unfairly prejudicial to the City.  Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(8)      The determination of any officer-involved shooting or use-of-force incident as justified or unjustified, and any HPD discipline or lack of discipline related thereto, unless (1) the determination was made by Chief Acevedo or during Chief Acevedo's tenure, (2) the incident related to the use of deadly force during the service of a search warrant, and (3) Plaintiffs can identify evidence that the underling use of force incident was excessive.**

For the same reasons as MIL No. 7, the Court should grant this motion in limine.

GRANTED_____          DENIED_____

**(9)      Any assertion or insinuation that any evidence potentially relevant to this case was destroyed, not appropriately collected, or not produced.**

Fed. R. Evid. 402, 403, 404. Only where a party "actually proves spoliation" are they entitled to such references that evidence was destroyed, not appropriately collected, or not produced, which is a "high bar." *See Mosley-Lovings v. AT&T Corp.*, 2020 U.S. Dist. LEXIS 220857, at *5 (N.D. Tex. 2020) (citing *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 207 (5th Cir. 2007)).  When a party has not shown "bad faith" destruction of evidence (because mere negligence is not enough), then references to spoliation or "unproduced evidence" are inappropriate.  *Russell*, 234 F. App'x at 207-08; *see also Basin Exploration Inc. v. Tidewater Inc.*, 139 Fed. Appx. 605, 608 (5th Cir. 2005) (applying bad faith standard outside of spoliation context to "unproduced evidence" and affirming no adverse inference).

GRANTED_____          DENIED_____

**(10)    Any assertion or insinuation that any member of Squad 15 was wearing a body worn camera or recording device during the service of the warrant at 7815 Harding Street or that such body worn camera footage or recording was destroyed or not produced by Defendants.**

Fed. R. Evid. 402, 403. As outlined in MIL No. 9, assertions or insinuations that evidence potentially relevant to this case was destroyed, not appropriately collected, or not produced are inappropriate and would only serve to unfairly prejudice the City and/or confuse the jury.  The City expects Plaintiffs may attempt to argue that a member of Squad 15 was wearing a personal recording device and/or that an unproduced video of the Harding Street incident exists.  This assertion comes from speculative and unsubstantiated testimony by Bryant in the criminal proceeding against Goines. The City understands that during the criminal proceeding Bryant testified that Reyna wore a personal body camera before the Harding Street incident, but Bryant was unsure if Reyna wore such a device during the Harding Street incident. The City is not aware

of any such video, and no such video has been produced in this case. Accordingly, any assertion or insinuation that an unproduced video exists would unfairly prejudice the City and confuse the jury. Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(11)   Any suggestion or assertion that any HPD officer or City employee or representative tampered with or planted evidence at 7815 Harding Street, including that any officer put DNA or gunshot residue on Nicholas, Tuttle, or the .357 Magnum recovered from 7815 Harding Street.**

Fed. R. Evid. 402, 403, 404. The City expects Plaintiffs may attempt to argue or insinuate that an HPD officer or City representative tampered with or planted evidence at 7815 Harding Street. Such assertions originate from Plaintiffs' expert witness, Michael Maloney. Mr. Maloney originally opined that Sepolio picked up Tuttle's gun after the shooting incident, found that only two shots had been fired, walked to the back of the dining room, and fired two bullets from Tuttle's gun into the dining room wall. Because such an opinion is not actually supported by the evidence, when confronted with contradicting evidence at his deposition Mr. Maloney completely recanted this story and confirmed that it never happened. Dkt. 308 at FN 130. Accordingly, Plaintiffs have no evidence or expert testimony to support any suggestion or assertion that any HPD officer or City employee or representative tampered with or planted evidence at 7815 Harding Street. Accordingly, any such suggestion or assertion would only serve to confuse the jury and unfairly prejudice the City. Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(12)   Any assertion that HPD officers or City employees were shooting blindly through the side of the house during the Harding Street incident.**

Fed. R. Evid. 402, 403. Plaintiffs have conceded that all uses of force during the Harding Street incident were constitutionally appropriate except for Gallegos' final shot(s) at Tuttle and Gallegos' shooting of Nicholas. *See* Dkt. 308 *see also* Dkt. 309 at Ex. 19, 118:2-25; Dkt. 330. Accordingly, any assertion that officers were "shooting blindly" through the side of the house during the Harding Street incident is irrelevant and would only serve to confuse the jury and unfairly prejudice the City. Fed. R. Evid. 402, 403. Therefore, this motion should be granted.

