UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLIFFORD TUTTLE, et. al.<br><br>Consolidated with<br><br>JOHN NICHOLAS, et.al.<br><br>Plaintiffs,<br>v.<br><br>CITY OF HOUSTON; ART ACEVEDO, et. al.<br>Defendants. | Case No. 4:21-cv-00270<br><br>(JURY DEMANDED) |

**THE TUTTLE AND NICHOLAS PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CITY OF HOUSTON'S MOTION TO BIFURCATE TRIAL**

The Nicholas and Tuttle Plaintiffs file this response to Defendant City of Houston's Motion to Bifurcate Trial [ECF No. 373]. The City of Houston has failed to meet its burden to demonstrate the trial bifurcation it proposes would actually promote judicial efficiency (when it would more likely create inefficiencies) or that there is any potential for juror confusion and prejudice (and if there were, that it could not be remedied through less drastic means). Further, bifurcation is not warranted here because doing so would be prejudicial to Plaintiffs.

**ARGUMENT AND AUTHORITIES**

Pursuant to Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). In this circuit, "[s]eparation of issues . . . is not the usual course that should be followed," *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993), and "the burden is on the party seeking separate trials to prove that separation is necessary." *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F. Supp. 2d 375, 402 (S.D. Tex. 2011) (cleaned up).

1

Indeed, the Fifth Circuit has generally been cautious towards bifurcation, noting that it should only be ordered when "the issue to be tried is so distinct and separate from the others that a trial of it alone may be had without injustice."[1] *See McDaniel*, 987 F.2d at 305 (citing *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)); *see also* Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment ("separation of issues for trial is not to be routinely ordered."). As a highly "case-specific procedural matter," bifurcation is "within the sole discretion of the trial court, and the Fifth Circuit will not reverse the court's decision absent an abuse of that discretion." *Nester v. Textron, Inc.*, 888 F.3d 151, 162-63 (5th Cir. 2018).

### I. The proposed bifurcation is likely more inefficient than a single trial.

While the City of Houston claims that bifurcation may significantly shorten the trial proceedings, the more likely result of bifurcation will be trial with consistent grinding halts due to disputes over what evidence belongs in which phase, and regardless if Plaintiffs prevail on their individual excessive force claims, significant judicial efficiency losses as many of the witnesses will need to take the stand for a second time to repeat and elaborate upon testimony that more efficiently could have been provided in a single trial.

As expanded upon much further in Plaintiffs' responses to Defendants' summary judgment motions, this case involves two primary theories of liability against the individual officers and the City of Houston: (1) that HPD's Narcotics Squad 15 engaged in excessive force by shooting and

---

[1] Despite the City's characterization, bifurcation of *Monell* claims is pursued with mixed results, particularly in other circuits. Even there, "it remains the exception and not the rule[.]" *Novick v. Vill. of Bourbannais*, 2024 U.S. Dist. LEXIS 79511, at *7 (C.D. Ill. May 1, 2024); *Awalt v. Marketti,* 2012 U.S. Dist. LEXIS 49182, at *10 n.2 (N.D. Ill. 2012) ("The Court has looked at every decision in this District involving bifurcation of *Monell* claims...since the Seventh Circuit decided *Thomas v. Cook County Sheriff's Dep't*. It is clear that the weight of authority holds that bifurcation is now heavily disfavored."); *Est. of Matus v. Cty. of Riverside*, 2024 U.S. Dist. LEXIS 143210, at *8 (C.D. Cal. Aug. 9, 2024) (denying motion to bifurcate *Monell* claim); *Tupea v. Kline*, 2024 U.S. Dist. LEXIS 101912, at *17 (E.D. Va. June 7, 2024) (same); *Smith v. Office of the Alameda Cty. Pub. Def.*, 2022 U.S. Dist. LEXIS 242828, at *3 (N.D. Cal. Aug. 30, 2022) (same).

