between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Phillips ex rel. Phillips v. Monroe Cnty., Miss.*, 311 F.3d 369, 374 (5th Cir. 2002).  Under Texas's wrongful death statute, "a plaintiff seeking to recover . . . must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree." *Slade v. City of Marshall, Tex.*, 814 F.3d 263, 264–65 (5th Cir. 2016).  There is an "important[t] . . . distinction between survival and wrongful death causes of action." *Phillips*, 311 F.3d at 374 n.1.  "A survival claim belongs to the decedent because it arises from injuries sustained while the decedent was alive." *Boyd v. Grooms*, No. CIV.A. H-08-2371, 2009 WL 3151341, at *4 (S.D. Tex. Sept. 29, 2009).  As such, for survival actions, "the causation analysis [is] different because that type of claim redresses any constitutional injuries suffered by the Decedent *before* his death." *Phillips*, 311 F.3d at 374 n.1.  The Texas Survival Statute simply "preserves a claim for the estate rather than creating a new cause of action for those surviving the decedent." *Pluet v. Frasier*, 355 F.3d 381, 384 (5th Cir. 2004); TEX. CIV. PRAC. & REM. CODE ANN. § 72.021.

With respect to Plaintiffs' wrongful death claims, nothing before the Court suggests that Bryant engaged in any excessive force during the raid, or even fired any shots at the Decedents.  Instead, Plaintiffs argue that Bryant caused the Decedents' deaths by failing to intervene in Goines fraudulently obtaining the Harding Street warrant. *See* Doc. #333 at 15.  However, while Bryant's alleged failure to intervene may have "'reduced [the Decedents'] chance of survival by some lesser degree,'" this is "not sufficient" to show causation under Texas' wrongful death statute. *See De Paz Gonzalez v. Duane*, No. 21-11258, 2023 WL 5769339, at *5 (5th Cir. Sept. 6, 2023) (quoting *Slade*, 814 F.3d at 264–65).  Therefore, the Court finds Plaintiffs have failed to raise a fact issue as to whether Bryant caused the Decedents' deaths for purposes of their wrongful death claim.

As to Plaintiffs' survival claims, Bryant does not contest that Plaintiffs have met the standing requirements under the Texas Survival Statute. Instead, Bryant appears to seek summary judgment on Plaintiffs' survival claim as though it is an independent cause of action. *See* Doc. #314 at 12. However, as the Court has recounted above, the Texas Survival Statute does not "creat[e] a new cause of action." *Pluet*, 355 F.3d at 384. As such, to the extent that Plaintiffs intend to bring independent "survival" claims, summary judgment is granted because Texas does not provide for such a claim. However, to the extent Plaintiffs are merely using the Texas Survival Statute to bring their Section 1983 claims against Bryant on behalf of the Decedents, summary judgment is denied.

### e.    The City's Motions for Summary Judgment

The City has moved for summary judgment with respect to all of Plaintiffs' Section 1983 municipal liability claims. Doc. Nos. 305, 308. In addition, the City seeks summary judgment on Plaintiffs' state law wrongful death and survival claims. *Id.* A municipality is a "person" subject to suit under Section 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The elements of a municipal liability claim under Section 1983 are: (1) a policymaker, (2) an official policy or custom, and (3) "a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

There are several ways to show a "policy or custom" for purposes of a municipal liability claim. For instance, "[t]he existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Alternatively, "the plaintiff may demonstrate a persistent widespread practice of city officials or employees . . . so common and well settled as to constitute a custom that fairly represents municipal

43

policy." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (internal quotations and citation omitted). In addition, "a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008). A municipal entity may also be held liable for failure to train, supervise, or discipline. *See, e.g., Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (failure to train and supervise); *Verastique v. City of Dallas, Tex.*, 106 F.4th 427, 432 (5th Cir. 2024) (failure to discipline).

In this case, Plaintiffs have asserted municipal liability claims against the City based on (1) excessive force during the raid and (2) lack of probable cause to obtain the search warrant. Doc. Nos. 48, 49. The Court will evaluate each category of Plaintiffs' claims below.

