```
 1
 2                    IN THE UNITED STATES DISTRICT COURT
 3                    FOR THE SOUTHERN DISTRICT OF TEXAS
 4
 5   Clifford F. Tuttle, Jr., et  )
     al,                          )
 6                                )
                   Plaintiff,     )   Civil Case No. 4:21-cv-00270
 7                                )
     vs.                          )
 8                                )
     City of Houston, et al,      )   Tuesday, April 15, 2025
 9                                )
                   Defendants.    )
10   _____
11
12                    TRANSCRIPT OF MOTION HEARING
                    HONORABLE ALFRED H. BENNETT PRESIDING
13                     UNITED STATES DISTRICT COURT
14
15
16
17
18
19
20
21
22
23   Official Court Reporter:     Donna Prather
                                  515 Rusk St., #8004
24                                Houston, TX  77002
25   Proceedings taken by Certified Stenographic Reporter;
     transcribed using Computer-Assisted Translation
```

```
 1                        A P P E A R A N C E S

 2   For Plaintiff Jo Ann and John Nicholas:
                                Michael Patrick Doyle
 3                              Doyle LLP
                                3401 Allen Parkway, Ste 100
 4                              Houston, TX 77019

 5   For Plaintiffs Tuttle:
                                Boyd Smith
 6                              The Gallagher Law Firm
                                2905 Sackett St.
 7                              Houston, TX  77098

 8   For Defendant City of Houston:
                                Christy L Martin
 9                              City of Houston
                                900 Bagby, 4th Floor
10                              Houston, TX 77002

11                              Harold Al Odom, III
                                Odom Law Firm
12                              601 Sawyer, Suite 225
                                Houston, TX 77007
13
     For Defendant Gerald Goines:
14                              Dwayne Richard Day
                                Attorney at Law
15                              3401 Allen Pkwy, Suite 100
                                Houston, TX 77019
16
     For Defendant Steven Bryant:
17                              David A. Nachtigall
                                Attorney at Law, PLLC
18                              1545 Heights, Ste. 100
                                Houston, TX 77008
19
     For Defendant Felipe Gallegos:
20                              John MacVane
                                Rusty Hardin and Associates
21                              1401 McKinney, Ste 2250
                                Houston, TX 77010.
22
     For Defendant Eric Sepolio:
23                              Melissa Azadeh
                                City of Houston Legal Department
24                              P.O. Box 368 Houston
                                Houston, TX 77002-0368
25
```

```
 1                    A P P E A R A N C E S

 2   For Defendant Nadeem Ashraf and Manuel Salazar:
                                Michelle Charlene Taylor
 3                              City of Houston
                                900 Bagby St., 3rd Floor
 4                              Houston, TX 77002

 5   For Defendant Thomas Wood and Clemente Reyna:
                                Alexander Edward Garcia
 6                              City of Houston
                                900 Bagby Street
 7                              Houston, TX 77002

 8   For Defendant City of Houston:
                                Alistair B. Dawson
 9                              Beck Redden LLP
                                1221 McKinney, Ste 4500
10                              Houston, TX 77010

11   Also Present:              Arturo Michel, City Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          (Proceedings commenced at 9:59 a.m.)
 2              THE COURT:  Good morning.  Please be seated.
 3              Cause Number 4:21-cv-270.  Tuttle, et al, versus
 4    City of Houston, also consolidated with the Nicholas case.
 5              MR. DOYLE:  Mike Doyle here for the family of Regina
 6    Nichols.
 7              MR. SMITH:  Boyd Smith for the Plaintiffs.
 8              THE COURT:  For the defense.
 9              MR. ODOM:  Al Odom for the City of Houston,
10    Your Honor.  And Mr. Dawson is on the way.  They had an issue
11    where he was locked in his building due to a gas leak, but he
12    called ten minutes ago and said he was on the way.
13              THE COURT:  Very well.
14              MR. MACVANE:  Good morning, Your Honor.  John
15    MacVane for Officer Felipe Gallegos.
16              MR. DAY:  Good morning, Judge.  Dwayne Day on behalf
17    of Gerald Goines.
18              MR. GARCIA:  Alexander Garcia on behalf of former
19    Defendant Wood and Reyna.
20              MS. TAYLOR:  Good morning, Your Honor.  Michelle
21    Taylor on behalf of former Defendant Ashraf and Salazar.
22              MR. NACHTIGALL:  David Nachtigall on behalf Steven
23    Bryant.
24              MS. AZADEH:  Melissa Azadeh on behalf of Cedell
25    Lovings, Oscar Pardo, and Eric Sepolio.
```

1          MS. MARTIN:  Christy Martin for Gonzales and Medina.

2          THE COURT:  Very well.

3          MR. ODOM:  Judge, we have our City Attorney here,

4     Mr. Michel, here also.

5          THE COURT:  Counsel.

6          Well, counsel, this is a motion hearing and a status

7     conference.  As to the motion, as the parties note, on

8     March 31st the Court entered a order resolving several

9     outstanding motions.  The question now becomes whether that

10    order -- it was filed under seal -- should be unsealed.

