IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CLIFFORD F. TUTTLE, JR.,** *et al,* | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 4:21-cv-00270 |
| **CITY OF HOUSTON,** *et al,* | § § § | |
| *Defendants.* | § § | |

**CONSOLIDATED WITH**

| | | |
|---|---|---|
| **JOHN NICHOLAS, et al,** | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 4:21-cv-00272 |
| **CITY OF HOUSTON; et al,** | § § § | |
| *Defendants.* | § § | |

**DEFENDANT ROBERT GONZALES' REPLY IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

### ARGUMENT AND AUTHORITIES IN REPLY

Nicholas' completely new theory that Medina was already out of the house when Rhogena was shot based on a snapshot of individuals they cannot even identify is overwhelmingly refuted by the evidence[1] and contradicts their own expert's opinions. Nicholas has not met her burden to

---

[1] The Texas Rangers investigation conclusively established that Nicholas's position was consistent with Gallegos's statements based on their trajectory analysis and the medical examiner's report, as well as the timing and sequence of events. Doc. #312-3, Wolf deposition at 146:15-147:13 ("Because of the flight path of the bullet. It's slightly downward coming across her body – excuse me -- with Gallegos having been down at the exterior of the house shooting at her in a slightly lower position. If she leans or is stepping forward or moving forward and just orients her body slightly downward, you will create that flight path coming through her body and it will have a slightly upward flight path with her leaning forward in that position."); Doc. #312-3, Wolf deposition at 108:7-15 (establishing within 8 seconds the Dog, Medina, and Nicholas had been shot).

present evidence that no reasonable officer in Gallegos's position could have believed, at that moment, that Nicholas posed a threat of serious harm to Medina or the other officers still inside and being fired upon. *Fraire v. City of Arlington*, 957 F.2d 1268, 1275-76 (5th Cir. 1992) (quoting *Young*, 775 F.2d at 1352); *Burton v. Waller*, 502 F.2d 1261, 1280 (5th Cir. 1974) ("[o]nce a direction is established officers may fire and are not limited to a precisely targeted spot.") And both Plaintiffs wholly ignore the litany of policies, procedures and supervision HPD and Gonzales himself actually *did* implement and follow to ensure narcotics investigations were completed promptly and timely, favoring instead to rely on the imagination of Hollywood, using **movies** to suggest that HPD should have anticipated something similar would happen and "do more" to prevent it. Gonzales is entitled to summary judgment because Plaintiffs did not create a **genuine** issue of **material** fact that overcomes his qualified immunity.

## I. Plaintiffs have not overcome Gonzales' qualified immunity.

1. As Gonzales described in his motion, Plaintiffs have the burden to establish that Gonzales' conduct violated a clearly-established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).

### A. Plaintiffs have identified no controlling authority specifically prohibiting Gonzales' conduct.

2. *Estate of Davis* is squarely analogous authority that Plaintiffs wholly ignore in their response. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Instead, Plaintiffs rely on only just three cases: *Wanger v. Bonner*, 621 F.2d 675, 680 (5th Cir. 1980); *Tuttle v. Sepolio*, 68 F.4th 969, 975-76 (5th Cir. 2023); *Crittendon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022). *Wanger* is factually dissimilar, and its general proposition of law was

superseded by *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). *Crittendon* is also inapposite; it pertained to over-detention of convicted persons, rather than a use of force during execution of a search warrant that was procured on the false statements of one officer. *See Crittendon*, 37 F.4th at 181.

3.  *Tuttle* is the Fifth Circuit's review of the pleadings against Gonzales and is inapplicable to evaluate the ***evidence*** at summary judgment stage.[2] But even if it were, the panel majority opinion recites a standard that Plaintiffs' evidence simply does not meet. Specifically, that Gonzales—in his capacity as Goines's supervisor—knew about these infractions, but did nothing to correct them. *Tuttle*, 68 F.4th 975–76. The evidence has not borne this out; Plaintiffs have adduced no evidence that Gonzales actually knew about Goines' dishonest activity; to the contrary, *no one* knew that Goines was being dishonest in search warrant affidavits [Doc. #312 at ¶40]. And when Gonzales became aware that Goines was getting behind on his paperwork, he did something to correct it [Doc. #312 at ¶42]. So even if the panel majority opinion accurately reflects the ultimate standard by which the evidence must be judged, summary judgment is appropriate here.

4.  Plaintiffs, however, ask this court to make an adverse inference merely because Gonzales invoked his Fifth Amendment privilege to Plaintiffs' argumentative and abusive questions during his deposition. But the Fifth Circuit has "limited the value of the negative inference by recognizing that a party seeking summary judgment cannot rely solely on the other party's exercise of his fifth amendment rights." *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 n. 3 (5th Cir. 1990); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d

---

[2] Judge Oldham dissented in part and would have held Gonzales was entitled to qualified immunity because this Court applied the wrong standard for clearly-established law by merely quoting the general legal principle from *Wanger*. *Tuttle*, 68 F.4th at 977 (Oldham, J., dissenting in part).

