IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFFORD F. TUTTLE, JR.,<br>REPRESENTATIVE OF THE ESTATE OF<br>DENNIS W. TUTTLE, DECEASED, ROBERT<br>TUTTLE, AND RYAN TUTTLE, | § <br> § <br> § <br> § <br> § | |
| Plaintiffs | § <br> § | |
| v. | § <br> § | Civil Action No. 4:21-cv-00270 |
| CITY OF HOUSTON, *et al.*, | § <br> § <br> § | |
| Defendants. | § | |

**AND**

| | | |
|---|---|---|
| JOHN NICHOLAS, as temporary administrator<br>of the Estate of Rhogena Nicholas and JO ANN<br>NICHOLAS, individually and as an heir of the<br>Estate of Rhogena Nicholas, | § <br> § <br> § <br> § <br> § | |
| Plaintiffs | § <br> § | |
| v. | § <br> § | Civil Action No. 4:21-cv-00272 |
| CITY OF HOUSTON, *et al.*, | § <br> § <br> § | |
| Defendants. | § | |

## DEFENDANT CITY OF HOUSTON'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS BASED ON SERVICE OF THE WARRANT

In response to the City's Motion for Partial Summary Judgment on Plaintiffs' claims based

on service of the warrant ("Motion"), Plaintiffs have abandoned their municipal liability theories

of failure to train, failure to discipline, and failure to promulgate "adequate" policies.[1]  Plaintiffs'

---

[1] *See generally* Dkt. 331 (failing to address the City's arguments regarding Plaintiffs' pleaded failure-to-train, failure-to-discipline, and failure-to-promulgate theories); *see also Sweetin v. City*

Section 1983 claims now hinge on the remaining theories of (1) "official policy," based on the City's alleged written policy allowing officers "to unilaterally obtain no-knock warrants without checks into their underlying investigations,"[2] (2) "official policy" based on a custom of failing to adequate supervise narcotics officers,[3] (3) failure to supervise,[4] and (4) Chief Acevedo's alleged ratification of Goines' lying on the search warrant.[5]

After countless hours of investigations, production of tens of thousands of pages of documents, and dozens of depositions, all the Plaintiffs can show in support of their theories is that the City had one bad cop who lied on the search warrant affidavit for 7815 Harding Street and who may have previously lied on six other affidavits. As Chief Acevedo confirmed in his deposition testimony, the post-Harding Street investigations showed that no police officer other than Goines lied on a search warrant affidavit.[6] Under Fifth Circuit precedent, this is insufficient to establish liability against the City. *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001).

Unable to find substantial support for their theories within the Fifth Circuit, Plaintiffs rely extensively on non-precedential authority from other circuits, which ultimately fails to advance Plaintiffs' case. Having not carried their burden to raise a genuine issue of material fact as to (1) the City's alleged deliberate indifference, (2) adequacy of the City's supervision policies, (3) moving force causation, or (4) Chief Acevedo's ratification of Goines' unconstitutional conduct, the City's Motion should be granted.

---

*of Tex. City*, 568 F. Supp. 3d 789, 798 (S.D. Tex. 2021) (granting summary judgment on claims that plaintiffs had "abandoned" by "fail[ing] to address the defendant's [summary judgment] arguments on these claims"), *rev'd in part on other grounds*, 48 F.4th 387 (5th Cir. 2022).
[2] Dkt. 331 at 38.
[3] *Id*.
[4] *Id*. at Section IV.A.
[5] *Id*. at Section IV.C.
[6] Dkt. 306-11, A. Acevedo Dep. at 31:6-32:2, 32:11-15.

I.     **Plaintiffs have not raised a material issue of fact regarding deliberate indifference.**

Each of Plaintiffs' "official policy" and failure-to-supervise theories requires Plaintiffs to demonstrate that the City's policymaker, Chief Acevedo, was deliberately indifferent "to the known or obvious consequences that constitutional violations would result" from HPD's allegedly inadequate warrant-related policies.[7]  *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015).[8]  Because Plaintiffs have not raised an issue of fact as to Chief Acevedo's deliberate indifference in this case, summary judgment is warranted on both of Plaintiffs' "official policy" theories and their failure-to-supervise theory.

A.     Plaintiffs have not demonstrated a pattern of prior similar constitutional violations.

To overcome summary judgment on the element of deliberate indifference, Plaintiffs must raise a genuine issue of material fact as to the existence of a prior "pattern of similar constitutional violations." *Almanza v. Salazar*, 33 F. Supp. 3d 747, 752 (S.D. Tex. 2013) (for a failure-to-act theory, deliberate indifference requires "a pattern of similar constitutional violations as the injury for which a party is seeking relief").  Proof of a pattern is required because "[w]ithout notice that a facially lawful policy is resulting in violations of federal rights, a municipality cannot be said to be deliberately indifferent to a result." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 655 (N.D. Tex. 2018).  Failure to raise a fact issue as to a "pattern" prevents Plaintiffs from establishing that Goines' decision to lie on the warrant affidavit for  Harding Street was a "known or obvious" consequence of the City's allegedly inadequate policies.

---

[7] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is original unless otherwise indicated.

[8] *See e.g.*, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (a facially innocuous policy will only support municipal liability if it was promulgated with deliberate indifference); *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 656 (N.D. Tex. 2018) (noting that failure-to-supervise claims are governed by the deliberate indifference standard).

