IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLIFFORD F. TUTTLE, JR., et al. § <br> Consolidated with § <br> JOHN NICHOLAS, et al. § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> CITY OF HOUSTON, et al. § <br> § <br> Defendants. § | CASE NO. 4:21-CV-00270 |

**FELIPE GALLEGOS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs have not raised a genuine issue of material fact to overcome summary judgment that Officer Gallegos reasonably used force against Dennis Tuttle and Rhogena Nicholas. Consequently, Gallegos' Motion for Summary Judgment (the "Motion") should be granted.

**I.  Plaintiffs Have Not Raised an Issue of Material Fact as to Whether Gallegos' Use of Force Against Nicholas was Reasonable.**

In response to Gallegos' Motion, Plaintiffs abandoned their expert's theory that Gallegos accidentally shot Nicholas. They now adopt—in part—Gallegos' account that he intended to shoot her to defend his fellow officer, Medina, as Nicholas reached for his gun.[1]

In changing their theory, however, the Plaintiffs cobble together a Frankenstein account of the events that disregards the summary judgment evidence and embraces unsupported conspiracy theorizing in an attempt to create liability for Gallegos. As discussed below, this new made-for-summary-judgment theory has no evidentiary support and cannot save the Plaintiffs from the summary judgment that the evidence requires.

---

[1] Dkt. 334 at 10 ("[Gallegos] spots Ms. Nicholas and shoots her[.]"), 12 ("Gallegos intentionally and knowingly sho[t] . . . Nicholas.").

Indeed, the material facts related to use of force against Nicholas remain undisputed. Plaintiffs do not dispute that Nicholas' hands tested positive for gunshot residue.[2] Nor can they dispute that, under Gallegos' account, he reasonably believed that Nicholas posed an imminent threat of serious harm to Medina as she reached for his gun while he lay injured on the couch.[3]

Rather than confront the reasonableness of Gallegos' force under the facts in evidence, the Plaintiffs simply make up new facts that the evidence either does not support or flatly contradicts. Plaintiffs thus allege that Gallegos shot Nicholas *after* the injured Medina escaped the Harding Street house.[4] This assertion appears nowhere in the complaints,[5] nor has Plaintiffs' shooting reconstruction expert, Michael Maloney, ever suggested it.

Put simply, this alternative version is unsubstantiated speculation with no evidentiary support and therefore fails to create a genuine issue for trial. *Clark v. City of Alexandria*, -- F. 4th --, 2024 WL 4224357, at *4 (5th Cir. Sept. 18, 2024) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment."). Specifically, the Plaintiffs' reordering of events and repositioning of players under the "Medina-had-left" theory relies upon on a single screenshot from body worn camera footage.[6]

---

[2] *See, e.g.*, Dkt. 318 at 2, 7.
[3] *See generally* Dkt. 334. *Releford v. Rosemon*, 678 F. App'x 267, 268 (5th Cir. 2017) (Dkt. 330 at 7 n.35) does not alter the undisputed contention that Gallegos reasonably believed that Nicholas posed an imminent threat of serious harm if she reached for Medina's gun. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to . . . us[e] deadly force.").
[4] *See, e.g.*, Dkt. 334, at 7-9.
[5] *See generally* Dkts. 48 & 49.
[6] Dkt. 334, at 7-9.

Several glaring problems prevent the Plaintiffs from relying on this evidence to defeat summary judgment. First, and most importantly, the Plaintiffs have no evidence to corroborate their assertions that the people in the body worn camera footage are who the Plaintiffs say they are. And, in the case of Gallegos himself, Gallegos testifies—without contradiction by any *evidence* (as opposed to Plaintiffs' conjecture)—that "the person labelled as 'Gallegos' in the [image on page 9 of the Plaintiffs summary judgment response] is not me."[7] And, even putting aside Gallegos' unrebutted testimony, the Plaintiffs admitted that they do not know who the person in the screenshot is.[8]

Further, Plaintiffs rearranging of people and events to suggest that Medina left before Nicholas was shot direct conflicts (1) multiple officers' testimony,[9] (2) the Texas Ranger's investigative report,[10] and (3) the report of Plaintiffs' own shooting reconstructionist expert.[11] Indeed, no one other than Plaintiffs' lawyers—not even Plaintiffs' own expert—has ever advanced this theory and no competent summary judgment evidence supports it.

Plaintiffs also challenge Gallegos' account of the shooting based on Nicholas sustaining a wound to the right side of her chest.[12] But neither Plaintiffs, nor their expert have ever provided

---

[7] *See* Exh. 1, Declaration of Felipe Gallegos, at ¶¶5, 11.
[8] During depositions, Plaintiffs never showed this screenshot to any officers, including Gallegos, or asked any of them whether the person in the photo was Gallegos. Although a potential head covering can be seen, Gallegos' unrefuted testimony is that he did not wear a facemask during service of the warrant. Dkt. 309-5, Gallegos Depo. at 201:13-16. Rather, HPD took pictures of Gallegos *after* the incident (*see* Dkt. 330 at 13 n.80 (citing Plfs. Ex. 99)), for which Gallegos "was actually asked to put my mask on for the picture." Dkt. 309-5, Gallegos Depo. at 200:17-201:1.
[9] *See e.g.*, Dkt. 309-5, Gallegos Depo. at 102:10–19 (Gallegos testifying that he saw Nicholas standing over Medina); Dkt. 309-18, Pardo Depo. at 45:3-6 (Pardo testifying that he saw Nicholas standing over Medina), 46:6-11 (same).
[10] Dkt. 309-4, Wolf Depo. at 108:7-15.
[11] Dkt. 336-34, Maloney report at 25 of 71 (depicting Medina on the couch inside the house at the time Gallegos shot Nicholas).
[12] Dkt. 334, at 10-11.