GRANTED_____          DENIED_____

**(13)   Any reference to changes in policies or practices made by the City or HPD after the incident in question.**

Fed. R. Evid. 402, 403, and 407. "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: … culpable conduct[.]" Fed. R. Evid. 407.

GRANTED_____          DENIED_____

8

**(14)     Any lawsuit settlements involving the City of Houston or any member of HPD.**

Fed. R. Evid. 402, 403, 404, 408. To the extent any claims, complaints, or lawsuits are admissible, the City expects Plaintiffs may (1) assert that settlement(s) by the City of specific lawsuits establish(es) the veracity of the underlying claims, and/or (2) use the mention of settlements to imply the veracity of underlying claims.  Any evidence or mention of settlements by the City would be irrelevant, confusing, and unfairly prejudicial to the City. As this Court is aware, parties settle lawsuits for a variety of reasons unrelated to the merits of the underlying claims, and the settlement of a specific lawsuit does not establish the validity or veracity of those underlying claims. To avoid time consuming mini-trials related to the reasoning for any suggested settlement and the unfair prejudice associated with such evidence, this motion should be granted.

GRANTED_____                DENIED_____

**(15)     Any claims of alleged police brutality or other claims against police officers unrelated to the HPD or the City.**

Fed. R. Evid. 402, 403.

GRANTED_____                DENIED_____

**(16)     Any press coverage relating to the Harding Street incident, including any statements by members of the press.**

Fed. R. Evid. 402, 403.

GRANTED_____                DENIED_____

**(17)     Any statements made to the press by non-employees of the City related to the Harding Street Incident, including any statements made by Joe Gamalidi.**

Fed. R. Evid. 402, 403, 802.

GRANTED_____                DENIED_____

**(18)     The invocation of the Fifth Amendment by any witnesses in this case prior to any such witness invoking the Fifth Amendment either at trial or through a deposition played at trial, and any assertion that a witness has invoked or will invoke the Fifth Amendment for any specific reason related to Plaintiffs' claims against the City.  Nothing in this MIL prevents questions during *Voir Dire* related to the generic potential invocation of the Fifth Amendment.**

Fed. R. Evid. 402, 403.  Introducing evidence, prior to the playing of a witness' deposition, that the witness invoked the Fifth Amendment during the deposition is irrelevant, and any probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.  *See e.g.*, *Fowler v. State Farm Fire & Cas. Co.*, No. CIV

106CV489-HSO-RHW, 2008 WL 3540180, at *2-5 (S.D. Miss. Aug. 8, 2008) (affirming magistrate's order granting similar MIL).  Similarly, introducing evidence that a witness *may* invoke the Fifth Amendment at trial before the witness elects to actually do so is irrelevant, and any probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.  *Id*.  Plaintiffs should not be allowed to introduce such evidence at all, let alone without first approaching the bench out of the hearing and presence of the jury panel and jury.

GRANTED_____          DENIED_____

**(19)    Any assertion that HPD inappropriately gave officers 48-hour notice of internal affairs investigations or an insinuation that doing so was improper, inadequate, or a constitutional violation.**

Fed. R. Evid. 402, 403.  HPD is *required by law* to give an officer written notice of an administrative investigation at least "48 hours" before questioning the officer.  Tex. Loc. Gov't Code §§ 143.312(b)(2), (g) (requiring 48-hour notice for administrative investigations of alleged police officer misconduct "that could result in punitive action against that person").  Plaintiffs have not challenged or sued the State of Texas related to Loc. Gov't Code §§ 143.312(b)(2), (g).  Accordingly, any assertion that HPD's compliance with unchallenged state law was somehow inappropriate, improper, and/or a constitutional violation would be irrelevant, confusing, and unfairly prejudicial to the City.[2]