killing the non-threatening and unarmed Tuttles when executing a no-knock warrant obtained on false pretenses, and that excessive force was driven by the squad members' knowledge that they would not face serious scrutiny or consequences due to HPD's policies towards internal scrutiny, and (2) that HPD's Narcotics Squad 15 violated the Tuttles' constitutional rights to be free from unreasonable search and seizure when Squad 15 executed the baseless no-knock warrant, and HPD's deficient supervision of its narcotics division was a moving force behind that constitutional violation. *See* ECF Nos. 330, 331. Despite the intertwined evidence concerning what occurred before and after the raid that is applicable to both of these theories and the claims against both the individual officers and the City of Houston, the City of Houston proposes a bifurcation plan that seems to suggest that the first stage of trial can only focus on what occurred in the home during the raid, with the remainder of the pre-incident context and findings from post-incident investigations remaining for a second stage only if Plaintiffs prevail on the excessive force claims against individual officers.[2]

It is not clear practically how these issues and their supporting evidence can be discretely divided into the proposed bifurcated segments. For example, significant for both the individual officer excessive force claims and the excessive force *Monell* claim are those post-incident investigations and audits and the broader context in which they occurred. This is not a case in

---

[2] Plaintiffs note that the proposed bifurcation structure is not entirely clear to them as detailing in the City of Houston's motion. The plan as briefed only refers to the jurors making findings of constitutional violations relating to the use of force in the first phase before proceeding to the remaining *Monell* elements. ECF No. 373 at 2. Plaintiffs have individual and *Monell* claims related to both the warrant (search and seizure) and excessive force. It may be the City of Houston understands the individual search and seizure claim is a foregone conclusion and evidence on *Monell* liability will be required regardless of the findings on individual excessive force. That consideration, however, supports Plaintiffs' point that much of the evidence on the individual and *Monell* search and seizure claims and overlaps with much of the evidence on the individual and *Monell* excessive force claims, thereby making it impractical to try to segment out what belongs where in a bifurcated trial.

which there is an agreed upon sequence of events. As a result, witnesses and experts would need to discuss the process by which HPD post-shooting investigations generally occur and the officers' knowledge of that process, how the investigations occurred in this instance, and the investigations' findings for the jury to determine whether the officers' version of events is credible for the individual claims against the officers. That same evidence concerning internal scrutiny is also central to Plaintiffs excessive force *Monell* claim for demonstrating that HPD's internal investigation processes was a moving force in the excessive force violation. As another example, evidence concerning how Narcotics Squad 15 operated for obtaining the warrant and organizing the raid is as relevant to the excessive force claims against the officers as it is to the claims for unreasonable search and seizure that the City of Houston seems to propose reserving in part for a second trial. This evidence will help the jurors evaluate how both the officers and Tuttles likely reacted during the raid based on their respective understandings of what was happening when Squad 15 burst through the Tuttles' front door and started shooting.

As a result, what is more likely to occur than any judicial efficiency gains are consistent disputes of what belongs where if the trial is bifurcated. *See Rustgi v. Reams*, 536 F. Supp. 3d 802, 827 (D. Colo. 2021) ("Bifurcation in this case, where there is close connection and overlap between the individual and entity liability claims, would be costly, waste time, and result in duplicative litigation."). Plaintiffs concerns in this regard are based on experience throughout the course of discovery in this case. Depositions consistently involved disputes over permissible questions based on the Court's guidance provided concerning the permissible scope of discovery. *See, e.g.*, Ex. R (Gonzalez Dep.) to Plaintiffs' *Monell* MSJ Resps. (repeated instructions not to answer deposition questions Plaintiffs believed relevant based on Defendants' interpretation of "judge's instructions.") [ECF No. 336-51]; Ex. AM (Sepolio Dep.) to Plaintiffs' *Monell* MSJ Resps. at 8

[ECF No. 336-72]. Plaintiffs have no reason to believe that there will suddenly be agreement on relevant questions and evidence for each phase if there is an attempt to separate related issues through bifurcation. More likely, the Court will likely be asked to consistently rule on disputes over what belongs where. *See Garcia v. Ramirez*, 2021 U.S. Dist. LEXIS 65387, at *5-6 (N.D. Ill. Apr. 5, 2021) ("[B]ifurcating and staying Plaintiff's *Monell* claim at this late stage will create further delay as the parties debate what should and should not be part of the trial of Plaintiff's claims against the Individual Officer Defendants, and judicial economy favors dealing with all claims in a single proceeding.").