### 1. Excessive Force

With respect to their claims based on excessive force, Plaintiffs assert two main theories of municipal liability: (1) failure to discipline and (2) ratification.[9] *See* Doc. #330 at 31–51. The City argues summary judgment is warranted on Plaintiffs' claims because Plaintiffs cannot show that (1) an official policymaker acted with deliberate indifference, or (2) any HPD policy or custom that authorized excessive force.[10] *See* Doc. #308 at 5–8.

---

[9] The Court notes that Plaintiffs' Amended Complaints assert several other theories of municipal liability, such as official policy, failure to train, failure to supervise, and failure promulgate adequate policies—all of which the City sought summary judgment on. *See* Doc. #308 at 3. In addition, Plaintiffs' Amended Complaints contained theories of liability based on the use of force against the Decedents' dog, which the City also moved for summary judgment on. *See* Doc. #48 ¶ 144; Doc. #49 ¶ 48; Doc. #308 at 59. Plaintiffs failed to address or otherwise defend any of these claims in their Response to the City's summary-judgment motion, and therefore those claims are deemed abandoned and dismissed. *See* Doc. #330; *Burrell v. PTCAA Texas, L.P.*, No. 4:21-CV-3846, 2023 WL 3006662, at *2 (S.D. Tex. Apr. 19, 2023) ("A party's failure to respond to arguments raised in a motion for summary judgment constitutes waiver or abandonment of those issues at the district court level.").

[10] The City also argues that Gallegos' use of force was not excessive or unreasonable, which would preclude Plaintiffs' excessive force claims against the City. *See* Doc. #308 at 3. However, the

### i.  Failure to Discipline

Plaintiffs claim that the City had a policy of not disciplining officers who commit excessive force. Doc. #330 at 31.  To prevail on a failure to discipline claim, Plaintiffs must show (1) the City failed to discipline its employees, (2) a causal connection between the failure discipline and the alleged constitutional violation, and (3) the failure to discipline amounted to deliberate indifference. *See Verastique*, 106 F.4th at 432.  In order to show a policy of failing to discipline, plaintiffs must "almost always show[] 'a pattern of abuses' by . . . undisciplined . . . employees." *Aviles v. Saldivar*, No. 4:22-CV-03571, 2023 WL 5487668, at *4 (S.D. Tex. Aug. 23, 2023) (quoting *Piotrowski v City of Houston*, 237 F3d 567, 581–82 (5th Cir 2001)). "This demonstration of a pattern matters for establishing not only an official policy (as required for all *Monell* claims), but also deliberate indifference (as required for all claims for failure to discipline, train, or supervise in particular)." *Id.*

There are, however, limited circumstances in which a plaintiff can establish a policy of failure to discipline *without* demonstrating a "systemic" pattern. *Id.*  Instead, "a single decision by a policymaker not to discipline, train, or supervise a specific officer may, in limited circumstances, constitute an official policy and thus set part of the predicate for municipal liability on such a theory." *Id.*; *see also Brown v. Bryan Cnty., OK*, 219 F.3d 450, 459 (5th Cir. 2000) (noting that liability under Section 1983 "can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations"). However, "where a single decision is the basis of" a failure to discipline claim, deliberate indifference "is particularly difficult to establish." *Aviles*, 2023 WL 5487668, at *5.  Rather than demonstrating a pattern of

---

Court already determined that fact issues exist as to whether Gallegos used excessive force during the raid. *Supra* pp. 19–27.  As such, the City is not entitled to summary judgment on this basis.