11         The Court understands that a lot of the proceedings,

12    a lot of the filings in this court have been filed under seal

13    given the graphic nature of some of the references in the

14    pleadings.

15         Also, the Court was very mindful of the pending

16    criminal cases that could be affected by various testimony or

17    attachments in the pleadings.  But now that the Court has

18    resolved some of those motions, ample time has passed for the

19    criminal proceedings, the Court is at a crossroads with having

20    filings to be continually sealed in this case.

21         So the question now becomes whether or not the Court

22    should unseal, first of all, it's order from March the 31st,

23    and perhaps other filings as well.

24         So the Court will hear various comments from the

25    parties on that particular portion.

 1          But before we do, let's see what the cat drug in.

 2          MR. DAWSON:  Your Honor, my apologies.  Ironically,

 3    I talked to Mr. Michel yesterday, and I told him, I said, "The

 4    Court always starts on time, so do not be late."

 5          And of course, I go to get in the elevator at 9:15,

 6    and there was a gas leak on the 35th floor, and they shut down

 7    all the elevators and told us to stay in place; so my

 8    apologies for being late.

 9          THE COURT:  Mr. Odom offered up your explanation

10    before your arrival, and that's understood.

11          MR. DAWSON:  Thank you, Your Honor.

12          THE COURT:  Very well.

13          First, counsel for the plaintiff, on the unfiling of

14    the Court's March 31st order and perhaps other filings as

15    well.

16          MR. DOYLE:  Good morning.  Your Honor, Mike Doyle

17    again for the family Regina Nicholas.

18          I would remind the Court the very first motion that

19    we filed asking for relief in this court, doc 44, was our

20    motion for protective order which provided for a protective

21    order that we believe clearly complied with the constitutional

22    and Fifth Circuit imperatives for open courts and actually

23    made it difficult to do what has then happened with this

24    Court's order as it entered which allowed for and, in fact, we

25    now have wholesale sealing of every single bit of the summary

1    judgment record, every deposition statement from what's your

2    name to the beginning, every document produced, every single

3    piece of evidence about, for example, whether when Chief --

4    former Chief Acevedo stood up and made claims, whether those

5    were true or false claims known at the time, every single bit

6    of that because of the manner in which the order has been, I

7    believe, used by the City improperly is sealed.  And that is

8    wholly inconsistent with what I know this Court recognizes is

9    the fact that this is a federal court with open proceedings.

10            And to address the Court's first question, should

11   you unseal the order and keep every bit of evidence underlying

12   that was reviewed also continued secret in these proceedings.

13   There's a reason why they have secret court proceedings and

14   announce the verdict in Russia that we don't do it here.  And

15   I know the Court had a chance to see our quote from the *Lay*

16   case, but, you know, Americans -- this system doesn't work

17   when things of important public interest are sealed.

18            At this point we've scrupulously followed the

19   Court's order.  I know it was reminded in August 21st, 2021,

20   when the Court entered its order which the City then used for

21   wholesale confidentiality sealing of every bit of evidence

22   from that point forward because that order allowed that if

23   they were willing to do that, to do it.  That we should not in

24   any way reveal anything, and it hasn't.

25            But I think the time has passed at this point for

1    the actual evidence, not just the highlights, to be part of

2    the public record.  Because at this point we know, for

3    example, that we can look at the *Baker* case in Judge Lake's,

4    because of his order, know that through that time there were

5    109 homicides.  Every single one by an officer found

6    justified.  Every single shooting of an officer through the

7    date of the *Baker* case was found justified.  That answer is

8    something that is completely sealed from the public today by

9    the order that's entered and as applied by the City now.

10           We know, for example, the manner in which the

11   investigations are done or not done, whether there's any

12   change or not.  We know how it was done in the *Baker* case,

13   what was found by that court.  We have no way -- and the City

14   knows how it is, and its all been declared secret.

15           We know, for example, whether there were changes in

16   stories repeatedly by folks that give press conferences

17   related to this case.  That's all completely secret at this

18   point and has remained secret because of the way the order has

19   been applied.  And there's no other reason than because of

20   that.

21           THE COURT:  So short answer is you're in favor of

22   unsealing the Court's order.

23           MR. DOYLE:  No.  I'm in favor of unsealing -- which

24   our motion was filed back in October six months ago -- of

25   unsealing the summary judgment record, because I believe it

1    would be less than adequate, in fact inconsistent -- what I

2    talked about at the get-go -- where we have a trial that's

3    secret and then the verdict is announced.  I don't believe

4    that's the way things are consistent with the Constitution,

5    with our requirements, with the way it's supposed to work in

6    this country where the verdict is released but the trial is

7    secret.  Because, essentially, a summary judgment is a trial.

8            THE COURT:  Well, maybe I'm -- maybe we're missing

9    each other.