3

942, 962 (S.D. Tex. 2010). The court emphasized that the assertion of the Fifth Amendment privilege, especially on the advice of counsel, is an ambiguous response and does not constitute "significant probative evidence" sufficient to create a genuine issue of material fact. *Id.* at 119. This cautious approach underscores the judiciary's recognition of the Fifth Amendment's protective scope and the need for substantive evidence beyond the mere exercise of constitutional rights to impact civil litigation outcome.

5.     Such is the case here. Plaintiffs have no actual evidence of any real wrongdoing by Gonzales beyond "not paying enough attention" which is, at most, negligence that does not cross the threshold of a constitutional tort. *See, e.g., Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988). Furthermore, "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity." *Whitley v. Hanna*, 726 F.3d 631, 634 (5th Cir. 2013). Plaintiffs' reliance on the IAD investigation suggesting that Gonzales' supervision fell below policy standards do not suffice. *Bernabe v. Rosenbaum*, Civil Action No. 4:18-cv-00580-O, 2021 U.S. Dist. LEXIS 50706, at *40-41 (N.D. Tex. 2021). The *only* thing Plaintiffs have is the hope of an adverse inference, which is precluded here because they have nothing else.

**B. Plaintiffs' attempt to re-frame clearly-established law based on alleged constitutional violations by Goines and Gallegos reduces supervisory liability to respondeat superior.**

6.     Plaintiffs frame the clearly-established-law analysis around the alleged predicate constitutional violations they've alleged against Goines and Gallegos—"lying to obtain a warrant" and "shooting unarmed person not using force"—***not*** Gonzales' supervisory conduct. *See* Response at 17. But it is wholly unrefuted and law of the case that Gonzales did not personally engage in either conduct. *Tuttle*, 68 F.4th at 976. Plaintiffs cite no authority holding a supervisor

4

liable on a supervisory theory for anything they allege *Gonzales* did or failed to do. Plaintiffs' approach impermissibly reduces supervisory liability respondeat superior.

II. **Plaintiffs' inability to demonstrate a pattern of constitutional violations stemming from Gonzales's alleged failure to supervise is fatal.**

7.　　Deliberate indifference flows from knowledge of the effects of decisions or conditions and taking no steps to correct shortcomings. *Hobart v. Estrada*, 582 F. App'x 348, 358-359 (5th Cir. 2014). Indeed, this is why the single incident exception so rarely succeeds. *Id.* Here there is no evidence that Gonzales knew that either Goines' false affidavit or Gallegos' shooting of Nicholas was a highly predictable result of any alleged failure in his supervision. *Terrell v. Harris Cnty.*, 107 F.4th 452, 458 (5th Cir. 2024).

III. **Plaintiffs have presented no evidence that anything Gonzales did as a supervisor was the moving force for any constitutional violation.**

8.　　Plaintiffs do not have evidence; they have argument and inference that Officer Gonzales could have done more, and if he had done more, somehow Nicholas and Tuttle might still be alive. Such a position offers nothing more than speculation based on hindsight, which does not overcome summary judgment. *Estate of Davis*, 406 F.3d at 386 (holding it was "not enough to merely say that more or different training or supervision would have prevented the result of the ill-fated raid."); *Mesa Ovando v. City of Pharr, Tex.*, No. CV M-06-251, 2008 WL 11497844, at *8 (S.D. Tex. Sept. 29, 2008) (eschewing plaintiff's attempt to avoid summary judgment by speculation based on hindsight).

#### CONCLUSION

9.　　Gonzales is entitled to entry of summary judgment in his favor.

Respectfully submitted,<br>
**ARTURO G. MICHEL**<br>
**City Attorney**<br>
CHRISTY L. MARTIN<br>
Chief, Torts/Civil Rights

| | |
|---|---|
| Date:  September 27, 2024 | By:  */s/ Christy L. Martin*<br>ATTORNEY IN CHARGE<br>SBN:  24041336<br>FBN:  754168<br>832.393.6438<br>christy.martin@houstontx.gov<br>CITY OF HOUSTON LEGAL DEPARTMENT<br>900 Bagby, 4th Floor<br>Houston, Texas 77002<br>832.393.6259 Facsimile<br>***Attorneys for Defendant,***<br>***Robert Gonzales*** |

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing was filed via CM/ECF and served via electronic filing manager to all counsel of record.

*/s/ Christy L. Martin*
CHRISTY L. MARTIN