It is undisputed that the constitutional violation at issue here is Goines' lying on the search warrant affidavit.[9]  Thus, to survive summary judgment, plaintiffs must establish a pattern of HPD officers lying on search warrant affidavits prior to the Harding Street incident.  *See e.g.*, *Lewis v. City of Houston*, No. 4:22-CV-00844, 2023 WL 2249991, at *7 (S.D. Tex. Feb. 27, 2023).  A pattern "for any and all bad or unwise acts" by officers is simply not enough.  *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).  "[C]ase law is clear" that in order to establish a "pattern" for purposes of municipal liability, "[p]laintiff[s] [are] required to show a pattern of ***similar constitutional violations*** resulting in injuries."  *Bailey v. Dallas Cnty.*, No. 3:09-CV-0865-K, 2012 WL 1033502, at *21 (N.D. Tex. Mar. 28, 2012) (emph. added), *aff'd sub nom. Bailey v. Quiroga*, 517 F. App'x. 268 (5th Cir. 2013).  This pattern "must point to *the specific violation in question*."  *Peterson*, 588 F.3d at 851 (emph. added).

In short, Plaintiffs must present a sufficient number of "other incidents that are *fairly similar to what transpired in the present dispute*," otherwise all of their Section 1983 claims arising from service of the warrant fail.  *Lewis*, 2023 WL 2249991, at *7 (emph. added) (dismissing claims because plaintiff, who alleged that officer used excessive force during service of warrant, failed to show how prior incidents occurring in a jail setting and/or involving hands-on force "has anything to do with" the incident at issue); *Flores v. Harris*, No. CV H-17-3817, 2019 WL 1426313, at *27 (S.D. Tex. Mar. 29, 2019) (granting summary judgment for the City because none of the incidents the plaintiff identified involved conduct sufficiently similar to the underlying incident).

Plaintiffs have ***zero*** evidence that before the Harding Street incident any HPD officer—other than Goines—may have lied on a search warrant affidavit.  Despite Plaintiffs' criticisms of HPD's supervision policy, they have not established that HPD's "official policy" regarding

---

[9] *See* Dkt. 48 ¶¶ 94(a)-(d); Dkt. 49 ¶ 3.

procurement of no-knock warrants or its alleged lack of officer supervision resulted in a "pattern" of HPD officers lying on search warrant affidavits. For that reason alone, Plaintiffs' Section 1983 claims fail as a matter of law. *Almanza*, 33 F. Supp. 3d at 752.

Unable to establish a pattern, Plaintiffs point to the six instances discussed in the City's Motion where the SIU found that Goines potentially included false information in warrant affidavits or testimony.[10] But six potential instances of false information[11] do not amount to a widespread pattern or practice sufficient to constitute a "pattern" for purposes of *Monell* liability.[12]

---

[10] Dkt. 331 at 29-30, 39.

[11] Contrary to Plaintiffs' assertions (*id*. at 24-25, 29), it has never been "confirmed" that Goines lied on each of the six warrants. *See e.g.*, Dkt. 305 at 23 n.136.

[12] The City is compelled to point out that the evidence Plaintiffs cite in their Response does not consistently reflect the purported "facts" on which Plaintiffs rely. For example, Plaintiffs state, without citation, that the "corporate representative for HPD could not confirm if HPD actually investigated any warrants beyond those that were identified as part of this audit." Dkt. 331 at 8. This is patently false. Commander Duplechain testified that Sgt. Bass conducted an "extremely thorough" investigation into the search warrants submitted by Gerald Goines and only identified six about which there were questions. Ex. 48, Duplechain Depo. at 68:3–69:6, 79:24–80:5, 84:3–16, 85:18–22. Further, the City has never maintained that it "d[oes] not contest as inaccurate the additional five incidents . . . alleged in the Amended Complaint[s]." Dkt. 331 at 8. The evidence Plaintiffs cite in support of their assertion is testimony from the deposition of the City's corporate representative, Isaac Duplechain, that does not even touch on the five incidents alleged in Plaintiffs' complaints, but instead focuses on the six warrants that the SIU identified. *Id*. at n.31. Likewise, although Plaintiffs assert that Chief Acevedo "decided that HPD would not perform an exhaustive audit to uncover all of Goines's wrongdoing," Plaintiffs are simply misrepresenting his deposition testimony. *Id*. at 8 & n.32. Far from deciding that "HPD would not perform an exhaustive audit" (*id*. at 8), Chief Acevedo testified that "[t]he District Attorney's Office took lead, that was – they took – the civil rights division and her team took lead on investigating Gerald Goines. We were not tasked by that, and ***we respected the District Attorney's decision to take lead on that***." Dkt. 336-52, Acevedo Depo. at 43:19-23. Chief Acevedo also testified that once it became obvious that Goines had lied on the search warrant affidavit, he ordered a comprehensive investigation and audit to determine if there was a "systemic problem" within HPD of officers lying on warrant affidavits. *Id*. at 31:16–32:2, 33:14–20, 197:13-16. Chief Acevedo wanted to know whether there were any other officers who were lying on search warrant affidavits. Consequently, the SIU, IAD, the Harris County District Attorney's Office and Chief Lopez all conducted investigations to determine, among other things, whether there was a problem within HPD of officers lying on warrant affidavits. As Chief Acevedo testified, these investigations could not find any other officer – other than Goines – who lied on a search warrant affidavit. *Id*. at 31:16–32:2.

*See Peterson*, 588 F.3d at 852 (twenty-seven incidents are insufficient); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (eleven incidents are insufficient). This is especially true where all the alleged conduct is ascribed to a single officer in a department of thousands. *See e.g.*, *Jeffrey v. City of Houston*, No. 4:23-CV-00069, 2024 WL 1313897, at *4 (S.D. Tex. Mar. 27, 2024).