3

any evidence, explanation, or analysis supporting their unsubstantiated conclusion that in "attempting to gain control of [Medina's] shotgun" Nicholas necessarily would have "exposed" only her left side to Gallegos.[13] Mere speculation such as this does not defeat summary judgment.

## II. Plaintiffs Have Not Raised an Issue of Material Fact as to Whether Gallegos' Use of Force Against Tuttle was Reasonable.

Plaintiffs do not dispute that Tuttle "was a threat when he was shooting at the officers," as admitted by Plaintiffs' expert.[14] In light of the threat Tuttle posed, Plaintiffs also apparently do not dispute that the officers' first seven shots at Tuttle were reasonable. Plaintiffs' only complaint is that Gallegos' last two shots were excessive because—according to Plaintiffs—at some point prior to those final two shots Tuttle purportedly become incapacitated.[15]

But Plaintiffs' argument ignores that all the summary judgment evidence establishes that Tuttle never "clearly [gave] himself up," such that he would no longer be a threat. *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (where suspect posed a "severe threat to public safety," and he never "clearly [gave] himself up," use of force was constitutional). And there is no evidence that, prior to the final shot (or final two shots), "it was clear to [Gallegos] that [Tuttle] was no longer a threat." *See Cantu v. Austin Police Dep't*, No. 1:21-CV-00084-DAE-SH, 2023 WL 8634821, at *8 (W.D. Tex. Dec. 12, 2023). Not even Plaintiffs' expert opines that Gallegos knew Tuttle was purportedly incapacitated—and no evidence establishes how Gallegos could know or believe the threat was extinguished before Tuttle died.[16]

---

[13] Dkt. 336-34, Maloney report at 35-36 of 72; *see* Dkt. 309-5, Gallegos Depo. at 107:19-108:2 (when Nicholas was over Medina, she was "not exactly squared up with me but at an angle to where I can see the entire front side of her body").
[14] Dkt. 309-12, Scott Depo. at 157:4-5 ("[C]learly Mr. Tuttle was a threat when shooting . . . .").
[15] Dkt. 334 at 9-11 .
[16] Dkt. 309-3, Maloney Depo. I at 190:22-191:4.

To the contrary, corroborated (and unrebutted) officer testimony shows that, until his death, Tuttle continued to threaten the officers with his gun.[17] Even considering *only Plaintiffs' version of events*, at the time of the final shot (1) Tuttle faced Lovings, who lay paralyzed in the entryway just feet from Tuttle, (2) Tuttle raised his body and propped himself up by his elbows, (3) Tuttle's weapon lay close to him, and (4) no officer knew that Tuttle was supposedly unable to hold a weapon.[18] Nor can Plaintiffs dispute that, prior to Tuttle's death, four officers had been shot and wounded, and Tuttle never voluntarily relinquished his weapon or showed any intent to surrender. Thus, even under Plaintiffs' version of events, Gallegos had "reason to believe that [Tuttle] posed a threat of serious harm" and summary judgment that Gallegos' use of force was reasonable is appropriate. *See Harris*, 745 F.3d at 772.

### III. Gallegos is Entitled to Summary Judgment on Plaintiffs' State Law Claims.

Because Plaintiffs have failed to demonstrate a valid waiver of governmental immunity under the Texas Tort Claims Act, Plaintiffs' wrongful death and survival claims must be dismissed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.026.

### CONCLUSION

Felipe Gallegos respectfully requests that the Court grant his Motion for Summary Judgment and all other and further relief to which he is entitled, whether in law or equity.

Dated: September 27, 2024        Respectfully submitted,

                                               */s/ Russell Hardin, Jr.*
                                               Russell Hardin, Jr.
                                               *Attorney-in-Charge*
                                               Texas State Bar No. 08972800
                                               Southern District of Texas No. 19424
                                               Email: rhardin@rustyhardin.com

---

[17] Dkt. 318, at 3-11, Factual Background.
[18] Dkt. 309-3, Maloney Depo. I at 179:16–191:5.