GRANTED_____          DENIED_____

**(20)    Any assertion that officers may or did have an attorney present when questioned by the internal affairs division.**

Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(21)    Any Evidence, testimony, attorney argument, or other comments concerning allegedly fraudulent overtime practices by City employees or officers with HPD, including allegations related to the Individual Defendants in this case.**

Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

---

[2] The 48-hour notice requirement does not apply to non-administrative criminal or homicide investigations, and as such, the Individual Officers were not given 48-hour notice before being questioned in relation to SIU's homicide investigation.

**(22)    Any criminal charges filed against any HPD officer other than the criminal charges filed against Gerald Goines and Steven Bryant related to the Harding Street incident.**

Evidence of criminal charges that have not resulted in a conviction or guilty plea are generally inadmissible.  Fed. R. Evid. 609. Such charges are also irrelevant to the fact issues in this case.  Fed. R. Evid. 402.  Accordingly, introducing such evidence would do nothing more than confuse the jury or induce the jury to make a decision on a purely emotional basis, resulting in unfair prejudice to the City.  Fed. R. Evid. 403. As such, this motion in limine should be granted.

GRANTED_____          DENIED_____

**(23)    The assertion or suggestion that the Narcotics Division had not been audited or inspected in the ten years preceding the Harding Street incident.**

Fed. R. Evid. 402, 403, 803.  Please see the City's simultaneously filed bench brief related to this issue.

GRANTED_____          DENIED_____

**(24)    That Acevedo ordered or instructed officers to turn off body worn cameras 40 minutes after the incident was over.**

Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(25)    Any sexual relationship between Goines and any of his confidential informants.**

Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(26)    The nature of any personal relationship between Todd and Blankenship-Reeves.**

Fed. R. Evid. 402, 403.

GRANTED_____          DENIED_____

**(27)    Any argument that the jury should "send a message" or "teach a lesson" to the City or otherwise punish the City for any alleged wrongdoing.**

Fed. R. Evid. 402, 403.  Punitive damages are not allowed as to the City. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981).

GRANTED_____          DENIED_____

**(28)    Any testimony, comment, argument, inference, or evidence suggesting that the City would indemnify any of the Individual Defendants for part of any damages for which they may be held liable in this case.**

Fed. R. Evid. 402, 403, 411.

GRANTED_____          DENIED_____

**(29)    Any testimony, reference, attorney argument, or other comments suggesting that guns were not recovered in 99.08% or 91.8% (or any similar number) of no-knock warrants requested by Goines.**

Fed. R. Evid. 402, 403. The City expects Plaintiffs will attempt to use the return and inventory lists filed after the execution of search warrants to imply that guns were not recovered in a certain percentage of Goines' no-knock warrants.  Such unfounded assertions would be inappropriate for two reasons.  First, Plaintiffs have no evidence or expert testimony to support Plaintiffs' incorrect theory that the lack of guns on the return and inventory list establishes that guns were not present and/or recovered during the service of the warrant.  For example, Plaintiffs' policy expert, Andrew Scott, provided no such opinion in his report or deposition. Second, an examination of the underlying case files associated the identified warrants conclusively establishes that guns *were* recovered in majority of the warrants at issue despite guns not being listed on the return and inventory lists.[3]   Accordingly, any assertion to the contrary by Plaintiffs would be contrary to the evidence and only serve to confuse the jury and unfairly prejudice the City.

GRANTED_____          DENIED_____

---

[3] **Exhibit 1**, Summary of Underlying Files from I. Adams Report.