Despite this, the City's reason for bifurcation is the *potential* for limiting unnecessary testimony if plaintiffs do not prevail on their individual excessive force claims. This speculation, however, is countered by the fact that each of the officers involved in the raid, many of the parties' experts, and some of the investigating officers and supervisors would need to return to the stand in the second phase of the trial, regardless of the findings on the individual excessive force claims, to testify concerning the warrant and unreasonable search and seizure *Monell* claim. Bifurcation then imposes some degree of needless repetition to refresh jurors on who the witness is and what the witness has already testified to on key issues for all claims involved. *See Smith v. Office of the Alameda Cty. Pub. Def.*, 2022 U.S. Dist. LEXIS 242828, at *2 (N.D. Cal. Aug. 30, 2022) ("At least some witnesses with testimony relevant to [the plaintiff's] constitutional injury will also have testimony relevant to his *Monell* claim. The evidence and arguments raised by the parties will overlap, leading to needless repetition across two trials."); *Sisson v. Dougherty*, 2020 U.S. Dist. LEXIS 258439, at *7-8 (C.D. Ill. Mar. 31, 2020) ("[T]he court finds that the witnesses and evidence necessary for a trial against [the individual defendant] would be largely the same as what would be required for trial of Plaintiff's *Monell* claim. The court finds that judicial economy would

not be served by bifurcating the trial and inviting the possibility of holding two largely overlapping trials — particularly now, after the court has ruled on summary judgment, and the case is very close to trial.").

And in the event that Plaintiffs do prevail on the individual excessive force claims, we all will face even more significant efficiency losses from calling up repeat witnesses to discuss the excessive force for the *Monell* claim. *See Smith v. Office of the Alameda Cty. Pub. Def.*, 2022 U.S. Dist. LEXIS 242828, at *2 (N.D. Cal. Aug. 30, 2022) ("While some efficiency may be gained from bifurcation if [the plaintiff] fails to establish a constitutional injury, even greater efficiency may be lost if the *Monell* claim is bifurcated and [the plaintiff] prevails in establishing a constitutional injury."); *see also Sims v. City of Jasper*, 117 F.4th 283 (5th Cir. 2024) (finding that the inconvenience to the jurors of having two trials that could have been handled in one weighed against bifurcation). Altogether, these considerations suggest that bifurcation may actually—if not probably—end up being more inefficient than having a single trial.

## II. There is no definite risk of confusion or prejudice that could not otherwise be cured through Court instructions and guidance to jurors.

The movant City of Houston suggests that bifurcation is necessary because the jurors may be incapable of distinguishing prior incidents involving HPD relevant to the *Monell* claims from this specific incident and the officers involved here that will be the primary focus of the trial. The premise of the City of Houston's argument is flawed in at least two respects.

First, the City of Houston claims that it will be prejudiced because "a single trial could lead a jury to enter a finding of *Monell* liability based solely on other, unrelated incidents, prejudicing the City." It is unlikely that a jury would determine the Tuttles' rights were in no way violated, but that the jury would still award the Tuttles' relief from other, unrelated incidents in which they had no involvement. More significant, however, is that in essence, the City of Houston is arguing

6

that the very structure of a *Monell* claims requires bifurcation as a default rule because in typical *Monell* cases, the claims requires evidence of prior unconstitutional acts (i.e., evidence to show a pattern) in combination with the unconstitutional act at issue. *Monell* claims are a creature of judicial creation, and Plaintiffs are aware of no court that has held bifurcation is necessary by default to avoid this speculative risk of prejudice merely because the claim typically requires evidence on the specific act and other acts. *Cf. Nester v. Textron, Inc.*, 888 F.3d 151, 163 (5th Cir. 2018) (observing in the context of a motion to bifurcate punitive damage evidence from liability evidence that requiring bifurcation as a default rule in those circumstances "would be to upend our federal discretionary framework and replace it with a judicial analogue to [a] statutory mandate.").