45

similar unconstitutional violations, a plaintiff must instead rely on the "single incident exception." *Id.*; *see also Valle*, 613 F.3d at 549. As the Court described in evaluating Gonzales' Motion for Summary Judgment, the single incident exception is "extremely narrow" and requires the plaintiff to prove that "the highly predictable consequence of a failure to [discipline] would result in the specific injury suffered, and that the failure to [discipline] represented the moving force behind the constitutional violation." *Valle*, 613 F.3d at 549. "An injury is highly predictable only when the municipality 'failed to [discipline] its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" *Aviles*, 2023 WL 5487668, at *5 (quoting *Littell*, 894 F3d at 624–25). The duty to refrain from excessive force "has been recognized as a clear constitutional duty." *Id.*

Here, Plaintiffs advance two main arguments to show the City had a policy or custom of failing to discipline: (1) the City "had a policy of not disciplining officers who commit excessive force . . . , which led to the highly predictable consequence of excessive deadly force in this case"; and (2) the City had a policy of failing to discipline "based on its history of failing to take actions against officers for shooting unarmed citizens." *See* Doc. #330 at 31, 51. While Plaintiffs argue these are two separate bases to show the City's *policy* for purposes of their municipal liability claims, Plaintiffs must demonstrate that the City acted with deliberate indifference under either theory. And to show deliberate indifference, Plaintiffs rely solely on the single incident exception. *Id.* at 56. In essence, Plaintiffs argue that Gallegos' use of excessive force was a highly predictable consequence of the City's failure to discipline Gallegos and/or other officers regarding their duty not to use excessive force. *Id.* at 40–42. However, the Fifth Circuit has held that the single-incident exception is "generally reserved" for cases in which the policymaker provides no training whatsoever "with respect to the relevant constitutional duty." *Littell*, 894 F.3d at 625 n.5.

The evidence before the Court demonstrates that Gallegos received substantive training on both the use of force and execution of search warrants. For instance, HPD officers—including Gallegos—were required to receive training that met or exceeded TCOLE standards. Doc. #309, Ex. 11 at 2. HPD officers attend required trainings where they receive instruction on use of force, deadly force, and de-escalation. *Id.* This instruction occurs during an officer's initial training courses, as well as on a yearly basis thereafter. *Id.* at 4. Gallegos specifically received hundreds of hours of training between January 2016 and January 2019, which included courses on use of force, warrant development and execution, and de-escalation techniques. Doc. #308, Ex. 8 at 3–5. Given that Gallegos received substantive training on use of force, and because the Fifth Circuit has time and again emphasized its reluctance to expand or rely upon the single incident exception, the Court finds that Plaintiffs have failed to raise a fact issue regarding the City's deliberate indifference as it relates to Gallegos' alleged use of excessive force. The City is therefore entitled to summary judgment on Plaintiffs' failure to discipline claims.

### ii. Ratification

Next, Plaintiffs argue that the City is liable because former Chief Acevedo ratified Gallegos' alleged unlawful use of force against the Decedents. Doc. #330 at 42–50. "Ratification in this context requires that a policymaker knowingly approve a subordinate's actions *and the improper basis for those actions*. Otherwise, unless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality." *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 228 (5th Cir. 2020) (unpublished) (citations omitted) (emphasis added); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Thus, in order to prevail under a ratification theory, "a clear prerequisite is knowing approval by a policymaker of both conduct and its underlying,

47

improper basis." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020).

However, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009). "Further, good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017). The Fifth Circuit has also limited ratification theory to "extreme factual scenarios." *See, e.g., Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 796–97 (S.D. Tex. 2013); *Winzer v. Kaufman Cnty.*, No. 3:15-CV-01284-N, 2023 WL 2530861, at *7 (N.D. Tex. Mar. 14, 2023), *aff'd*, No. 23-10383, 2024 WL 1329965 (5th Cir. Mar. 28, 2024). As such, ratification "'has not enjoyed wide application in this Circuit,' and it is especially rare in the excessive force context." *Winzer*, 2023 WL 2530861, at *7 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998)).