10           As to the Court's March 31st order, are you in favor

11   of sealing it or having it unsealed?

12           MR. DOYLE:  Only unsealed if the relief requested in

13   October for the summary judgment -- if it's just a matter of

14   only -- if we're going to go up on appeal, and we're going to

15   do it on a sealed record, then it should be sealed.  Period.

16           If the Court, as I believe the law requires and have

17   noted since '21 when this case was filed, unseals the record

18   for stuff that's not confidential properly that's not sealed,

19   then that's a different situation.

20           But if the question is just the order, I think we're

21   clear in our indication as per the Court's request last week,

22   we don't believe that's consistent with the law.

23           THE COURT:  Do you have a list?  Because, obviously,

24   you reference 2021.  We're in 2025.  Numerous documents have

25   been filed.  Are you prepared to present the Court with a list

1    of documents that you believe should be unsealed consistent

2    with the argument you've just made?

3        MR. DOYLE:  The documents contained in the summary

4    judgment record, that's the whole point, because those

5    documents should not be sealed.  They never should have been

6    sealed.  They should be available to the public.  So the

7    documents contained as evidence within the summary judgment

8    record that this Court relied upon should be.  Period.

9        We're not -- whatever else they produced, that's for

10   another day.  But at this point, that's a very delineated,

11   clear, mandated record.

12       And I'll point out one other thing.  I know that the

13   Court was appropriately concerned about *Garrity*.  It delayed

14   production in this case by eight months at the very beginning.

15   But at this point, aside from the fact that the U.S. Attorney

16   has zero interest and has made it clear they're not

17   investigating what happened inside that home anymore, they're

18   not charging anybody anymore.  They can't even go to trial on

19   a case that happened over six-and-a-half months ago with a

20   cooperating witness.  The district attorney has dismissed all

21   charges and made it clear.

22       *Garrity* simply says the prosecutors can't use those

23   statements.  It does not say those remain out of public view

24   forever.  And I think that's something that goes to the fact

25   that we have a record.  Because of the way the order has been

```
 1    used -- and, obviously, we disagreed about form of the
 2    order -- because it allowed wholesale from taking my name in
 3    the beginning by just saying it on the record to be sealed.  I
 4    believe that the time has ended for that order to be applied
 5    in this manner inconsistent with the way our courts need to
 6    work.
 7              THE COURT:  Thank you, sir.
 8              MR. DOYLE:  Thank you.
 9              THE COURT:  Counselor.
10              MR. SMITH:  Your Honor, Boyd Smith with the Tuttle
11    Plaintiffs.  The Tuttle Plaintiffs agree completely with
12    Mr. Doyle's argument and would join them.
13              THE COURT:  Yes, sir.
14              MR. DAWSON:  Your Honor, Alistair Dawson for the
15    City of Houston.  If I could address the unsealing of the
16    summary judgment record first and then get to the Court's
17    order, if that's permissible with the Court.
18              As the Court knows, our summary judgment filing was
19    voluminous, and it included a lot of information that is
20    highly confidential.  And I'd just like to touch on a few of
21    them.  For example, the standard operating procedures of how
22    the Houston Police Department operates, those are confidential
23    information.  I mean, that's confidential information.  It's a
24    blueprint of how HPD operates in certain situations.
25              I am certain that there are criminals throughout
```

1   Houston and elsewhere that would love to have access to the

2   blueprint of how HPD operates.  And it's, obviously, very

3   important to keep those standard operating procedures

4   confidential.

5         We included in our filing training materials.  How

6   HPD trains its officers to handle various situations.  How

7   they train them to execute search warrants.  What to do if the

8   suspect does this or that or the next thing.  Again, it would

9   be highly problematic and highly dangerous, frankly, if

10  criminals could have access to HPD's training information.

11        The summary judgment record includes the names of

12  confidential informants and their contact information and

13  their telephone numbers, the confidential informants that were

14  interviewed and interrogated after the Harding Street incident

15  as part of the investigation that was conducted by IAD and the

16  Special Investigations Unit.

17        Obviously, that information -- if those confidential

18  informants are still working for HPD, that's highly

19  proprietary confidential information.  If they're not, it puts

20  them in harm's way.  Criminals that might have been convicted

21  because of testimony from those confidential informants would

22  then have access to their names and phone numbers and their

23  addresses.  The personnel files --

24        THE COURT:  Let me stop you there, because I want to

25  take your argument in bites.  I agree that in regards to HPD

1    training perhaps and definitely with the confidential sources

2    that that is problematic.  I'm not accustomed to those who

3    engage in criminal conduct coming down to the courthouse and

4    perusing court records to enhance their ability to conduct

5    those criminal activities, first of all.