Plaintiffs also point to two post-Harding Street cases in which third-party criminal convictions were overturned because of Goines' prior involvement in those cases and the presumption that the convictions were obtained by false evidence provided by Goines.[13] Plaintiffs maintain that Chief Acevedo "should have been apprised"[14] that the City's allegedly inadequate supervision policy was "obviously likely to result in a constitutional violation" (*Covington v. City of Madisonville*, 812 F. App'x. 219, 225 (5th Cir. 2020)) because the criminal defendants in those cases defended their cases eight years prior to the Harding Street incident on the theory that Goines—a key State witness—was purportedly lying. *See Ex parte Prophet*, No. WR-95,386-02, 2024 WL 3883643, at *1 (Tex. Crim. App. Aug. 21, 2024) (Yeary, J. dissenting) (noting that the court presumed, without making an actual finding, that the testimony and/or evidence presented by Goines was false); *Ex parte Mallet*, 602 S.W.3d 922 (Tex. Crim. App. 2020) (Richardson, J. concurring).

Neither of those cases—both of which concerned alleged lying that took place five years before Chief Acevedo's tenure—raise a genuine issue of fact as to whether there was a pattern of prior constitutional violations alerting Chief Acevedo to "a policy so clearly inadequate as to be obviously likely to result in a constitutional violation." *Covington*, 812 F. App'x at 225; *see Davidson v. City of Stafford*, 848 F.3d 384, 396-97 (5th Cir. 2017) (no pattern: two prior incidents

---

[13] Dkt. 331 at 31 n.116.
[14] *Id*. at 31.

over three-and-a-half years); *Carnaby v. City of Houston*, 636 F.3d 183, 190 (5th Cir. 2011) (no pattern: two prior incidents of "excessive" use of force in Houston over four years); *Castro v. McCord*, 259 F. App'x. 664, 669 (5th Cir. 2007) (no pattern: two prior incidents of "excessive" use of force in Harris County over five years).

Plaintiffs also rely on a 2008 case in which a different HPD officer "copied and pasted" language from a warrant onto an unrelated warrant affidavit.[15]  *See United States v. Mayes*, No. CR 4:07-399, 2008 WL 11423870, at *2 (S.D. Tex. July 16, 2008), *aff'd*, 364 Fed. Appx. 136 (5th Cir. 2010).  This single case concerning conduct that occurred more than ten years before the Harding Street incident similarly fails to raise an issue regarding whether there was a sufficiently persistent and widespread practice during the relevant timeframe that would have alerted Chief Acevedo to officers lying on warrant affidavits.  *See e.g.*, *Davidson*, 848 F.3d at 396–97.

Plaintiffs' remaining contentions regarding the City's alleged deliberate indifference fail to "show a pattern of ***similar constitutional violations*** resulting in injuries."  *Bailey*, 2012 WL 1033502 at *21 (emph. added).  Plaintiffs attempt to demonstrate deliberate indifference by pointing to (1) Goines' listing of evidence on Officer's Returns,[16] and (2) alleged Narcotics Division "practices" related to SOPs and the verification of officers' work.[17]  But Plaintiffs do not point to a single constitutionally protected right that such conduct offends.[18]  The reason is clear:

---

[15] *Id*. at 31 n.116.

[16] Plaintiffs make much of Goines "almost exclusively obtaining no-knock warrants . . . with no indication that a gun was recovered following the execution of 99% of those warrants."  *Id*. at 29.  But Plaintiffs do not contend (nor can they) that the practice of obtaining no-knock warrants or the listing of evidence on Officer's Returns violates constitutionally protected rights.  *See generally id*.  Further, as explained in the City's Motion, "the fact that a weapon may or may not have been recovered during service of a search warrant *for narcotics* in no way suggests that the observation of a weapon as stated in the underlying search warrant affidavit was false."  Dkt. 305 at 26.

[17] Dkt. 331 at 39.

[18] *See id*.

these are not constitutional violations.  As such, they do not demonstrate "a pattern of similar constitutional violations." *Almanza*, 33 F. Supp. 3d at 752.

Plaintiffs have not met their burden of raising a material fact issue regarding the existence of "a pattern of similar constitutional violations" sufficient to demonstrate deliberate indifference. *Id*.  For this reason alone, summary judgment is warranted on Plaintiffs' Section 1983 claims based on both of Plaintiffs' "official policy" theories and their failure-to-supervise theory.

B.  Under Fifth Circuit precedent, the single incident exception does not apply to this case.

Undoubtedly recognizing their failure to raise a fact issue regarding the existence of a prior pattern of similar constitutional violations, Plaintiffs attempt to alternatively demonstrate deliberate indifference by relying on the previously unpleaded "single incident exception."[19]  In the Fifth Circuit, deliberate indifference can be established if the "highly predictable consequence" of a policymaker's "*single decision*" to not act "would result in the specific injury suffered." *Aviles v. Saldivar*, No. 4:22-CV-03571, 2023 WL 5487668, at *5-6 (S.D. Tex. Aug. 23, 2023) (noting that the Fifth Circuit has made it "hard[]" to establish deliberate indifference in single-decision cases by requiring proof that it was ***highly likely*** that the officer in question would commit future violations in the absence of training or supervision" (emph. added)); *see also Bailey*, 2012 WL 1033502 at *20 (noting that proving deliberate indifference via the single incident exception, "though not impossible," is "[v]ery difficult").  Plaintiffs never asserted in their complaints that the single incident exception applied in this case.[20]  It is only now, in response to the City's Motion,

---

[19] *Id*. at Section IV.A(2)(b) (quoting the summary in *Brown v. Bryan Cnty.*, 219 F.3d 450, 460 (5th Cir. 2000) of the Supreme Court's "suggest[ion]" in *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) that "a single incident of an alleged constitutional violation resulting from the policy may serve as a basis for liability so long as that violation was an obvious consequence of the policy").
[20] *See generally* Dkts. 48, 49.

that Plaintiffs' raise this theory for the first time.  As such, this is improperly before the Court. *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021).