O<small>F</small> C<small>OUNSEL</small>:
R<small>USTY</small> H<small>ARDIN</small> & A<small>SSOCIATES</small>, LLP
Marshall Douglas Murphy (Of Counsel to the Firm)
State Bar No. 24013215
Federal I.D. No. 24254
Letitia D. Quinones (Of Counsel to the Firm)
State Bar No. 24008433
Federal I.D. No. 23722
Jennifer Brevorka (Of Counsel to the Firm)
State Bar No. 24082727
Federal I.D. No. 1725400
John MacVane (Of Counsel to the Firm)
State Bar No. 24085444
Federal I.D. No. 2209776
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
Email: rhardin@rustyhardin.com
Email: dmurphy@rustyhardin.com
Email: lquinones@rustyhardin.com
Email: jmacvane@rustyhardin.com
Email: jbrevorka@rustyhardin.com

***ATTORNEYS FOR DEFENDANT***
***FELIPE GALLEGOS***

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 27, 2024, a true and correct copy of the foregoing was delivered to all parties through their counsel(s) of record, in accordance with the Rules, via email or CM/ECF to the following:

Michael Patrick Doyle
mdoyle@doylelawfirm.com
Jeffrey I. Avery
jeffavery@doylelawfirm.com
Patrick M. Dennis
Doyle LLP
3401 Allen Parkway, Suite 100
Houston, Texas 77019
service@doylelawfirm.com

Michael T. Gallagher
mike@gld-law.com
L. Boyd Smith, Jr.
bsmith@fld-law.com
Pamela R. McLemore
pamm@gld-law.com
The Gallagher Law Firm
2905 Sackett St
Houston, TX 77098

Charles Bourque, Jr.
St. Martin & Bourque
315 Barrow St
Houma, LA 70360
cbourque@stmblaw.com

Dwayne Richard Day
Attorney at Law
3401 Allen Pkwy, Suite 100
Houston, TX 77019
Fax: 713-759-6930
dday@ddaylaw.com

David Allen Nachtigall
Attorney at Law, PLLC
1545 Heights, Ste. 100
Houston, TX 77008
david@dntriallaw.com

Alistair B. Dawson
adawson@beckredden.com Lena
Elizabeth Silva
lsilva@beckredden.com Garrett
Scott Brawley
gbrawley@beckredden.com Beck
Redden LLP
1221 McKinney, Ste 4500
Houston, TX 77010

Harold Al Odom, III Odom
Law Firm
601 Sawyer, Suite 225
Houston, TX 77007
aodom@aodomlawfirm.com

Christy L. Martin
christy.martin@houstontx.gov
Melissa Azadeh
melissa.azadeh@houstontx.gov
Kelly Ann Dempsey
kelly.dempsey@houstontx.gov
Alexander E. Garcia
alexander.garcia@houstontx.gov
Michelle Charlene Taylor
michelle.taylor2@houstontx.gov
City of Houston
900 Bagby St., 3rd Floor
Houston, Texas 77002

                */s/ John MacVane*
                John MacVane

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFFORD F. TUTTLE, JR., REPRESENTATIVE OF THE ESTATE OF DENNIS W. TUTTLE, DECEASED, ROBERT TUTTLE, AND RYAN TUTTLE, <br><br> Plaintiffs <br><br> v. <br><br> CITY OF HOUSTON, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § § § | Civil Action No. 4:21-cv-00270 |

AND

| | | |
|---|---|---|
| JOHN NICHOLAS, as temporary administrator of the Estate of Rhogena Nicholas and JO ANN NICHOLAS, individually and as an heir of the Estate of Rhogena Nicholas, <br><br> Plaintiffs <br><br> v. <br><br> CITY OF HOUSTON, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § § § § | Civil Action No. 4:21-cv-00272 |

**<u>DECLARATION OF FELIPE GALLEGOS</u>**

I, Felipe Gallegos, hereby declare as follows:

1. My name is Felipe Gallegos. The facts in this declaration are within my personal knowledge and are true and correct.

2. I am a defendant in the above captioned case.

3. On September 27, 2024, I reviewed portions of *The Tuttle and Nicholas Plaintiffs' Response to Defendant Felipe Gallegos's Motion for Summary Judgment*, filed on September 13, 2024 (the "Response").

<u>**GALLEGOS REPLY EXHIBIT 1**</u>                                    1

4. I noted that the Response contained the following image:



5. The figure labelled as "Gallegos "in this image is not me.

6. I know this for several reasons. First, from shortly after entry was made into the house during the Harding Street raid on January 28, 2019, I was never on the side of the house where the figure labelled as "Gallegos" in this image is depicted.

7. In addition, this picture does not depict my body or reflect my body type.

8. The picture also appears to depict a person wearing a long-sleeved Houston Narcotics t-shirt, like this one, albeit with the sleeves rolled up:



2

9. The green insignia on the rolled-up sleeve of the shirt pictured in the Response appears to me to correspond to the insignia on the long-sleeved Houston Narcotics t-shirt pictured above.

10. I was not wearing a long-sleeved Houston Narcotics t-shirt during the January 28, 2019, Harding Street raid.

11. For all of these reasons, I know that the person labelled as "Gallegos" in the above image from the Response is not me.

**JURAT PURSUANT TO 28 U.S.C.§ 1746**,

"I declare under penalty of perjury that the foregoing is true and correct."

Executed on this 27th day of September 2024.

_____
Felipe Gallegos

3