**(30)    Evidence, testimony, attorney argument, or other comments concerning matters that were not properly disclosed in discovery, including any assertion of prior incidents of alleged misconduct that were not identified in response to Interrogatory Nos. 17–25 to the Nicholas Plaintiffs or Interrogatory Nos. 17–21 to the Tuttle Plaintiffs, or plead in Plaintiffs' active petitions.**

To impute an inadequate policy to the City, "[c]ase law is clear that Plaintiff[s] [are] required to show a pattern of *similar constitutional violations* resulting in injuries" sufficient to establish a City custom.  *Bailey v. Dallas Cnty.*, No. 3:09-CV-0865-K, 2012 WL 1033502, at *21 (N.D. Tex. Mar. 28, 2012) (emph. added), *aff'd sub nom. Bailey v. Quiroga*, 517 F. App'x. 268 (5th Cir. 2013).  To that end, the City sent targeted discovery to Plaintiffs for the purpose of ensuring that the City could gather and review any evidence related to any alleged prior incidents of officer misconduct on which Plaintiffs intend to rely in order to establish an alleged City custom or deliberate indifference.  Specifically, the City sent interrogatories requesting the factual bases for numerous assertions in Plaintiffs' complaints related to alleged prior incidents of officer misconduct and for Plaintiffs' contentions that any custom, policy, and/or practice was "persistent and widespread enough to constitute a custom that fairly represents municipal policy."[4]

The introduction of any alleged prior officer misconduct that was not identified in response to the City's interrogatories or plead in Plaintiffs' active petitions would be a violation of Plaintiffs' duty under Fed. R. Civ. P. 26(e)(1) to supplement their discovery responses.  To be clear, Rule 26 "was  adopted to end two evils that had threatened civil litigation: expensive and time-consuming pretrial discovery techniques and trial-by-ambush." *Olivarez v. GEO Group, Inc.*, 844 F.3d 200, 204 (5th Cir. 2016) (internal quotations omitted).  Any attempt by Plaintiffs to rely at trial on a previously undisclosed alleged prior incident of officer misconduct would result in trial-by-ambush and rob the City of presenting counter evidence related to the alleged prior incident. The Court should, therefore, exclude any evidence of alleged prior incidents of officer misconduct that Plaintiffs did not timely disclose in discovery.

GRANTED_____                DENIED_____

**(31)    Any demonstrative evidence that has not previously been shown to Defendants' counsel outside the presence of the jury.**

GRANTED_____                DENIED_____

---

[4] Dkt. No. 309 at Exs. 43-46.

**(32)    Any testimony from any witness, whether expert or factual, whose identity and/or substance of testimony has not been properly and timely disclosed in response to discovery requests directed to the same, or that has not been disclosed in accordance with any applicable scheduling orders.**

*Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999).

GRANTED_____          DENIED_____

**(33)    Any opinion testimony offered by an expert witness where such opinion was not previously disclosed in the expert witness' disclosure and/or report.**

Fed. R. Civ. P. 26.

GRANTED_____          DENIED_____

**(34)    Any mention or inquiry designed to elicit attorney-client privileged communications or designed to elicit an objection from counsel concerning an attorney-client communication.**

Fed. R. Evid. 402, 403, 501, 502.

GRANTED_____          DENIED_____

Dated: October 21, 2024

Respectfully submitted:

**BECK REDDEN LLP**

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
Federal Bar I.D. 12864
adawson@beckredden.com
Garrett S. Brawley
State Bar No. 24095812
Federal Bar I.D. 3311277
gbrawley@beckredden.com
Lena E. Silva
State Bar No. 24104993
Federal Bar I.D. 3608019
lsilva@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

*/s/ Al Odom*
Al Odom
State Bar No. 15201100
Federal Bar I.D. 12913
The Odom Law Firm
601 Sawyer Street, Suite 225
Houston, Texas 77007
Telephone: (713) 357-5153
E-mail: aodom@aodomlawfirm.com

**ATTORNEYS FOR DEFENDANT CITY OF HOUSTON**

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiffs and the City are in the process of conferring related to the above motions in limine. As of this filing, none of the City's Motions in Limine are agreed. However, the City anticipates filing an updated certificate of conference on October 25, 2024, noting any agreed motions in limine.

*/s/ Garrett S. Brawley*
Garrett S. Brawley

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was sent to all counsel of record on this the 21st day of October, 2024, pursuant to the Federal Rules of Civil Procedure.

                                  */s/ Alistair B. Dawson*
                                  Alistair B. Dawson