Second, underlying the City of Houston's argument is a belief jurors will not be able to keep straight unrelated instances to the Harding Street raid. At the outset, it is hard to imagine that other, significant but less egregious incidents than what occurred at the Tuttles' home may confuse or prejudice jurors as to what specifically happened at Harding Street with the members of Narcotics Squad 15. And even while Plaintiffs do anticipate that at least some instances of prior excessive force and statistics on officer-involved shootings may be mentioned when presenting Plaintiffs' excessive-force *Monell* claim, the City of Houston is incorrect that these prior instances of excessive force will be a central focus of Plaintiffs excessive-force *Monell* claim or that they are even necessary to prove *Monell* liability in this case. As detailed extensively in Plaintiffs' response to the City of Houston's motion for summary judgment on the excessive force *Monell* claim, prior instances forming a pattern of unconstitutional acts is a typical way of proving the claim, but *Monell* can also be proved by showing that there were policies (here, a policy of failed discipline) that led to a highly predictable consequence of excessive force or through evidence of ratification of the officers' actions. *See* ECF No. 330 at 29-31.

Plaintiffs specifically invoke these two alternative theories as bases for *Monell* liability against the City of Houston on the excessive force claim. This means that Plaintiffs need to present evidence concerning HPD's investigation and discipline policies and procedures and any ratifying acts after the incident as relevant to the *Monell* claim. This evidence is also directly relevant to the individual excessive force claims, as discussed in the preceding section, and its hard to envision how this evidence is prejudicial to the City or non-movant officers. The point being that the City of Houston is overplaying the significance of prior instances of excessive force and how much time will be spent on unrelated incidents within the scope of the trial, and discounting that Plaintiffs plan to prove *Monell* liability through other means with no apparent risk of prejudice.

Ultimately, even assuming the City of Houston's argument had any merit, as several courts facing these exact arguments from *Monell* defendants have concluded, judges often mitigate potential prejudice that might arise from a unitary trial involving multiple defendants and multiple claims using limiting instructions, motions in limine, and the Federal Rules of Evidence. *See, e.g. Giles v. City of Chicago*, 2013 U.S. Dist. LEXIS 172086, at *2 (N.D. Ill. Dec. 6, 2013); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 897 (N.D. Ill. June 16, 2000); *see also Sims v. City of Jasper*, 117 F.4th 283 (5th Cir. 2024) (recognizing the effectiveness of judicial management practices to cure prejudice instead of bifurcation); *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 807 (9th Cir. 2018) ("Though some of the evidence relevant to the *Monell* claims was irrelevant to individual liability, the district court's many limiting instructions cured any possible prejudice."). There is no reason to believe that the Court is incapable of effectively using those same tools in this trial or that the jurors are incapable of fairly assessing the evidence.

### III. Bifurcation limits Plaintiffs' ability to consistently present their case.

In exercising judicial discretion, courts also consider the prejudicial impact bifurcation may

have on the non-moving party as part of the Rule 42(b) analysis. *See, e.g.*, *Sims v. City of Jasper*, 117 F.4th 283 (5th Cir. 2024) ("More importantly, the district court was correct in recognizing that bifurcation might prejudice the non-movant in presenting a viable defense to liability.").