Plaintiffs argue that Acevedo ratified Gallegos' conduct when, in public statements after the raid, he stated that officers "had reason" to investigate 7815 Harding Steet and there was "probable cause." Doc. #349, Ex. 1 at 02:04–02:37; Doc. #336, Ex. 52 at 78–82; Doc. #330 at 45. In addition, Plaintiffs assert that ratification is supported by HPD's deficient disciplinary policy, wherein the Chief of Police "reviews every excessive force shooting case" and "uniformly finds these shootings justified." *Id.* at 47. Plaintiffs also argue that IAD failed to conduct a legitimate review of Gallegos' conduct after the raid and "simply took the word of the officers as true." *Id.*

First, with respect to Acevedo's comments made to the public, the Court notes that such comments concern the validity of obtaining the search warrant and do not concern the use of force against the Decedents. As such, these comments to not demonstrate that Acevedo approved *Gallegos'* conduct and the alleged improper basis for that conduct. *See Covington*, 812 F. App'x

48

at 228.  Second, as to Acevedo determining that Gallegos' use of force was justified after the raid, "[t]he Fifth Circuit has explicitly held that a municipality is not liable under the ratification theory where a sheriff accepts his deputies' version of events, so long as 'that version did not show that the deputies' actions were manifestly indefensible.'" *James v. Harris Cnty.*, 508 F. Supp. 2d 535, 554–55 (S.D. Tex. 2007) (quoting *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986)), *aff'd*, 577 F.3d 612 (5th Cir. 2009).  And, as the Court discussed in evaluating Gallegos' Motion for Summary Judgment, his use of force would be justified under his version of events.  *Supra* pp. 21, 26–27.  Finally, with respect to the IAD's investigation, "a department's investigation, report, and conclusions regarding an incident do not amount to ratification."  *Madden v. Gribbon*, No. 3:21-CV-1168-S, 2022 WL 4360558, at *9 (N.D. Tex. Sept. 20, 2022).  Thus, none of Plaintiffs' arguments support their ratification theory, and they have failed to raise a genuine question of fact on this issue.  As such, the Court grants summary judgment on this claim.

### 2.   Lack of Probable Cause

Next, with respect to their claims premised on lack of probable cause for the search warrant, Plaintiffs rely on the following theories of municipal liability: (1) failure to supervise Goines[11], (2) the City's "custom of minimal supervision and oversight concerning narcotics officers," (3) the City's "express policies" allowing officers to "unilaterally obtain no-knock warrants without checks into their underlying investigations," and (4) ratification.[12]  *See* Doc. #331 at 24–41.  The

---

[11] Plaintiffs' Response cursorily argues that HPD failed to "supervise *and/or discipline* Goines," but does not delineate these claims.  Doc. #331 at 24 (emphasis added).  Because Plaintiffs only substantively address their claim as a failure to supervise claim, and the analysis for failure to supervise and failure to discipline claims is the same, the Court will focus on the adequacy of Goines' supervision.

[12] The Court notes that Plaintiffs' Amended Complaints assert several other theories of municipal liability for their probable cause claims against the City, such as failure to train and failure to promulgate adequate policies.  Doc. #48 ¶¶ 128, 167; Doc. #49 ¶¶ 97, 176. The City moved for summary judgment on these issues, but Plaintiffs did not respond to these arguments or otherwise

Court will address each of these theories of municipal liability in turn.

### i.   Failure to Supervise

First, Plaintiffs argue that HPD failed to adequately supervise Goines. *Id.* at 24–28.   To prevail on their failure to supervise claims, Plaintiffs must show (1) the City failed to supervise Goines, (2) a causal connection between the failure supervise and the alleged constitutional violation, and (3) the failure to supervise amounted to deliberate indifference. *See Verastique*, 106 F.4th at 432.   The City argues that summary judgment is warranted on Plaintiffs' failure to supervise claims because (1) Goines was adequately supervised in obtaining the Harding Street warrant and (2) Plaintiffs cannot establish deliberate indifference on the part of the City's policymaker, Acevedo.   Doc. #305 at 31–33.