6              Second, this Court has now entered, in its view, a

7    comprehensive order on relief requested by the parties.  This

8    Court's order, this Court's ruling, is subject to

9    interpretation by the public.  It's hard for the public to

10   gauge whether or not this Court got it right, what it did was

11   in the public interest, without review of the record.  So

12   while I'm sympathetic to your concern about making sure that

13   certain information remains confidential, there's also the

14   competing public interest to review what this Court has done.

15   And the only way that it can -- the public can properly do

16   that is to look at the information that the Court considered

17   in coming to its conclusion.  So those are two competing

18   interests that I'm now faced with.

19             And as I said earlier as you were walking through

20   the door, the Court has been very patient to allow certain

21   other courts to move forward with criminal prosecution.  This

22   case is now well over -- what? -- five years?  Six years old.

23   And what am I waiting for at this time?  What am I protecting

24   at this time?  Aside from what we agreed on when we were

25   talking about operating SOPs for the Houston Police

```
 1    Department, what am I protecting at this point?
 2              MR. DAWSON:  I think, in addition to what I've
 3    already addressed, the IAD files are, by law, confidential and
 4    should be protected.
 5              You know, Mr. Doyle says, well, there are no ongoing
 6    criminal investigations.  I don't, frankly, know that that's
 7    true, Your Honor.  I mean, there still is a federal case
 8    that's unresolved.  Officer Goines is appealing his
 9    conviction.  Officer Bryant still hasn't been sentenced.
10    There is potential for Officer Gallegos to be reindicted.
11    There is -- no one said he couldn't be reindicted.  The same
12    is true for Officer Gonzales.
13              So the criminal element -- while the Goines trial is
14    over, granted, I'm not so sure that all criminal
15    investigations are necessarily over.
16              I understand the Court's position about the Court's
17    order, and I'll get to that in a moment.
18              My point is I think it would be inappropriate for
19    the Court to wholesale unseal the entire summary judgment
20    record.
21              THE COURT:  I agree.
22              MR. DAWSON:  And if the Court wants --
23              THE COURT:  I agree.  The Court is not going to go
24    from zero to 100, but there is a --
25              MR. DAWSON:  Happy medium.
```

1        THE COURT:  -- need-to-know medium.  And the Court

2    has to find that spot.  Right now the Court feels its on zero,

3    and it's uncomfortable with that position.  But again, that

4    was in deference to allowing prosecutors and courts to move

5    forward.

6        Again, I believe that time has now passed.  And if

7    criminal prosecutions have not been undertaken at this point,

8    I think the point in time for deference has passed.  So if it

9    hasn't happened by now, sitting here waiting for another year,

10   two years, whatever the case may be, I think is inappropriate.

11       So again, I'm looking for that happy medium.

12       MR. DAWSON:  And, Your Honor, if I could just make

13   two other points and then I'll get to the Court's order with a

14   proposal for the Court's consideration.

15       In your confidentiality order that you entered back

16   in 2021, you provided a mechanism that says if anyone wants to

17   challenge the designation of documents as confidential, you

18   should follow the Court's discovery procedures and file a

19   letter with the Court.  At no time during this case has anyone

20   challenged any of the designations of confidential

21   information.

22       THE COURT:  I take issue with that, because the

23   Plaintiffs' attorneys have, since day one, have complained

24   about certain filings.  They have not, true, filed certain

25   documents with the Court, asked for a hearing on whether or

1    not something should be unsealed.  But they have stood in the

2    well of this Court repeatedly and complained about the

3    wholesale sealing of the record.  So I do take issue with that

4    position.

5         MR. DAWSON:  Okay.  The other point I would make,

6    Your Honor, is that the motion to seal the summary judgment

7    record was unopposed at the time.

8         Now, let me get to the point that I think the Court

9    really wants.  The unsealing of the order.  We believe that

10   the order can be unsealed with some redactions.  And what I

11   would like to do -- for example, the one that we pointed out

12   in our communication to the Court was to the extent that the

13   order references IAD statements made by officers, we believe

14   that that is confidential and should remain confidential.

15        The Court has asked a slightly different question

16   today.  And that is, what part of the summary judgment record

17   should be unsealed in coordination with the unsealing of the

18   Court's order so that the public would have access to that?

19        And candidly, Your Honor, I would like a day or two

20   to submit something to the Court on what we believe -- I'd

21   like to go through the summary judgment record and articulate

22   for the Court I think this has to remain confidential, this

23   does not, and provide that to the Court for the Court's

24   consideration.  And at the same time we'd be prepared to

25   submit to the Court a proposed order with the redactions that

1    we believe would need -- are appropriate for an unsealed

2    order.

3          THE COURT:  And I can tell you -- this happened to

4    me once before, and I regretted it and still regret it to this

5    day.  The Court was -- state court judge.  I entered an order

6    and the case proceeded under mass sealing of documents, and it

7    came back to bite me.  And I've since that day tried to avoid

8    that outcome.  And I kind of find myself close to that outcome

9    in this case.  Then, again, with good reason given what we

10   have here.  Not only the criminal prosecution, but the Court

11   was also very sensitive to the details regarding what happened

12   in that house to the families of the Plaintiffs.  And the

13   Court was mindful of the graphic detail and was trying to be

14   sensitive to that as well.