Further, Plaintiffs' Section 1983 claims do not fit within the very narrow scope of the single incident exception.  The facts of this case are wholly distinguishable from the seminal "single incident exception" case in this circuit, *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000).  In *Brown*, the plaintiff was injured during a traffic stop when a deputy threw her to the ground. *Brown*, 219 F.3d at 454.  In support of the plaintiff's failure-to-train theory (a theory that Plaintiffs have abandoned in this case), the record showed that the twenty-one year old deputy had received no formal law enforcement training and had a known history of disciplinary problems; the situation was admittedly known by the policymaker sheriff; and the sheriff nonetheless allowed the deputy to assist in patrols.  *Id*. at 454-56.  The Fifth Circuit concluded that deliberate indifference could be inferred against the county based on the sheriff's single decision to hire a deputy with known disciplinary problems, coupled with the county's failure to provide him with any training whatsoever.  *Id*. at 462, 465.

Since *Brown*, the Fifth Circuit has expressed its "reluctan[ce] to expand" the narrow exception articulated in that case.  *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003); *see also Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir. 2000) ("We have consistently rejected application of the single incident exception and have noted that proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.").  Consistent with that reluctance, *Brown* appears to be the only "single incident" case published in the Fifth Circuit in which a plaintiff prevailed.  *See Littell v. Houston ISD*, 894 F.3d 616, 625 n.5 (5th Cir. 2018).

Furthermore, the Fifth Circuit has "reserved the single-incident method of proving deliberate indifference for cases in which the policymaker provides ***no training whatsoever*** with respect to the relevant constitutional duty." *Littell*, 894 F.3d at 625 n.5 (emph. added); *see Speck v. Wiginton*, 606 F. App'x. 733, 736–37 (5th Cir. 2015) (noting that the Supreme Court's example of a hypothetical case fitting the single incident exception is a municipality "arm[ing] its police force with firearms and deploy[ing] the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force" (quoting *Connick v. Thompson*, 563 U.S. 51, 63 (2011)); *see also Covington*, 812 F. App'x at 227-28 (reversing Rule 12(b)(6) dismissal of plaintiff's "'single incident' supervision claim" because the plaintiff alleged that the chief of police wholly failed to do anything "to determine [the] validity" of two separate reports he had received regarding an officer's intentions and efforts to have the plaintiff—his ex-wife—"arrested based on planted illegal drugs").

In contrast to those type of cases, the City has demonstrated that during the relevant timeframe HPD provided extensive training to its officers, including Goines, and regularly supervised officers' work, investigations, and performance of duties, including the Individual Officers in this case, and that no one at the City—including Chief Acevedo—had reason to suspect that Goines would commit perjury in order to obtain a search warrant.[21]  Indeed, Plaintiffs' policy expert does not criticize HPD's training,[22] and Plaintiffs have since abandoned any claim based on the failure to train.[23]  Moreover, Plaintiffs have never claimed that there was "no [supervision] whatsoever" (*Littell*, 894 F.3d at 625 n.5) but have only alleged that HPD's supervision was lacking.  As such, the single-incident exception does not apply here.  *See e.g.*, *Hutcheson v. Dallas*

---

[21] Dkt. 305 at Factual Background Section II.
[22] Dkt. 336-54, Scott Depo. at 18:8-12.
[23] *See supra* n.1.

*Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021) (holding that plaintiffs could not avail themselves of the single incident exception because they had not alleged that there was "no training whatsoever").

Because this case does not meet the extremely narrow single incident exception, and Plaintiffs have not otherwise established a pattern demonstrating deliberate indifference, summary judgment should be granted for the City.[24]

C. Goines' perjury was not an obvious or highly predictable consequence of the City's allegedly inadequate policies.

Regardless of the method Plaintiffs use in attempting to establish deliberate indifference—a pattern of similar constitutional violations or the single incident exception—Plaintiffs must show as an element of deliberate indifference that Goines' decision to lie on the search warrant affidavit was the "obvious and highly predictable consequence" of a specific, allegedly inadequate HPD