Trial bifurcation as proposed would have significant prejudicial impacts on Plaintiffs efforts to present their case. There are likely to be consistent open-court disputes over appropriate testimony and evidence that will impact the jury, there will be disjointed case presentations for Plaintiffs as Plaintiffs may be precluded from raising certain evidence in the first phase and some witnesses may have to retake the stand to reestablish and rehash prior testimony, and costs and time commitments will be driven up substantially if the parties have to recall family members, experts, and other witnesses to a second stage of trial. Conducting bifurcated trials in this manner is a far cry "from the Seventh Amendment guarantee" of a trial by jury with "the general right of a litigant to have only one jury pass on a common issue of fact." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978); *see also Garcia v. Ramirez*, 2021 U.S. Dist. LEXIS 65387, at *8 (N.D. Ill. Apr. 5, 2021) ("Allowing Plaintiff to proceed to trial on all his claims will allow a jury to consider the entire picture of what Plaintiff alleges happened to him and for the jury to determine whether any or all Defendants' conduct, both the individual police officers and the City, violated the law. This is not an insignificant consideration . . ."); *Cadle v. City of Chi.*, 2015 U.S. Dist. LEXIS 148344, at *10-12 (N.D. Ill. Nov. 2, 2015) ("Plaintiff also alleges that the Defendant Officers acted as they did, in part, because they believed they would not face discipline for their actions since the City, as alleged in Plaintiff's Complaint, has a practice of failing to discipline, monitor, supervise and retrain officers who use excessive force against individuals. This is the case that Plaintiff wants to argue to a jury, and the Court agrees that Plaintiff should be permitted to discover his entire case at this time and have the opportunity to present it to a jury in a single trial

and not piecemeal . . . The Court agrees with Plaintiff's argument that, with the instant [bifurcation] Motion, the City essentially is trying to take away his choice of theories and how to proceed with his claims.").

### IV. Bifurcation is also procedurally problematic because of officers' qualified immunity defenses.

While Plaintiffs believe their preceding arguments provide stronger, more practical reasons why bifurcation is not desirable, Plaintiffs at least flag for the Court that other courts have denied similar bifurcation requests due to the interplay of individual officers raising qualified immunity defenses when there are also *Monell* claims, which is an issue here. Specifically, an officer can violate an individual's constitutional rights, for which the City may be liable under *Monell*, but the jury can determine that the officer's defense of qualified immunity means the officer is not personally liable for a constitutional violation. *See Medina v. City of Chi.*, 100 F.Supp.2d 893, 896-977 (N.D. Ill. 2000) ("Thus when a plaintiff loses his claim against a police officer based on qualified immunity, he can still recover against the municipality if he can prove a constitutional deprivation caused by a municipal policy or custom. In this situation, bifurcation will not avoid a second trial...."); *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009).

Plaintiffs acknowledge a successful qualified immunity defense on the excessive force claim is unlikely on the facts, but Defendant Gallegos has still raised that defense against the individual excessive force claim against him. As a result, bifurcation would not necessarily avoid the need for a second trial on the City's *Monell* liability even if Defendant Gallegos is cleared of liability for the individual excessive force claim against him.

### CONCLUSION

The Nicholas and Tuttle Plaintiffs respectfully request the Court deny Defendant City of Houston's Motion to Bifurcate Trial.

Dated: November 12, 2024

| | |
|---|---|
| */s/ Michael P. Doyle* | */s/ Boyd Smith* |
| Michael Patrick Doyle | Michael T. Gallagher |
| Patrick M. Dennis | L. Boyd Smith, Jr. |
| Jeffrey I. Avery | Pamela R. McLemore |
| Patrick Doyle | 2905 Sackett Street |
| DOYLE DENNIS AVERY LLP | Houston, TX 77098 |
| The Clocktower Building | Telephone: (713) 238-7705 |
| 3401 Allen Parkway, Suite 100 | Facsimile:  (713) 238-7852 |
| Houston, Texas 77019 | mike@gld-law.com |
| Email: service@doylelawfirm.com | bsmith@gld-law.com |
| | pamm@gld-law.com |
| CHARLES C. BOURQUE, JR. | |
| *Admitted Pro Hac Vice* | Attorneys for the Tuttle |
| ST. MARTIN & BOURQUE, LLC | family |
| 315 Barrow St. | |
| Houma, LA 70360 | |
| 985-876-3891 (phone) | |
| 985-851-2219 (fax) | |
| cbourque@stmblaw.com | |
| Attorneys for the Nicholas family | |

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record on this November 12, 2024 via CM/ECF, hand delivery, electronic mail, overnight courier, U.S. Mail, certified mail, return receipt request, or facsimile, pursuant to the Federal Rules of Civil Procedure.

*/s/ Jeffrey I. Avery*
Jeffrey Avery