The Court first turns to whether Plaintiffs have raised a fact issue as to whether Goines was adequately supervised.   Notably, HPD's post-incident investigations revealed that Goines and his supervisors often flouted SOPs in general, and that several supervisory oversights occurred in the 7815 Harding Street investigation specifically.   For instance, though a case tracking sheet—"a compilation of investigative information used for statistical and case tracking purposes"—is "typically done before running a warrant," there "was not a case tracking sheet for Harding Street." Doc. #336, Ex. 11 at 18.   This is unsurprising, given that a post-raid audit revealed twelve instances wherein Goines generated case tracking sheets "days and even weeks after the investigations began," which Gonzales recognized as "an excessive amount of time." *Id.*   Moreover, case tracking sheets were only reviewed by Gonzales when "Blue Backs"—case files containing documentation related to a particular search warrant—were turned in. *Id.*   However, Blue Backs,

---

defend their claims for failure to train and failure to promulgate adequate policies. *See* Doc. #305 at 33; Doc. #331.   As such, those claims have been abandoned and are dismissed. *See Burrell*, 2023 WL 3006662, at *2.

50

as a matter of course, were only turned in *after* the execution of search warrants. Doc. #306, Ex. 23 ¶ 19.

Goines also received minimal supervision with respect to controlled confidential informant drug buys. Indeed, when asked "if there was any way for a supervisor to verify that the controlled buy was taking place per policy," Gonzales stated that, in general, a supervisor simply "took the case agent's word that the controlled buy was done within policy." Doc. #336, Ex. 11 at 19. And while Gonzales recognized that "a supervisor *could* call the partner of the case agent to verify he or she was with them during the controlled buy" to ensure procedures were being followed, nothing suggests such safeguards occurred in this case. *Id.* (emphasis added). In addition, when Reyna was asked if he did anything to verify information listed in a tactical plan or warrant, he "admitted that his agents did not give him their [confidential informant] receipts for funds prior to running warrants." *Id.* at 22. Moreover, when Wood was questioned regarding how sergeants "check the accuracy" of warrants, he said they simply have an "open atmosphere in the office." *Id.* at 29. But in this case, Wood "did not know that Officer Goines had made a controlled buy prior to the day of the warrant." *Id.* at 30. Wood further stated that Goines "should have completed a report the day he made the buy or had at least some sort of documentation regarding the buy." *Id.*

To understand the importance of these shortfalls, one need not look further than Squad 15 supervisors' own words. When asked whether "the problems discovered from the Harding Street investigation could have been prevented by better supervision," Gonzales "stated that Officer Goines should have made more effort to provide his supervisor with information and the supervisor should have asked more questions of Officer Goines." Doc. #336, Ex. 11 at 21. Wood stated that "if there was a system in place where they had the case tracking sheet and it was in the SOP, they would have reviewed that stuff before the warrant" and "if there was a system in place such as

51

guidelines or forms that the case agents filled out at the beginning of an active case[,] that would keep the supervisors informed and let them know what was going on." *Id.* at 31. As Wood described, when "everything falls back on the case tracking sheets that the officers are creating, it leaves the officers to police themselves to notify everybody what they're doing and it leaves a lot of room with no oversight for the officers to not be doing what they're supposed to do and the supervisors have no way to find out." *Id.* at 33.

Plaintiffs have also put forth evidence suggesting Goines took advantage of the lack of oversight long before the tragic events at 7815 Harding Street. Goines lied on *six* other occasions to obtain no-knock search warrants. He had untagged drugs in his car and on his desk. And a post-raid audit revealed that Goines consistently flouted SOPs. *See* Doc. #305, Ex. 5 at 20. As just one example, from 2016 to 2019, Goines did not timely tag narcotics 48% of the time. Doc. #305, Ex. 5 at 20. Ultimately, the HPD audit concluded: "The audit revealed the necessity to place additional emphasis on supervisory oversight, confidential informant handling, and changes to the department's policies and procedures on cases involving search warrants." *Id.* at 61. Given the weight of evidence indicating Goines received minimal supervision, the Court finds that a reasonable jury could conclude that Goines' supervisors failed to adequately supervise him.