15         But the approach in this case has been by kind of

16   shotgun.  Hitting everything.  It's time for a rifle shot now.

17   We have to be very specific as to what remains sealed.  And

18   again, as a matter of course, without diving into it in

19   detail, when you mentioned standard operating procedures of

20   the Houston Police Department that may give away methods and

21   means, I'm sympathetic to that.  When you mentioned CIs, I'm

22   sympathetic to that.  Those are both rifle shots that you're

23   talking about very specific things.

24         If there are other specific things that perhaps you

25   and I can agree on, then I understand that.  But this

1    wholesale sealing shotgun approach, time for that has now

2    passed.  And so you mentioned you wanted some time to address

3    that, and I think that that's a fair request.

4         MR. DAWSON:  And to be candid with you, Your Honor,

5    my intention will be to go through the record and identify the

6    rifle shots of what we propose to remain sealed and the rest

7    could be unsealed and propose that to the Court for the

8    Court's consideration.

9         I haven't gone through the record.  As you know, it

10   is voluminous, but we will do so.  And whatever time period

11   the Court wants to give us in order to provide that

12   information to the Court, we'll be happy to do so.

13        THE COURT:  Thank you.  Anything else, sir?

14        MR. DAWSON:  No, Your Honor.

15        THE COURT:  Thank you.

16        MS. MARTIN:  Good morning, Judge.

17        THE COURT:  Counsel.

18        MS. MARTIN:  Christy Martin for -- particularly here

19   I wanted to talk about Gonzales, because he's in a slightly

20   different position than some of the other defendants.  A big

21   group of defendants were dismissed -- the criminal charges

22   were dismissed by the new DA Shawn Tear.  And in the public

23   disclosures talking about their dismissals, there was an

24   additional *Brady* disclosure that sort of put -- foreclosed any

25   ability for the DA to actually bring any additional charges

1    against them.

2            Unfortunately, Gonzales was sort of not in the same

3    position as them.  The charges against him were dismissed way

4    earlier.  However, there was a threat of enhanced charges

5    being brought; so he was -- oddly enough, got out of the

6    criminal case earlier but doesn't have the assurances that the

7    other defendants who got out later have.

8            And so as far as unsealing the record, the IAD

9    investigation for him should remain confidential.  And in the

10   order itself, there are certain statements attributed to

11   Gonzales that I believe came from his statements to IAD, and

12   because they were compelled on the risk of termination, there

13   is a *Garrity*.  There is a Fifth Amendment problem for those

14   specific statements.

15           I don't think Gonzales would be opposed to a

16   redacted release of the order.  And obviously, we would agree

17   that going through the summary judgment record and identifying

18   specific documents that could be unsealed.  We would certainly

19   participate in that process.

20           THE COURT:  Thank you, counsel.

21           Anyone else?

22           MR. DAY:  Judge, Gerald Goines has agreed --

23           THE COURT:  Pull your mike closer to you for

24   purposes of the court reporter.

25           Thank you.

```
1            MR. DAY:  Dwayne Day on behalf of Gerald Goines.

2   And Officer Goines has no objection to the approach addressed

3   by Alistair in approaching this from a redaction standpoint,

4   and no objection to the order.

5            I will remind the Court, Mr. Goines is still under

6   federal charges in this courthouse subject to trial in

7   September, I believe, contrary to what Mr. Doyle had

8   represented.  That's all I have, Judge.

9            MR. MACVANE:  Good morning, Your Honor.  John

10  MacVane for Officer Felipe Gallegos.  And we'd just join the

11  arguments of Ms. Martin and Mr. Dawson.

12           I'd also point out for Mr. Gallegos, the murder

13  indictment against him was dismissed with the idea that that

14  might subsequently be re-presented to a grand jury, which kind

15  of implicates the same types of *Garrity* issues that Ms. Martin

16  was talking about.

17           THE COURT:  When was that done?

18           MR. MACVANE:  That was done several years ago,

19  Your Honor.  And I don't anticipate that happening.  That was

20  my next sentence, Judge.  I'm just saying that, because

21  it's -- it could happen, and I think Mr. Dawson also made that

22  point.

23           THE COURT:  You think --

24           MR. MACVANE:  No.

25           I didn't mean to interrupt the Court.  Go ahead.
```

1          THE COURT:  You think that your client could be

2    reindicted after the indictment was dismissed several years

3    ago, and now we're well past any perhaps learned

4    reconsideration of bringing this matter to a grand jury and

5    reindicting him.  So, obviously, you can say that for the next

6    25 years as murder has no statute of limitations, but at some

7    point in time sensibilities have to kick in.

8          MR. MACVANE:  I totally agree, Your Honor.  But

9    sensibilities have -- I'm trying to say this without saying

10   anything bad about the Harris County DA's office and how this

11   case was handled.  Sometimes sensibilities can be the subject

12   of disagreement.