---

[24] Plaintiffs rely on three non-precedential opinions from outside this Circuit, none of which support Plaintiffs' position. Dkt. 331 at 32 n.18, 33 n.121. *Torain v. City of Phila*, No. CV 14-1643, 2023 WL 174951 (E.D. Pa. Jan. 12, 2023), is distinguishable on its facts. The *Torain* court found that evidence of the city's failure to supervise and discipline officers with regard to fabrication of evidence or probable cause amounted to deliberate indifference because the city was "on notice that there had been a history of employees mishandling such situations in the past, as litigation against the City due, in part, to fabrication of evidence and probable cause, was the very purpose of the creation of the IAO [Integrity and Accountability Office] and the IAO Reports." *Torain*, 2023 WL 174951 at *11. Here, Plaintiffs have failed to present similar evidence of multiple HPD officers lying on search warrant affidavits, litigation against the City arising from the same, or Chief Acevedo being "on notice" of any HPD officer lying on search warrant affidavits. *See supra* Section I.A. In *Metris-Shamoon v. City of Detroit*, 545 F. Supp. 3d 506, 525 (E.D. Mich. 2021), the court made no mention, let alone a finding, of whether the plaintiffs' evidence of inadequate policy and causation could support a jury's finding of deliberate indifference on the part of the city. Finally, *Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) actually supports the City's position and not the Plaintiffs'. In *Reynolds*, the Second Circuit distinguished between cases where action taken by a state actor is merely "inadequate[e]," which does not support Section 1983 liability, versus when a state actor "sit[s] on [its] hands in the face of an obvious need to act" or "even encourage[s] . . . misconduct," which supports liability. *Reynolds*, 506 F.3d at 196-97. The *Reynolds* court found that the plaintiffs' failure to demonstrate that the state actors wholly failed to supervise the city, despite evidence that the city "continued [to] fail[] to comply with certain provisions of law," precluded a finding of deliberate indifference. *Id*. at 196. Like the plaintiffs in *Reynolds*, Plaintiffs have not demonstrated that the City provided no supervision whatsoever of Goines or of any other HPD officer. Accordingly, *Reynolds* supports a finding that there is no fact issue supporting a finding of deliberate indifference on the part of the City.

policy. *Peterson*, 588 F.3d at 850; *see also Aviles*, 2023 WL 5487668, at *5-6 (single incident

exception); *Mason*, 806 F.3d at 280 (pattern of similar constitutional violations). Plaintiffs' only

argument is that Goines' conduct was "not unpredictable."[25] But that is not the standard. *See id.*

Plaintiffs attempt to raise a fact issue regarding the "obvious" nature of Goines' deceit by

pointing to:

- "Popular culture and media portrayals";

- One article and two cases addressing fraudulent warrants purportedly obtained by Detroit and Philadelphia police departments;

- A 2017 case addressing general misconduct by NYPD officers;

- A 2013 article addressing four officers from the Hidalgo County Sheriff's Office who pleaded guilty to drug related charges; and

- The unsubstantiated opinion by Plaintiffs' expert that "the property room" and "the narcotics unit" is where "law enforcement officers usually . . . get[] into trouble."[26]

But none of these references support Plaintiffs' position that the "obvious and highly predictable

consequence" of a particular <u>HPD</u> policy was Goines perjuring himself on the search warrant

affidavit. *Peterson*, 588 F.3d at 850. Similarly, Plaintiffs' argument that a "failure to conduct

audits can have dangerous consequences"[27] does not rise to the level of demonstrating that an

"obvious and highly predictable consequence" of an alleged HPD policy inadequacy (*id.*) was

Goines' inclusion of false information on a search warrant affidavit. Consequently, Plaintiffs have

failed to raise a fact issue regarding deliberate indifference sufficient to defeat summary judgment.

## II.    The City is entitled to summary judgment on Plaintiffs' "official theory" based on a purported City custom.

Plaintiffs' failure to raise a fact issue as to deliberate indifference is alone fatal to both of

---

[25] Dkt. 331 at 33.

[26] *Id.* at 33-34 & n.123.

[27] *Id.* at 35.

Plaintiffs' "official policy" theories.   Additionally, summary judgment should be granted on Plaintiffs' "official policy" theory based on a City custom because Plaintiffs have not raised genuine issues of fact regarding (1) the existence of a purported City "custom of minimal supervision and oversight concerning narcotics officers,"[28] (2) Chief Acevedo's knowledge of such a custom, or (3) its "moving force" causation of Goines' lying on the search warrant affidavit.

To demonstrate official City policy through a custom, Plaintiffs must show that the City had "a persistent widespread practice . . . [that] is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).   This requires proof of "a pattern of abuses" that "point to the specific [constitutional] violation in question." *Peterson*, 588 F.3d at 850-51.   As discussed, Plaintiffs have not raised a genuine issue of material fact regarding the existence of a pre-Harding Street pattern of constitutional violations similar to the one at issue in this case.[29]   This deficiency is fatal to Plaintiffs' "official policy" theory based on a custom. *See Aviles*, 2023 WL 5487668, at *4 (noting that "demonstration of a pattern" matters for establishing both "official policy . . . [and] deliberate indifference").

Additionally, Plaintiffs have not raised a fact issue regarding Chief Avecedo having actual or constructive knowledge of any prior similar constitutional violations, as is required for a municipal liability theory based on a "custom." *Maddux v. Officer One*, 90 F. App'x 754, 761 (5th Cir. 2004) ("If the official municipal policy is embodied in a custom, the governing body or policymaking individuals must have either actual or constructive knowledge that such custom prevails.").   As discussed in the City's Motion, Judge Hanks set out examples in *Jeffrey* of evidence

---

[28] *Id*. at 38.
[29] *See supra* Section I.A

that would establish actual or constructive knowledge by the City or the Chief of Police with respect to Goines' conduct.[30]  *See Jeffrey*, 2024 WL 1313897, at *4 (looking for (1) evidence that Goines' "actions were out in the open or done in the presence of or with assistance of [Chief Acevedo]," (2) context related to the alleged number of false affidavits that Goines filed, such as the total number of affidavits that HPD officers provided to magistrates during the relevant timeframe, and (3) evidence that Chief Acevedo or the City "were notified of any concerns with Goines's probable cause affidavits and testimony prior to [the incident in question]").  Plaintiffs have not  introduced such evidence here because no such evidence exists.