The next question is whether Plaintiffs have raised a fact issue with respect to deliberate indifference. As the Court has already recounted, deliberate indifference is a stringent standard of fault that generally requires a plaintiff to demonstrate a pattern of constitutional violations that are similar to the plaintiff's complained-of constitutional violation. *Est. of Davis*, 406 F.3d at 383. In rare circumstances, a plaintiff may instead rely on the single incident exception "if the constitutional violation was the highly predictable consequence of a particular failure to train" or supervise. *Davidson*, 848 F.3d at 397 (internal quotations and citations omitted).

52

Though the Court soundly fcondemns the City for the pervasive supervisory shortfalls within Squad 15, under the law of this Circuit, Plaintiffs have not raised a fact issue with respect to the City's deliberate indifference. First, the only relevant evidence of a "pattern of similar constitutional violations" are the six other instances wherein Goines lied on search warrant affidavits prior to the Harding Street raid. But there is no evidence to suggest that the City, or Acevedo, was aware of Goines' problematic history. And six instances by one officer—though certainly concerning—does not constitute a "pattern" for purposes of demonstrating deliberate indifference in the Fifth Circuit. *See Peterson*, 588 F.3d at 851 (holding that "27 complaints . . . were insufficient to establish a pattern of excessive force"); *Pineda*, 291 F.3d at 329 (holding eleven incidents was insufficient to show a pattern); *Jeffrey v. City of Houston*, No. 4:23-CV-00069, 2024 WL 1313897, at *4 (S.D. Tex. Mar. 27, 2024) (dismissing municipal liability claims against the City because, though the plaintiff alleged "162 instances of the filing of false affidavits or testimony, . . . the factual allegations concern the conduct of just one officer in one squad in a department of thousands of officers: Goines"). Second, with respect to the single incident exception, the Court has already determined that Plaintiffs have failed to demonstrate that Goines received *no* training or supervision. *Supra* p. 35. As such, Plaintiffs have not shown that this case presents the "extremely narrow" circumstance wherein the single incident exception applies. Because Plaintiffs have not raised a fact issue with respect to deliberate indifference, summary judgment is granted with respect to their failure to supervise claims against the City.

### ii.  Official Policy or Custom

Separate from their failure to supervise theory, Plaintiffs have also attempted to confer municipal liability by alleging the City "had a custom of minimal supervision and oversight concerning narcotics officers, and its express policies allowed them to unilaterally obtain no-knock

53

warrants without checks into their underlying investigations." Doc. #331 at 38. However, even under this theory, Plaintiffs still must show that the City acted with deliberate indifference in order to confer municipal liability. And, for the reasons stated with respect to Plaintiffs failure to supervise claim, the Court has determined that Plaintiffs have failed to meet this stringent standard of fault. *Supra* pp. 52–53.

### iii. Ratification

Next, Plaintiffs argue that the City ratified Goines' unlawful conduct. Doc. #331 at 39–41. Ratification is reserved for a policymaker's "knowing approval . . . of both conduct and its underlying, improper basis." *Taylor*, 488 F. Supp. 3d at 537. Here, Plaintiffs point to a statement by Acevedo in November 2019, after he already received reports that Goines fraudulently obtained the Harding Street warrant, that there was "probable cause" to enter the Decedents' home. Doc. #336, Ex. 52 at 78–82. Since making this statement, Acevedo has testified that he was referencing that HPD had reason to "investigate" 7815 Harding Street because the Decedents' neighbor had made complaints. *Id.* at 84–85. While Acevedo's February 2019 statement appears poorly worded, it does not indicate that he approved of Goines lying on an affidavit to fraudulently obtain a search warrant. Indeed, the record reflects that Acevedo condemned Goines' conduct, going as far as to call it a "serious criminal violation" in February 2019. Doc. #349, Ex. 47 at 11:07–11:20. As such, the Court finds that Acevedo's statement does not rise to the level of ratification. *See Taylor*, 488 F. Supp. 3d at 537 (noting that, under the ratification theory, the policymaker must approve the *wrongful basis* of an officer's misconduct). Thus, the Court finds summary judgment should be granted on Plaintiffs' ratification claims.