13          But as I'm seeing it here, Judge, Number 1, he

14   should not be reindicted.  It should not be re-presented to a

15   grand jury.  The case should not be brought, and I don't

16   believe it's going to be brought.  I say that to the point

17   Mr. Dawson made and Ms. Martin made with regard to the IAD

18   records, Your Honor.

19          Other than that, I have nothing further, and I join

20   the rest.

21          THE COURT:  Thank you, sir.

22          Very well.  Counsel.

23          MR. DOYLE:  I think it's tempting to be a

24   Solomon-like Judge.  And I think in the protective order

25   initially entered, the Court didn't choose our order, didn't

```
 1   choose theirs, and instead used an order.  But, unfortunately,

 2   sometimes you end up killing the baby.  And I think that at

 3   this point we're back at that, and I'll tell you why by way of

 4   example.

 5              The orders, the general orders, that are the way the

 6   code for criminals.  Those are available.  I checked it.  It's

 7   on the website, and yet it's still sealed under this Court's

 8   order.

 9              THE COURT:  It's on the website where?

10              MR. DOYLE:  For HPD.  Their general orders.  Their

11   operating procedures.  It's on their website.  But I can't

12   give it to anybody because I got it from them because of the

13   way in which this Court's order was applied by the City.

14              When we talk about the confidential informants --

15              THE COURT:  Let me stop you there, because I want to

16   be on same page with you.  Mr. Dawson didn't say general

17   orders.  He used "standard operating procedures and training"

18   as what should remain sealed.  You're not suggesting that on

19   the website out there open to the public that training

20   materials from the HPD Academy, standard operating procedures,

21   are on the website for the public to review.

22              MR. DOYLE:  The general orders are the standard

23   operating procedures.  Training materials, which I think are

24   irrelevant at this point in this case, may not be.  But the

25   general orders, in other words, how they're supposed to
```

1    actually document a confidential informant as opposed to the

2    way it was done, how they're supposed to audit, those are

3    general orders.  Those are on the website.  And they've been

4    on the website.

5            But guess what, because the way the order's been

6    applied and they've designated it, it's sealed.

7            When we talk about the confidential informants,

8    going to those informants, if they're still using these

9    people, I think that's atrocious.  But more directly,

10   testified at trial in the criminal case, it's no secret.

11           Likewise, when you talk about -- I think we heard

12   about the *Garrity* statements, the IAD, the law is the law.

13   They're not confidential.  They're what this Court determines

14   they are.  And at this point, the only people that can't use

15   them is prosecutors.  But it doesn't matter when we're talking

16   about sworn testimony that's inconsistent.

17           And when we talk about the graphic photos, I take

18   the Court's recognition of that.  But here's the point.

19   There's already been a public trial.  There's already been

20   incredibly painful photos revealed.  But more directly, if we

21   look 70 years ago, there was a mother that showed her son's

22   body and what was done to it.  And in this case the graphic

23   photos show that the claims about how they were murdered are

24   inconsistent with the physical evidence.

25           And so while my client doesn't have any wish to,

1    this is a situation where if she has to endure that because it

2    proves what was claimed happened in that house didn't happen,

3    because it's impossible physically, if the video shows it,

4    those are not things she would ask this Court, out of

5    protection of her feelings, to conceal anymore.  Because at

6    this point, seeing that -- seeing her child's body is

7    important because it shows what happened and didn't happen.

8    How she was killed, where she was killed, the direction she

9    was killed, all those things, the time passed for that for her

10   a long time ago.

11            THE COURT:  Yes, sir.

12            MR. DOYLE:  Thank you, sir.

13            MR. SMITH:  Your Honor, briefly, Boyd Smith.  Just

14   for the record, the Tuttle clients, also, are well aware of

15   the grisly, terrible nature of the wounds that were suffered.

16   They've seen photographs.  They would have been sitting here

17   in trial next month seeing all that.  So the Tuttle plaintiffs

18   have no objection to that being released.

19            THE COURT:  Yes, sir.

20            My inclination at this point is to start unsealing

21   portions of this record, but I'm going to give you the

22   opportunity to weigh in on certain things.  And, again, I'm

23   not -- let me start over.

24            Your arguments about certain documents remaining

25   sealed, certain portions of the record remaining sealed, if

1    they are kept in what I used by way of metaphor, if they are

2    couched with a shotgun approach, your arguments are going to

3    be disfavored.  Simply put.

4         If they are couched by rifle shots, specific

5    references, specific items that the Court can look at and make

6    a determination, the Court's going to be more open to

7    considering that in a measured way.  But if the Court

8    receives, again, just this shotgun approach, especially in

9    light of what counsel has said, Mr. Doyle, regarding two very

10   specific things.  One, there has been a public trial already

11   where much of this material at issue under seal in this court

12   has already been heard and displayed in a Harris County

13   District Court.  That's a fact.

14        Two, to the extent -- and this is what I'm

15   unfamiliar with, and so I cannot speak to it with any

16   certainty.  Plaintiffs' counsel said that some of this

17   information is on a public website when it comes to general

18   orders and some of that information remains under seal in this

19   case.  And so that's nonsensical if that is correct.