Finally, moving force causation demands a "direct causal link" between the City's allegedly inadequate policy and the violation of Tuttle and Nicholas' Fourth Amendment rights. *Holland v. City of Houston*, 41 F. Supp. 2d 678, 706 (S.D. Tex. 1999).  Plaintiffs must prove an affirmative answer to the question, "Would the injury have been avoided had the employee been [supervised] under a program that was not deficient in the identified respect?"  *City of Canton v. Harris*, 489 U.S. 378, 391 (1989); *Nazerzadeh v. Harris Cnty.*, No. CIV A H08-0499, 2010 WL 3817149, at *32 (S.D. Tex. Sept. 27, 2010) (same).[31]  Plaintiffs have no evidence that a supervision

---

[30] Although Plaintiffs claim that *Jeffrey* is distinguishable because it was a "failure to train, not [a] failure to supervise" case (Dkt. 331 at 3), the plaintiff in *Jeffrey* asserted that the City "allow[ed] Goines to file a false probable cause affidavit and other false evidence with a magistrate judge" and that this "pattern of unconstitutional conduct was allowed to thrive for years through deliberate indifference by supervisors up the chain of command all the way to the Chief's office and above[.]" *Jeffrey v. City of Houston*, No. 4:23-CV-00069, 2024 WL 1313897, at *2, 4 (S.D. Tex. Mar. 27, 2024).  This is identical to the assertions that Plaintiffs make in this case.  *See e.g.*, Dkt. 331 at 38-39 (arguing that the City was deliberately indifferent to Goines' alleged "pattern of obtaining . . . no-knock warrants based on fraudulent investigations").  Thus, this Court should similarly hold that Plaintiffs, like the plaintiff in *Jeffrey*, have failed to "establish[ ] how the City or the Chief of Police would have knowledge of the actions of one alleged rogue police officer in a department of thousands of employees." *Jeffrey,* 2024 WL 1313897 at *10.

[31] Plaintiffs rely on a causation standard iterated by the Seventh Circuit in a suit analyzed under the principles of the single incident exception.  Dkt. 331 at 36; *see J.K.J. v. Polk Cnty.*, 960 F.3d 367, 385 (7th Cir. 2020) (noting that the "high degree of predictability" required under the single

policy modified to address Plaintiffs' "after the fact" criticisms of HPD's policy would have prevented Goines from lying on the search warrant affidavit for Harding Street. Even Plaintiffs' policy expert, Dr. Andrew Scott, has conceded that even if HPD "had done all these things that [Scott said] they should have done," "it would not have prevented Officer Goines" from "including false information on an affidavit and submitting it to a judge."[32]

Plaintiffs' only evidence of causation is speculation that the City's custom made it "possible" for Goines to obtain and serve a warrant using false information.[33] But mere possibility is far from the direct causal connection required to prevail at summary judgment. *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998) (reversing judgment against city because plaintiff's evidence in support of failure-to-promulgate theory fell short of "rigorous" and "stringent" causation requirements).[34]

Accordingly, summary judgment is warranted on the Plaintiffs' "official policy" theory based on a purported City custom.

## III.    The City is entitled to summary judgment on Plaintiffs' failure-to-supervise theory.

As with Plaintiffs' "official policy" theories, Plaintiffs' failure to raise a fact issue as to deliberate indifference defeats Plaintiffs' failure to supervise theory. Moreover, Plaintiffs have

---

incident exception "may also support an inference of causation"). As discussed, the single incident exception has no application in this case under Fifth Circuit jurisprudence. *See supra* Section I.B Accordingly, the Seventh Circuit's holding in *Polk County* is inapplicable to this Court's analysis of causation here.

[32] Dkt. 336-54, Scott Depo. at 91:1-9.

[33] Dkt. 331 at 36-37.

[34] The City's argument here with regard to moving force causation applies with equal force to the Plaintiffs' other "official policy" theory based on the City's alleged written policy allowing officers "to unilaterally obtain no-knock warrants without checks into their underlying investigations."

not raised a fact issue regarding the adequacy of HPD's supervision policies or moving force causation.[35]

Plaintiffs point to three allegedly inadequate HPD supervision policies in support of their Section 1983 claims: the Narcotics Division (1) "not look[ing] into the investigations of case officers like Goines to test the veracity of their work;"[36] (2) not implementing an "audit to uncover lies about investigations before obtaining warrants";[37] and (3) "disregarding" case file and paperwork deficiencies.[38]  In doing so, Plaintiffs ignore the plethora of supervisory policies,

---

[35] Despite Plaintiffs' request to the contrary, an adverse inference "about how much [Reyna, Wood, and Gonzales] actually communicated with Goines about his work and supervised him overall" should not be adopted against the City.  Dkt. 331 at 26.  It is well established that "while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him . . . his refusal to testify may be used ***against him*** in a civil proceeding."  *Farace v. Indep. Fire Ins. Co.,* 699 F.2d 204, 210 (5th Cir.1983) (emph. added).  However, although the Fifth Circuit has tolerated an adverse inference instruction against a defendant employer based on a nonparty employee's invocation of the privilege (*see e.g.*, *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x. 259, 266 (5th Cir. 2014)), Plaintiffs point to no authority supporting their position that a person's refusal to testify may be used against his former employer in a *Monell* suit against that employer.  *Monell* establishes that a municipality "cannot be found liable on a theory of vicarious liability or respondeat superior."  *Webb v. Town of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019).  Plaintiffs have not established that adopting an adverse inference against the City based on former employees' silence as to the performance of duties within the scope of their employment is consistent with Fifth Circuit jurisprudence that prohibits municipal liability from collapsing into *respondeat superior* liability.  Furthermore, an "adverse inference . . . [is] not enough to create an issue of fact to avoid summary judgment."  *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999).  Because, as discussed, Plaintiffs lack independent supporting evidence corroborating their theory that the City's supervision policy, particularly as related to obtaining and serving warrants, was inadequate, there is no issue of fact sufficient to defeat summary judgment here even if the Court grants Plaintiffs' request for an adverse inference.