### 3. State Law Claims

Finally, the City has moved for summary judgment on Plaintiffs' state law wrongful death

54

and survival claims based on governmental immunity. Doc. #305 at 35; Doc. #308 at 64–65. "A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity." *Forgan v. Howard Cnty., Tex.*, 494 F.3d 518, 520 (5th Cir. 2007). "The TTCA has a limited immunity-waiver provision, removing governmental immunity for 'personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.'" *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 101.021(2)). However, "[t]he TTCA does not waive immunity for intentional torts, such as assault, battery, false imprisonment, false arrest, and civil conspiracy." *Carr v. City of Spring Valley Vill.*, No. CV H-18-2585, 2019 WL 1276100, at *13 (S.D. Tex. Mar. 20, 2019), *aff'd*, No. 19-20373, 2022 WL 1553539 (5th Cir. May 17, 2022). Moreover, "[a]ll common law tort claims alleged against a governmental unit are presumed to be governed by the TTCA regardless of whether the TTCA waives immunity for the claim[s] at issue." *Id.*

Because Plaintiffs' wrongful death and survival claims do not "fall within the TTCA's limited waiver of governmental immunity," summary judgment is granted on these claims. *See id.* In addition, to the extent that Plaintiffs argue that their wrongful death and survival claims are derivative of their other Section 1983 causes of action, summary judgment is granted because the Court has already determined all of Plaintiffs' Section 1983 municipal liability claims fail as a matter of law. *See* Doc. #330 at 56.

## IV.    Conclusion

In conclusion, the Court finds that the City's Motion to Exclude (Doc. #303) is hereby DENIED. Gallegos' Motion for Summary Judgment (Doc. #318) and Motion to Strike (Doc. #362) are also DENIED. The Motion for Judgment (Doc. #310) is GRANTED as it pertains to

Plaintiffs' conspiracy and state law claims against Gonzales, but DENIED as MOOT as it pertains to the Individual Officers. Gonzales' Motion for Summary Judgment (Doc. #312) is also GRANTED.

Bryant's Motions for Summary Judgment (Doc. Nos 313, 314) are GRANTED IN PART. Specifically, summary judgment is GRANTED as to Plaintiffs' Section 1983 claims against Bryant based on excessive force. Moreover, Bryant's Motions for Summary Judgment are GRANTED as to Plaintiffs' Section 1983 claims based on lack of probable cause to the extent those claims are premised on direct liability, but summary judgment is DENIED to the extent those claims are premised on failure to intervene. Summary judgment is also GRANTED as to Plaintiffs' Section 1983 conspiracy and wrongful death claims against Bryant. With respect to Plaintiffs' survival claims against Bryant, summary judgment is GRANTED only to the extent Plaintiffs intend to bring *independent* survival claims. Plaintiffs are, however, permitted to use the Texas Survival Statute to bring their Section 1983 claims against Bryant on behalf of the Decedents.

In addition, the City's Motions for Summary Judgment (Doc. Nos. 305, 308) are hereby GRANTED. The City's Motion to Seal (Doc. #374) is also GRANTED. Because the Court has granted summary judgment on all of Plaintiffs' claims against the City, the City's Motion in Limine (Doc. #364), Brief in Support (Doc. #366), and Motion to Bifurcate Trial (Doc. #373) are DENIED as MOOT. Plaintiffs' Objections to the City's Trial Exhibit List (Doc. #378), which they filed as a motion, is also DENIED as MOOT. Finally, because all claims against Gonzales and the Individual Officers have been dismissed, their Motion in Limine (Doc. #368) is also DENIED as MOOT.

Based on the foregoing, the following claims remain pending: (1) Plaintiffs' Section 1983 excessive force claims against Gallegos, as well as their derivative wrongful death and survival

56

claims; (2) Plaintiffs' Section 1983 failure to intervene claims against Bryant premised on lack of probable cause for the search warrant, as well as their derivative survival claim; (3) Plaintiffs' Section 1983 excessive force and lack of probable cause claims against Goines, as well as their state law wrongful death and survival claims.

It is so ORDERED.

**MAR 3 1 2025**

Date

The Honorable Alfred H. Bennett
United States District Judge

57