20        So, again, I will afford you the opportunity to once

21   again make specific suggestions to the Court as to what should

22   come unsealed with the understanding that the Court at this

23   time is inclined to unseal its March 31st order.  If there are

24   specific things in the March 31st order that you think should

25   remain sealed, point those things out.  In regards to the

1    arguments that the Court -- the motions, responses, and

2    replies that the Court quotes, refers to, relies upon in

3    crafting its March 31st order, I believe much of that should

4    come unsealed as well.  Because, again, the Court has to --

5    its ruling has to be evaluated by the public.  And the only

6    way that the public can evaluate what this Court has done is

7    to see its order and to look at those things that the Court

8    relied upon in crafting its order.

9         Now, having said that, the Court is inclined to

10   unseal.

11        Oh, the other thing that Plaintiffs' counsel said

12   that's -- the Court grasped on, the confidential informants.

13   Mr. Dawson mentioned those.  But if they testified on the

14   stand at Harris County District Court trial, I think the time

15   to protect their identity in this court has passed.  I mean,

16   we're talking about something that's really nonsensical if

17   they took the stand and testified or if they have already been

18   disclosed in these other proceedings.

19        Now, knowing that the Court is inclined to unseal

20   this information, first, Plaintiffs' counsel, do you want the

21   opportunity to direct the Court to those items that should be

22   unsealed and have a list of them such that the Court can

23   evaluate that these items should be unsealed and enter an

24   order to that effect?  And if you want that opportunity, how

25   much time do you need?

```
1            MR. DOYLE:  I understand what the Court's asking
2    for.  I don't believe that process is applicable.  I don't see
3    anything in the summary judgment record that should be sealed.
4            THE COURT:  Okay.
5            MR. DOYLE:  So if I identify something, it would be
6    contrary to our request that it be done.
7            THE COURT:  Then you will -- I assume, then, that
8    you're -- if you will file a short statement, just so that
9    I'll have it on the record, if you have not done so already,
10   that you're saying everything should be unsealed.
11           MR. DOYLE:  That was our motion filed in October,
12   Your Honor.
13           THE COURT:  Okay.  But the reason I'm asking it now
14   is the Court has now entered it's March 31st order.  And so I
15   don't know if that changed the dynamic for you or anything.
16   But now you're telling me that you're going to stand on your
17   October --
18           MR. DOYLE:  2024 with all the motion --
19           THE COURT:  2024.
20           MR. DOYLE:  I believe it's 66, but I could be wrong.
21           THE COURT:  Thank you.  That is your position.
22           MR. DOYLE:  That is our position.
23           THE COURT:  Thank you.  Fair enough.
24           Turning to the defense, in light of the Court's
25   March 31st order and the Court's inclination now to unseal
```

```
1    that order as well as documents, specifically motions,

2    responses, and replies that the Court relied upon in crafting

3    that order, for portions of those documents that you believe

4    should remain sealed, how long do you need before filing

5    something with the Court?

6              MR. DAWSON:  Could I have a week, Your Honor?

7              THE COURT:  That's fair.  Yes.

8              MR. DAWSON:  By this time next week, whatever date

9    that is.  The 22nd.

10             THE COURT:  Friday of next week.  I think that's

11   fair.

12             MR. DAWSON:  Okay.  Thank you, Your Honor.

13             THE COURT:  All right.

14             MS. MARTIN:  I think we can do Friday of next week.

15             THE COURT:  Thank you.  Okay.

16             All right.  Now as to the March 31st order, the

17   Court has received feedback that there will be a motion for

18   reconsideration filed and that there will be a appeal filed to

19   the Fifth Circuit regarding the denial of qualified immunity.

20             So I know that we're set for trial next month.

21             Given the Court's order, the rulings therein, the

22   Court will now hear argument or input from the parties

23   regarding the potential to hold that setting or exactly the

24   way forward.

25             So first, from Mr. Plaintiffs' counsel.
```

```
 1          MR. DOYLE:  There was one argument specifically with
 2   respect to Defendant Gallegos in the sealing of the record
 3   that I neglected to share with the Court that may, just as to
 4   Defendant Gallegos only, may have a different outcome.  I,
 5   obviously, didn't share it with the Court, and I don't want to
 6   open everything, but it's a very rifle-shot argument on that.
 7          In open court before this Court October 29, 2024,
 8   Defendant Gallegos's counsel made a very specific claim that
 9   we want everything unsealed.  We want it all out in the
10   public.  That was contrary to a previous filing made by that
11   same defendant requesting sealing contrary to a subsequent
12   note saying Defendant Gallegos wants everything sealed.
13          But I think that there's a judicial estoppel
14   argument when a lawyer authorized by a party stands up and