[36] Dkt. 331 at 25.  As another example of Plaintiffs relying on evidence that does not support the "facts" asserted in their Response (*see supra* n. 12), Plaintiffs argue that "Goines consistently did not perform investigations he claimed he did."  Dkt. 331 at 33.  The only evidence Plaintiffs cite in support of this assertion is deposition testimony from the City's corporate representative, Erik Termeulen, discussing factors to be considered when deciding whether to use a no-knock warrant.  *See id*. at 33 & n.122.  Contrary to Plaintiffs' representation, Termeulen does not mention Goines or Goines' investigations anywhere in the cited testimony.  *Id.*

[37] *Id*. at 26.

[38] *Id*. at 28.

procedures, and audits that HPD had in place in connection with narcotics investigations and the service of search warrants.[39]

Narcotics officers like Goines were required to notify their supervisors about the investigations they were conducting.[40]  Supervisors were notified before a narcotics officer engaged in an undercover purchase of narcotics.[41]  Purchases by confidential informants had to be witnessed by another officer[42] and a receipt included in the case file, which was reviewed by the supervisor.[43]  Payments for narcotics purchases were audited by various people and agencies within HPD.[44]

Supervisors were also notified before the service of any search warrants.[45]  Before any search warrant was served, the tactical plan was reviewed by the supervisor.[46]  Supervisors were required to participate in the service of search warrants.[47] After search warrants were served, the supervisor would meet with the officer to review the service of the search warrant.[48]  The case file for the investigation and the search warrant were reviewed by the supervisor to ensure compliance with all divisional policies and procedures.[49]  That investigation file was then reviewed by a quality control department, which would in turn provide reports to supervisors up the chain of command.[50]  HPD officers like Goines were evaluated by their supervisors every six months.[51]  If officers were

---

[39] *See generally* Dkt. 305 at Factual Background Sections I, II.
[40] *Id*. at 10 & n.57.
[41] *Id*. at 8-9 & n.46.
[42] *Id*. at 8-9 & n.47.
[43] *Id*. at 9 & nn. 51, 52.
[44] *Id*. at 9 & nn. 53, 54.
[45] *Id*. at 10 & nn.57-59, 63.
[46] *Id*. at 10 & n.59.
[47] *Id*. at 10 & n.63.
[48] *Id*. at 12 & n.82.
[49] *Id*. at 13 & nn.89-91.
[50] *Id*. at 13 & n.92.
[51] *Id*. at 8 & n.45.

found to have violated policies or procedures, they were subject to discipline.[52]  These are just a few examples of the vast array of policies, procedures and audits that HPD had in place at the time of Harding Street whereby Narcotics officers like Goines were supervised.[53]

Unfortunately, this is a "bad apple" case in which a previously esteemed officer intentionally circumvented multiple HPD policies and procedures for his own purpose.  As recently explained by a sister district court, "no policy will prevent the criminal acts of a rogue officer."  *Martinez v. Rojo*, 2020 WL 2542612, No. 1:17-CV-00102-BU, at *32 (N.D. Tex. 2020).  Likewise, Chief Acevedo testified to this commonsense principle when he explained in his deposition that no policy can "guarantee an officer won't lie."[54]

Not only have Plaintiffs failed to raise a fact issue pertaining to the adequacy of HPD's supervision policy, they have also failed to raise a fact issue as to moving force causation.  Although Plaintiffs encourage the Court to engage in "Monday morning quarterbacking" regarding HPD's pre-Harding Street supervision policies, Plaintiffs have no evidence that a lack of supervision encouraged or allowed any officer to lie on search warrant affidavits.  Likewise, there is no evidence that purportedly inadequate HPD policies regarding audits, administrative paperwork requirements, or "test[ing] the veracity of [officers'] work"[55] "direct[ly] caus[ed]" the violations of Tuttle and Nicholas' constitutional rights.  *Holland*, 41 F. Supp. 2d at 706.

Plaintiffs' case is based on nothing more than sheer speculation and lawyerly argument.  Accordingly, summary judgment should be granted on Plaintiffs' failure-to-supervise claim.

---

[52] *Id*. at 14 n.95.

[53] *See id*. at Factual Background Section I (detailing supervision policies and procedures, as well as the supervision of Goines by Sergeants Reyna and Wood and Lieutenant Gonzales).

[54] Dkt. 336-52, Acevedo depo. at 111:9-13; *see also id*. at 97:1-12 ("[E]ven had we done 100 percent review of the paperwork, that . . . would not have stopped [Goines] from lying on that – on that affidavit.").

[55] Dkt. 331 at 25, 26, 28.

IV.    **The City is entitled to summary judgment on Plaintiffs' ratification theory.**

Plaintiffs maintain that the City is alternatively liable under a theory of ratification.[56]  If a policymaker approves a subordinate's constitutionally violative conduct *and* the basis for it, the policymaker's ratification may be chargeable to the municipality "because their decision is final." *Peterson*, 588 F.3d at 848.  Although ratification theory "is still good law, . . . the Fifth Circuit has repeatedly said that it is applicable only in the most extreme factual situations."  *Studzinski v. City of Austin*, No. A-19-CV-709-ML, 2020 WL 8674122, at *11 (W.D. Tex. Dec. 28, 2020).