15   claims they want all the facts out, and they don't want to
16   seal it, that that be recognized as Defendant Gallegos who
17   clearly, we believe, murdered two people and did not tell the
18   truth about what happened.
19          And if his counsel on the record, and I can give you
20   the page and line, publicly claims we want it all out, we
21   don't want anything sealed, he should be held to that.
22          THE COURT:  Obviously -- I might be wrong, but
23   that's not contained in your October 24 filing since it was at
24   or near the time that filing was made.  So, again, I invite
25   you, as to this particular argument, if you would like to put
```

```
 1    something on the record by Friday of next week citing page and
 2    line from the specific hearing for the Court's consideration
 3    that any argument it may get from that defendant, I'll
 4    consider it.
 5            MR. DOYLE:  Thank you, Your Honor.  Thank you for
 6    letting me do that rifle shot.
 7            And our position is the same as indicated in the
 8    court writing last week.  It's not feasible in light of
 9    Defendant Gallegos's indication they're going to take an
10    appeal.  And I don't see how that can possibly lead to a trial
11    on November 5th if he's going to take that up on appeal.  I
12    think it would be a waste of time.
13            THE COURT:  Also.  Did I understand that you would
14    be filing a motion for reconsideration?
15            MR. DOYLE:  Right.  But obviously, I can't file it
16    under -- I mean, I guess we could file it under seal.  But the
17    point is we can file it in fairly short order, but we'd prefer
18    not to have to file it under seal.
19            THE COURT:  Understood.  Thank you, sir.
20            Anything to add?
21            MR. SMITH:  No, Your Honor.  We don't believe the
22    trial should go forward on May 5th under these circumstances.
23    Although the Plaintiffs have been unflinching in their effort
24    to get to trial this whole time --
25            THE COURT:  Yes, sir.
```

```
 1              MR. SMITH:  -- May 5th does not work.

 2              THE COURT:  Defense.

 3              MR. MACVANE:  Your Honor, John MacVane for Officer

 4    Gallegos.  I actually intended to file a notice of appeal this

 5    morning.  We do intend to appeal the Court's summary judgment

 6    on qualified immunity and to seek a stay while that appeal is

 7    pending; so we certainly agree that the trial date won't be

 8    possible in light of that.

 9              THE COURT:  I would suggest that you get that on

10    file sooner rather than later.  Obviously, you're correct, the

11    parties are correct, it's hard to move forward with that item

12    pending before the Fifth, but we need to get it in front of

13    the Fifth.  So if you can move with some dispatch, the Court

14    would be greatly appreciative.

15              MR. MACVANE:  I will file it today.

16              THE COURT:  Thank you.

17              Anything else from the defendants?

18              All right.  The Court takes its full responsibility

19    for the pace at which the case has moved and its filing the

20    order on March 31st which finally addressed some of the

21    longstanding issues in this case.  But the Court did file the

22    order.  It's now part of the case.  And so they were weighty

23    matters.  Factual matters.  Weighty legal issues that the

24    Court had to undertake.  It took a lot to wade through all of

25    that.  And so we've waded through that now.  And so,
```

1    obviously, when the Court rules, there is an additional

2    shooter drop, and that's what we're dealing with now.

3            In the meantime, the Court's next step is to, again,

4    move with some dispatch to start unsealing this.  I am

5    confident and adamant that the public needs to understand what

6    has occurred in this court.  And this March 31st order I think

7    is the tipping point to start informing the public as to what

8    has occurred here.

9            So again, by way of documents, pleadings, the Court,

10   again, is looking for rifle shots, because, again, I'm looking

11   to unseal as much as of this record as possible.

12           With that being said, counsel for the plaintiff,

13   anything else, sir?

14           MR. DOYLE:  Nothing else, Your Honor.

15           MR. SMITH:  Nothing further, Judge.

16           THE COURT:  Counsel for the defense.

17           MR. DAWSON:  Nothing further, Your Honor.

18           MR. DAY:  Nothing at all.  Thank you.

19           MR. MACVANE:  Nothing for Officer Gallegos,

20   Your Honor.

21           MS. MARTIN:  Nothing, thank you.

22           MR. NACHTIGALL:  Nothing on behalf of Mr. Bryant.

23           THE COURT:  Thank you, counsel.  We're adjourned.

24   You're excused.

25           (Proceedings concluded at 10:45 a.m.)

1                    **REPORTER'S CERTIFICATE**

2

3              I, DONNA J. PRATHER, do hereby certify that the

4     above and foregoing, consisting of the preceding 32 pages,

5     constitutes a true and accurate transcript of my stenographic

6     notes and is a full, true, and complete transcript of the

7     proceedings to the best of my ability.

8              Dated this 25th day of April, 2025.

9

10             DONNA J. PRATHER, RMR, CRR, CCP, CBC
               Federal Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25