Only post-incident actions by a municipal policymaker are relevant to a ratification theory (*Peterson*, 588 F.3d at 848), and Plaintiffs do not dispute that Chief Acevedo is the only City policymaker relevant to this case.  Plaintiffs point to only one post-Harding Street statement made by Chief Acevedo concerning Goines' lying on a search warrant affidavit.[57]  Plaintiffs allege that in November 2019 after the IAD issued its investigative report on Goines' use of fictitious information to obtain the search warrant,  Chief Acevedo purportedly ratified Goines' decision to lie on the affidavit by stating "that [HPD] officers had 'probable cause' to go into the Tuttles' home."[58]  However, Chief Acevedo clarified that although he "use[d] the word probable cause" at that time, what "[he] was talking about [was] the reason for the investigation in terms of why we started investigating that location in the first place."[59]  Specifically, as Chief Acevedo explained

---

[56] *Id*. at Section IV.C.

[57] *Id*. at 41.  To the extent Plaintiffs also rely on Chief Acevedo's deposition testimony quoted in the "Relevant Facts" section of Plaintiffs' Response, Chief Acevedo's testimony that he continues to believe there was no "corruption in Squad 15 prior to the raid" does not support Plaintiffs' ratification theory.  *Id*. at 23.  Chief Acevedo's position that "there's still no evidence of *systemic corruption* before or after Harding Street *other than Gerald Goines*," which the evidence supports, is not an approval of Goines' lying on the warrant affidavit.  Dkt 336-52, Acevedo depo. at 32:11-15.  In fact, it is just the opposite.  *Id*. (noting that Goines is the *exception* to there being no systemic corruption within HPD).

[58] Dkt. 331 at 41.

[59] Dkt. 336-52, Acevedo Dep. at 84:16-85:23.

during his press conference on January 31, 2019, both the 911 call by Patricia Garcia and the statement by an unnamed person on Harding Street to HPD officers that Tuttle and Nicholas' house was a "dope house" were the underlying reasons for the investigation.[60]  In addition, during his February 15, 2019, press conference Chief Acevedo condemned in no uncertain terms the "untruths or lies" contained in Goines' affidavit, which were "totally unacceptable" to HPD.[61] Indeed, Chief Acevedo referred to Goines' conduct as a "serious criminal violation."[62]

Further, no policy or custom of inadequate supervision may be "inferred"[63] here where the statement by Chief Acevedo on which Plaintiffs rely does not even touch on (1) HPD's supervision of its officers, (2) the adequacy of supervision by Reyna, Wood, and/or Gonzales, or (3) supervision of Goines generally.  *Peterson*, 588 F.3d at 848 (ratification requires approval of both the "decision" at issue and "the basis for it").

Chief Acevedo has never condoned Goines' lies.  Rather, he has unequivocally denounced that conduct.[64]  Plaintiffs' dogged repetition of supervisors' performance evaluations[65] is a red herring that merely distracts from the fact that neither the City nor Chief Acevedo have never approved nor otherwise condoned Goines' decision to lie on any search warrant affidavit.

Plaintiffs' ratification theory should be dismissed, and summary judgment for the City should be granted.[66]

---

[60] Ex. 46, Excerpt of Jan. 31, 2019, press conference.

[61] Ex. 47, Feb. 15, 2019, press conference at 2:45-2:50.

[62] *Id*. at 11:14.

[63] Dkt. 331 at 39.

[64] *See supra* n.61-62.

[65] Dkt. 331 at 40.

[66] *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), does not support Plaintiffs' ratification theory.  *See* Dkt. 331 at 41.  In *Grandstaff*, six police officers showered bullets on an innocent man whom they mistook for a fugitive but received no reprimands or discharges from the city. *Grandstaff*, 767 F.2d at 164–65.  Despite Plaintiffs' contention otherwise, *Grandstaff* in no way "mirrors" this case.  Dkt. 331 at 41.

20

**V.      Plaintiffs are entitled to summary judgment on Plaintiffs' state law claims.**

Governmental immunity, unless waived, immunizes the City from both suit and liability. *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 530 (5th Cir. 2018).  Having failed to demonstrate a valid waiver of governmental immunity, Plaintiffs' wrongful death and survival claims must be dismissed.  *See e.g.*, *Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) (explaining that the TTCA waives governmental immunity for certain conduct, but not for claims arising out of intentional tort).

<u>**CONCLUSION**</u>

For the reasons stated above, the City respectfully requests that the Court grant the City's Motion for Partial Summary Judgment on Plaintiffs' claims based on service of the warrant, and grant the City all other and further relief to which it is entitled, whether in law or equity.

Dated: September 27, 2024                         Respectfully submitted:

**BECK REDDEN LLP**                              **THE ODOM LAW FIRM**

<u>*/s/ Alistair B. Dawson*</u>                    <u>*/s/ Al Odom*_____</u>
Alistair B. Dawson                               Al Odom
State Bar No. 05596100                           State Bar No. 15201100
Federal Bar I.D. 12864                           Federal Bar I.D. 12913
adawson@beckredden.com                           601 Sawyer Street, Suite 225
Garrett S. Brawley                               Houston, Texas 77007
State Bar No. 24095812                           Telephone: (713) 357-5153
Federal Bar I.D. 3311277                         E-mail: aodom@aodomlawfirm.com
gbrawley@beckredden.com
Lena E. Silva
State Bar No. 24104993
Federal Bar I.D. 3608019
lsilva@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700

**ATTORNEYS FOR DEFENDANT CITY OF HOUSTON**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was sent to all counsel of record on this the 27th day of September 2024, pursuant to the Federal Rules of Civil Procedure.

<u>/s/ Alistair B. Dawson</u>
Alistair B. Dawson